191

D⊖T 120144

## STATES DISTRICT COURT

### EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

Lesly Pompy, M.D.  and Interventional Pain Management Associates, P. C.

Plaintiffs Pro Se

Case:2:19-cv-10334
Judge: Steeh, George Caram
MJ: Davis, Stephanie Dawkins
Filed: 02-04-2019 At 03:02 PM
CMP POMPY ET AL V. MBT FINANCIAL CO
RP.ET AL (DA)

V

MBT Financial Corp., doing business as Monroe Bank and Trust;

Magistrate Tina Todd, Magistrate Jessica Chaffin, and Judge Jack Vitale, in both their individual and official capacities;

Lt. Marc Moore, officer Robert Blair, officer Jon La Sotta, officer Shawn Kotsch, agent Brian Bishop, in both their individual and official capacities;

Blue Cross Blue Shield of Michigan, Blue Cross Blue Shield of Michigan Mutual Insurance Company, Blue Cross Complete of Michigan, LLC, Blue Cross Complete of Michigan (BLUE CROSS), Investigator James Howell, Dr. Carl Christensen, Dr. J. Alan Robertson;    SUSAN ⟨⟩ HEPAN  MEYREGRN

Director Shelly Edgerton, Director Sean M. Siebigteroth, Director Kim Gaedeke, Pharmacist Vaughn Hafner, Dina Young, in both their individual and official capacities; and    THOMAS  SCOTT

Ray Kisonas,
Jointly and severally,

Defendants

---------------------------------------------------------------------------

1

## COMPLAINT and JURY DEMAND

NOW COME PLAINTIFF Lesly Pompy and PLAINTIFF INTERVENTIONAL MANAGEMENT ASSOCIATES, P. C. (IPM) and file the instant complaint and jury demand as follows.

## JURISDICTION AND VENUE

The Court has jurisdiction over this law suit pursuant to 42 U.S.C. Section 1983 for deprivation of rights and privileges secured by the Constitution and the laws. The court has jurisdiction over this law suit under **BIVENS v. SIX Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**

VENUE is proper under 28 U.S. C. Section 1391 (b).

I)

## THE PLAINTIFFS

1.  Plaintiff Lesly Pompy, M.D. (Dr. Pompy), a citizen of the State of Michigan, was licensed to practice medicine in the states of Michigan, New York, Florida, and the Commonwealth of Pennsylvania.

**2.** Dr. Pompy was practicing medicine in the State of Michigan under medical license No. 4301058720 until he was illegally served on August 4, 2017 by DEA agent Brian Bishop with an Order of Summary Suspension of his medical license and an Administrative Complaint from Michigan Bureau of Professional Licensing (BPL), dated August 3, 2017.

3) The Michigan Summary Suspension was conducive to additional procedures for the suspension of Dr. Pompy's license to practice medicine in the states of New York, Florida, and the Commonwealth of Pennsylvania.

2

4) Dr. Pompy was classified by the Centers for Medicare and Medicaid as a Pain Management physician and was issued for his identification the National Provider Identifier: NPI 1174578801---Pain Management Interventional.

5. Dr. Pompy is a board certified anesthesiologist with subspecialty board in Pain Management; a board certified physician in Addiction Medicine.

6. Dr. Pompy was a health provider approved by Medicare, Medicaid, and Blue Cross Network for pain management physician services at, (1) his medical offices, (2), ProMedica Monroe Regional Hospital, formerly Mercy Memorial Hospital, Monroe, Michigan; and (3) Surgical Institute of Monroe, Monroe, Michigan.

7. Dr. Pompy was the only full time board certified Pain Management physician in Monroe County.

8. Dr. Pompy was registered with the Drug Enforcement Administration (DEA) as a practitioner to handle Controlled Substances in Schedules 2-5 under DEA COR BP2527058 at his primary office at Interventional Pain Management Associates, P.C., (IPM), 730 North Macomb Street, Suite 222, Monroe, Michigan 48162; and at his secondary office, 307 Stewart Road, Monroe, Michigan 48162.

9. Dr. Pompy has also an Emergency Medical Technician Certificate (EMT).

10. At ProMedica Monroe Regional Hospital Dr. Pompy provided pain management services, addiction medicine, and anesthesia administration services.

11. At his primary medical office at Interventional Pain Management Associates, PC (IPM) on North Macomb Street Dr. Pompy provided pain management services, post- surgical visits, medications, including head, neck, back, cancer, fibro-broken pain spine management services, detoxification management, and P-STIM.

12. At his surgery center on Stewart Road Dr. Pompy was doing nerve and facets blocks, epidurals, RFA, Intrathecal pumps and spinal cord stimulators,

3

acupuncture, anti-aging, percutaneous neuroplasty, discectomy, mild procedure, anti-aging, neurobiofeedback, ANS testing, vertoplasty, and kyphoplasty.

13. Dr. Pompy medical practice was 70% Pain Management; 25% Addiction Medicine; and 5% Anesthesia.

14. Thirty- Five percent (35%) of Dr. Pompy practice were Medicaid patients with chronic pain associated with poverty and less education.

15. IPM is incorporated under the laws of State of Michigan.

16. IPM was Dr. Pompy ProMedica Monroe Regional Hospital-based medical practice primarily for the care and treatment of patients with chronic disease.

17. IPM was wrongfully made a party to MSP/MANTIS proceedings, in that it was not served with a search warrant on September 26, 2016 or later with a summons and complaint designating it as a claimant in an in rem civil forfeiture action.

18. Search warrant, if any was intended for IPM on September 26, 2016, had long expired and was dismissed by law.

19. Plaintiffs rendered medical services to the members of Blue Cross Blue Shield of Michigan Mutual Insurance Company (BCBSMMC), Blue Cross Blue Shield of Michigan (BCBSM), Blue Cross Complete of Michigan, LLC (BCCMLLC), Blue Cross Complete of Michigan (BCCM).

20. Blue Cross Blue Shield of Michigan Mutual Insurance Company (BCBSMMIC), formerly Blue Cross Blue Shield of Michigan (BCBSM), and the Plaintiffs were bound by a Practitioner Affiliation Agreement, renewable automatically from year to year.

21. Blue Cross Complete of Michigan, LLC (BCCMLLC), formerly Blue Cross Complete of Michigan (BCCM), and the Plaintiffs were bound by the instructions contained in the BCCMLLC/BCCM Provider Manual.

II)

## THE DEFENDANTS

22. Defendant MBT Financial Corp., doing business as Monroe Bank and Trust (MB& T), is incorporated in the State of Michigan.

23. Magistrate Tina Todd is a non-attorney appointed as magistrate at the First District Court of Michigan on December 9, 2011 upon approval of the State Court Administrative Office (SCAO) and Monroe County.

24. Magistrate Tina Todd, an employee of Monroe County, was required to follow SCAO rules, and to act within the scope of her judicial authority and by the terms of her appointment within jurisdiction of the First District Court of Michigan [ MCL 600.8513 (2) (d)].

25. Magistrate Tina Todd issued, without probable cause, an invalid search warrant , which was illegally served and executed by detective Robert Blair, the affiant, at MB& T, on September 21, 2016.

26. Magistrate Jessica Chaffin, a non-attorney appointed as magistrate at the First District Court of Michigan, was not authorized to issue warrants for the arrest of persons on September 23, 2016 without written authorization of the Monroe County Prosecuting attorney [MCL 600.8513 (2)(d).

27. Magistrate Jessica Chaffin issued three invalid search warrants on September 23 and 27, 2016 and one invalid search warrant on August 14, 2017 without probable cause, outside the scope of her employment at Monroe County, outside her judicial authority, outside the jurisdiction of the First District Court of Michigan.

28. Judge Jack Vitale, an elected judge of the First District Court of Michigan, acted outside the scope of his judicial authority in issuing three invalid search warrants on September 28, 2016 in violation of the statute. [MCL 600. 8513 (2) ].

29. Marc Moore, a Detective Lieutenant (D/Lt) with Michigan Department of State Police (MTS), was and is still assigned to Monroe Narcotics Team Investigative Services (MANTIS) with policy-making authority.

30. Marc Moore went to Blue Cross in December 2015 and proposed a joint investigation involving Dr. Pompy. He had no reliable informant and had not personally conducted an investigation to support his misstatements and false representations. Notwithstanding, he stated to have learned from various sources that Dr. Pompy was writing large amounts of opioid prescriptions to patients who showed drug seeking behavior and to patients who were diverting those medications on the streets. (MTS original incident report, incident No. MTS-0000023-16, File Class 35001, by D/LT Marc Moore #20).

31. Robert Blair was a detective under the command of Monroe County Sheriff (MCS) Ralph Malone. He authored for MSP/MANTIS eight invalid search warrants reviewed and approved by Monroe County Assistant Prosecutors Allison M. Arnold and Jeffery A. Yorkey . He then served the warrants in violation of the command of the court; and personally executed them in lieu and place of Sheriff Ralph Malone illegally.
The Monroe County Sheriff's Office (MCSO) provides SWAT TEAM assistance to MSP, MANTIS, and CM, when requested. MCSO, MSP, MANTIS, and CM have different jurisdiction and legal requirements.

Detective Blair, as a detective in the Sheriff's Office, was not qualified under MCL 51.221, Michigan Court Rules, Rule 2.103 (B)(1), and the command of the court to serve the invalid search warrants in September 2016 in the City of Monroe.
If detective Blair believed in his mind that he was representing Sheriff Ralph Malone, a deputy sheriff or an undersheriff in September 2016, he would then be personally responsible, under MCL 51.70 , for his acts, defaults, misconduct, malfeasance, misfeasance, or nonfeasance.
Detective Blair reported in the police supplemental incident report 0002 (Docket No. 17-21, Page 68 of 72, Incident No. MTS-0000023-16 (01), File class 35001) the following:

"PROBABLE CAUSE FOR FORFEITURE:"
[" Items #9 to 218...,Item #219..., Item # 339..., Items #340 t0 #345..., Item $ 346 to # 370..., Item #374...were seized pursuant to the Narcotics Forfeiture Statute,

6

Sec. 333.7522, M.C.L.A. under theories that they are "proceeds" of narcotics trafficking and that they "facilitated" drug trafficking."]

"SUSPECT DISPOSITION:"

" Dr. Pompy was placed under arrest. Dr. Pompy was transported to the Monroe County Jail (MCJ) by MPD Vice Officers Oetjens and Merkle without incident. Dr. Pompy was later released from MCJ pending warrant authorization by Monroe County Prosecutor."

32. Robert Blair collaborated with MANTIS from an address at 7150 Harris Drive, Dimondale, MI 48821, Eaton County and from a second address at 300 Jones Ave., Monroe, MI 48162, Monroe County, in government enforcement actions.

33. Jon La Sotta was a detective with MSP/MANTIS. HIS service of the warrants by FAX and Mail to E*Trade and Merrill Lynch in New Jersey and Florida was improper, illegal, void, and null, violative of the statutes and court order.

34. Shawn Kotsch was an officer with the Monroe City Police Department, Michigan (MPD). He illegally interviewed Dr. Pompy in the absence of his attorney and participated in the latter arrest and imprisonment.

35. Brian Bishop, a DEA Diversion Investigator (DI), assisted MSP/MANTIS in the raid of Dr. Pompy's office on September 26, 2016. He illegally seized at Dr. Pompy's medical office and home unauthorized property which was out of the scope of the two invalid search warrants illegally issued on September 23, 2016 by magistrate Jessica Chaffin of the First District Court of Michigan. Magistrate Chaffin had no jurisdiction over the person/property of Plaintiffs.

36. Blue Cross Blue Shield of Michigan (BCBSM), a domestic nonprofit healthcare corporation, merged with Blue Cross Blue Shield of Michigan Mutual Insurance Company (BCBSMMIC), the surviving company, on December 31, 2013. Blue Cross committed several violations of federal and state statutes.

**37.** BCBSMMIC, a Michigan nonprofit mutual insurance corporation, provides claims processing, reporting services, network access, and other administrative services to various affiliated and unaffiliated entities.

**38**. Blue Cross Complete of Michigan (BCCM), formerly BLUECAID of MICHIGAN, ceased to exist on June 1, 2015.

39. BlUECAID of Michigan provided Medicaid coverage.

40. Blue Cross Complete of Michigan LLC (BCCML), is a domestic limited liability company created on June 1, 2015.

**41** Blue Cross Blue Shield of Michigan, Blue Cross Blue Shield of Michigan Mutual Insurance Company, Blue Cross Complete of Michigan, LLC, Blue Cross Complete of Michigan, BLUECAID, and affiliated companies have interrelated operations and are hereinafter referred as "Blue Cross."

42. Blue Cross employed Michael Zsenyuk as the manager of its Corporate Financial Investigations Department (CFI).

43. Blue Cross employed Jim Gallagher as the manager of its Clinical Pharmacy Fraud, Waste and Abuse department (CPFWA).

44. Blue Cross employed Brian Zasadny as a CFI Fraud Investigator.

45. Blue Cross employed Diane Silas as Team Leader 2 with its Utilization Review Department (UR).

**46**. Carl Christensen, M.D. (Dr. Christensen), doing business as Christensen Recovery business in Ann Arbor, Michigan, is a physician with specialty/ subspecialties in Obstetrics, Gynecology/Gynecologic Oncology, Maternal & Fetal Medicine/High Risk, and Addiction. A self-employed physician offering his services in administrative and legal proceedings, he was motivated by anti-competitive interest in offering addiction treatment. He was not neutral and was not qualified under Dauber to offer expert opinion on anesthesia services and pain management.

47.  Dr. Christensen is classified by the Centers for Medicare and Medicaid under National Provider Identifier (NPI) No. 1598703621—Family Medicine Addiction Medicine.

48.  J Alan Robertson, M.D. (DR. Robertson), was acting in his official capacity as a Blue Cross orthopedic spine surgeon, and in his individual capacity as the primary care physician of defendant James Howell in his medical office.

49.  Defendant Shelly Edgerton is the Director of Michigan Department of Licensing and Regulatory Affairs (LARA).

50.  Defendant Kim Gaedeke was the Director of the Michigan Bureau of Professional Licensing (BPL). His successor as Director is Cheryl Wycoff  Pezon.

51.  Defendant Sean M. Siebigteroth is the Administrative Law Specialist of Michigan BPL Drug Monitoring Section.

52.  Defendant Vaughn Hafner is a pharmacist investigator with Michigan BPL Drug Monitoring Section. He is not qualified under Dauber to offer an expert opinion on Dr. Pompy medical practices.

53.  Defendant Dina Young is an employee with Michigan BPL Enforcement Division.

54.  Defendant James Howell, alias patient "James Stewart", is a Blue Cross CFI undercover investigator, who appeared to have been coached by Dr. Christensen and Dr. Robertson to falsely appear to suffer from a chronic disease.

 Stewart was seen by Drs. Riyadh P Kasmikha and Weiguo Zhao from February 9, 2015 to July 9, 2015 and was prescribed Amphetamine Salt Combo, Lorazepam, Alprazolam, Hydrocodone Bitartrate-Acetaminophe prior to his visits to Dr. Pompy's office in January 2016.
Stewart had no credentials, knowledge, or experience in Blue Cross Manual Billing Guidelines, alternative Blue Cross electronic billing, billing complexity, E/M code, typical time.
Stewart does not show what amount should have been billed electronically by Dr.

9

Pompy for his seven visits.

Stewart had not conducted an audit, reviewed the complexity, evaluation, and management of his case.

Stewart does not understand Blue Cross electronic billing based on diagnostic and medical coding.

Without an audit and peer process review, Stewart had no authority to question and disapprove payment of claims made years and months ago by Blue Cross Accounting Department.

By using Blue Cross alternative recommended method of electronic billing, Dr. Pompy had no intent to defraud Blue Cross.

55. At all times hereinafter Blue Cross manager Michael Zsenyuk assigned Brian Zasadny, James Howell, Diane Silas, and Jim Gallagher to assist and collaborate with Monroe County Prosecutor's Office, MSP, MANTIS, Dr. Christensen, and DEA in the investigation of the prescription habits of Dr. Pompy.

56. At all times hereinafter Blue Cross contractually provides peer group review processes, specific contractual appeal, claim management, and audit prior to conducting fraud investigations, but failed to comply with its obligations.

57. At all times hereinafter Blue Cross accepts full responsibility for the acts and actions of their employees and former employees of BLUECAID of Michigan (BCM), Blue Care Network of Michigan (BCNM), Blue Cross Complete of Michigan Foundation, Blue Cross Complete of Michigan, LLC (BCCMLLC), Blue Cross Complete of Michigan, and affiliates.

58. At all times relevant to this law suit, all the defendants were acting under the color of law with respect to the events set forth in the complaint.

59. Upon information and belief, all the individually named defendants are citizens of the State of Michigan.

III)

## BASIS OF THE CLAIM

10

60. The claim arose on September 21, 2016 when VP Susan Mehregan released to officer Robert Blair financial and confidential information on Plaintiffs, upon an illegal service of an invalid and unseen search warrant allegedly issued by magistrate Tina Todd.

61. On September 23, 2016 officer Blair obtained two overbroad invalid search warrants from magistrate Jessica Chaffin to be served by the Monroe County Sheriff or any Peace Officer for the search and seizure of the business records of Lesly Pompy located at Interventional Pain Management, 730 North Macomb Street, Monroe, Michigan and/or the business records of Interventional Pain Management Associates [sic], an entity reportedly specifically described. EXHIBITS 1&2.

62. MB& T VP Susan Mehregan and VP Thomas Scott released to officer Robert Blair CDs containing financial information on Plaintiffs and other related account holders.

63. The affidavits for search warrants were overbroad, invalid as to substance and form, with a long list of the records to be searched without their exact location; without the court name, address, and case number; without the printed name of the magistrate; withoutthe legible signature of the magistrate/judge.

64. The search warrants were invalid in that they failed to give the court name, address, and case number; to give the printed name of the magistrate/judge; to give the unnamed property owners an opportunity to reclaim their property as required by law.

65. On September 26, 2016, under the command of LT. Marc Moore, numerous state and federal law enforcement officers raided Dr. Pompy office and home in Monroe, Michigan.

66. On September 27, 2016 magistrate Jessica Chaffin of the First District Court of Michigan issued an overbroad and invalid search warrant for the search and seizure at MB& T by the Sheriff or any Peace officer of all accounts or account information related to Lesly Pompy and Interventional Pain Management

11

Associates [sic]. MB& T mistakenly furnished account information on Interventional Pain Management Associates, P.C. EXHIBIT 3.

67. On September 28, 2016 three invalid search warrants were issued by judge Jack Vitale of the First District Court of Michigan for the search and seizure by the Sheriff or any Peace Officer of all accounts or account information of Lesly Pompy and Interventional Pain Management Associates [sic] located, (1) at Merrill Lynch, Pierce, Fenner, Smith Inc. (Merrill Lynch) in the State of Florida; (2), at E*Trade Securities, LLC (E*Trade) in the State of New Jersey ; and (3), at Monroe County Community Credit Union in the State of Michigan. EXHIBITS 4, 5 & 6. Interventional Pain Management Associates [sic] was unknown to Plaintiffs at the location given.

68. On December 22, 2016 an in rem civil procedure action against Dr. Pompy, as claimant, was filed in Monroe County Circuit Court and served in January 2017 upon Dr. Pompy's attorneys by service of a summons and complaint.

69. On March 16, 2018 the Monroe County Circuit Court dismissed the in rem civil forfeiture action, and at the same time all the search warrants of the first District Court of Michigan as corollaries.

70. On June 26, 2018 a federal criminal forfeiture action was commenced against Dr. Pompy based on law enforcement misrepresentations, tainted evidences obtained on September 26, 2016, an invalid search warrant issued illegally on August 14, 2017 by magistrate Jessica Chaffin, and the illegal use and possession of tainted medical records and devices held and obtained illegally by Lt. Marc Moore and DEA agent Brian Bishop in violation of a Monroe County Circuit Court judge White Turnover order of March 16, 2018.

71. Plaintiffs Claim for false arrest and illegal imprisonment accrued on December 22, 2016, March 16, 2018, June 26, 2018; from the government shutdown, and continuing until the disposition of the federal criminal forfeiture proceedings.

From the last accrual date, the claim will accrue within 10 years under Brandon D'Annunzio's law for extortion (MCL 764. 24 (6), and (24 b); within 3 years for

abuse of process [ (MCL 600. 5805 (10)] by law enforcement, agent Bishop, and Blue Cross; within 3 years for false light claim and for breach of fiduciary duty by Monroe Bank and Trust (MCL 600. 5805 (10); within 2 years in this action charging Michigan Law enforcement, and agent Bishop with assault, battery, and false imprisonment (MCL 600-5805 (2) (600-5805 (2); and within 2 years against officer Robert Blair, if he was in writing deputed by the Monroe County sheriff and had filed a $2,500.00 bond under MCL 51.70 , thus making him responsible for his acts, defaults, misconducts; and any action for malfeasance, misfeasance, or nonfeasance as permitted by MCL 51.79.

## STATEMENT OF FACTS

72.  With the closing of the office of Monroe Pain Center of Dr. Oscar Linares in the City of Monroe, Dr. Pompy experienced a large increase in demands for medical care and treatment.

73.  Patients of Dr. Linares were reportedly refused treatment in other medical offices for fear of MSP/MANTIS Lt. Marc Moore.

74.  Dr. Danilo Dona, a family physician, posted in social media that he would give his patients a referral, but he was not filling medication for Dr. Pompy and Dr. Mekasha. Both Dr. Pompy and Mekasha are black.

75.  Dr. Dona advised his patients to find out which pain management physicians take their insurance because he did not have any names of any pain management physicians at this time.

76.  In accord with his agreement with Blue Cross, his Hippocratic Oath, his First Amendment Rights, his right to work enshrined in the Universal Declaration of Human Rights, and his right not be prevented from doing so, Dr. Pompy accepted the new patients.

77. Dr. Pompy offered reasonable accommodation to the patients who were living outside of the City of Monroe, more than 40 miles away, who could not find a physician, or could not afford to lose a day from work.

78. Dr. Pompy was bound to care for and treat Medicare and Medicaid patients of Blue Cross and Blue Cross Complete under an agreement requiring patients access to him 24 hours a day, seven days a week.

79. Dr. Pompy changed his office schedule from 8:00 A.M. to late at night and hired up to 28 full time/part time employees.

80. Dr. Pompy was bound by an implied in-fact contract to treat Medicare and Medicaid patients of Blue Cross and Blue Cross Complete.

81. Blue Cross and Blue Cross Complete had a contract implied in law to pay Plaintiffs when medical services are rendered to their members.

82. Plaintiffs were the third-party beneficiaries to the contract between the patients and Blue Cross and Blue Cross Complete.

83. In retaliation, the Monroe County Prosecutor and Lt. Marc Moore decided to criminally investigate Plaintiffs with the assistance of Blue Cross.

84. On November 12, 2015 Blue Cross investigator Brian Zasadny wrote to his manager Michael Zsenynk , " D/L Marc Moore of Mantis and Monroe County Prosecutor William Nichols are requesting the assistance of BCBSM in order to investigate Dr. Pompy in regards to his prescribing habits". This request was in fact a violation of 21 USC 802 (56) (C).

85. Defendant Zasadny added that Dr. Pompy, according to Prosecutor Nichols, has taken the place of another provider (Dr. Linares) in the area who had been charged with running a "pill mill". This was defamation, a violation of Dr. Pompy right to work under the First Amendment.

14

86. On December 10, 2015 Dr. Robertson referred Blue Cross investigator James Howell under the fake patient name of "James Stewart" to Dr. Pompy for pain management.

87. In January 2016 Blue Cross Brian Zasadny officially assigned James Howell to conduct undercover (UC) visits to Dr. Pompy's office under the fake name of |"James Stewart" and under the supervision of MSP/MANTIS Lt Marc Moore, in violation of MCL 338.823, Sec. 3. (1), (2), and (3).

88. Patient "James Stewart" installed and placed on him a device for observing, recording, transmitting, photographing, and eavesdropping upon sounds and events at Dr. Pompy's office, in violation of Michigan Comp. Laws Sec. 750.539d.

89. Patient "James Stewart" was a Blue Cross employee, not regulated under Public Act 285 of 1965 and not authorized by BPL to investigate business. He listened to private conversations of Dr. Pompy employees and patients without a court order in violation of 18. U.S.C. 2510 et seq. See also U.S. Dept. of Justice, Manual CRM 1-499, CRM 1-99; 28. Electronic Surveillance-Title ||| Applications.

90. Dr. Pompy himself, his employees, and his patients reasonably expected to be safe from hostile intrusion or surveillance. Mich. Comp. Laws Sec. 750.539a.

91. Patient "James Stewart" filed his reports with Blue Cross, Monroe County Prosecutor's Office, MANTIS, DEA, and Dr. Carl Christensen, in violation of Mich. Comp. Laws Sec. 750.539e prohibiting him from using or divulging any information which he knew or reasonably should know was obtained in violation of other wiretapping laws.

92. Patient "James Stewart", prior to his visits to Dr. Pompy, signed with Blue Cross, in violation of Michigan Workers Compensation Laws, an agreement under which, "I (James Howell) am aware of CFI U/C policies concerning invasive procedures and x-rays and accept full responsibility if I submit to any of the aforementioned procedures releasing BCBSM of any liability."

15

93. MSP, MANTIS, the Prosecutor's Office, Blue Cross Michael Zsenyuk and agent Brian Zasadny permitted defendant James Howell to use at Dr. Pompy's office:

a) An identity card under the fake name "James Stewart" in violation of Michigan Fake ID Law, the Real ID Act of 2005, IRS Rule, and the Tax Law.

b) A fake Michigan driver license No. S 363 367 758 544, with date of birth 7/9/70, issuance date 11/5/ 14, expiration date 7/9/18, in violation of Michigan Vehicle Code.

c) Invalid Social Security No. 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 in violation of the federal Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001-1461 and the Tax Law.

d) An ad hoc insurance card showing, "Enrollee ID No. XYY925081728" and "Group No. 007023356, in violation of Michigan Health Care False Claim Act of 1984 (MCL 752.1003 Sec. 3), and Michigan Insurance Law, and the Tax Laws.

94. Blue Cross Brian Zasadny further provided officer Robert Blair with the name and address of the Plaintiffs bank obtained from the payment records of Blue Cross Complete.

95. On September 21, 2016, upon information illegally obtained from Zasadny, officer Robert Blair reportedly served upon Susan Mehregan, Vice President and Deputy General Counsel with MB& T, at 102 East Front St, Monroe, MI 48161, a search warrant for financial records for Lesly Pompy.

96. Mrs. Mehregan gave officer Blair the information requested in violation of MCL 487.691 protecting depositor against Adverse Claim to Bank Deposit.

97. The First District Court of Michigan then issued six additional overbroad and invalid search warrants upon affidavits of officer Robert Blair.

98. The warrants have no name, address, and case number of the issuing court.

99. The warrants were not based on any information showing probable cause, but were based only on Robert Blaise theories.

16

100.   The name of magistrate Jessica Chaffin who issued the warrants was not printed.

101.  The search warrants failed to state specifically the address of the property to be searched and the items to be seized.

102.  The search warrants were issued in violation of Michigan Civil Forfeiture Law, and in violation of SCAO rules regarding its prescribed forms for affidavits and search warrants.

103.  The search warrants were transferred to the jurisdiction of the Monroe County Circuit Court on March 16, 2018 upon consolidation with the People civil forfeiture action against Dr. Pompy, and were dismissed on the same date as corollaries of the forfeiture action.

104.  The dismissal of the civil forfeiture action invalidated all the search warrants.

105.  Law enforcement officers violated MCL 780.658 under which, "any person who maliciously and without probable cause procures a search warrant to be issued and executed shall be fined not more than $1,000.00 or imprisoned not more than 1 year."

106.  With the release on September 21, 2016 of financial information on Dr. Pompy and IPM by Susan Mehregan and Thomas Scott, officer Robert Blair authored and obtained on September 23, 2016 from magistrate Jessica Chaffin two invalid search warrants for execution at Dr. Pompy office and home.

107.  On September 26, 2016, law enforcement raided the medical practice of Dr. Pompy at Interventional Pain Management Associates, P.C., 730 North Macomb Street, Monroe, Michigan; and the home of Dr. Pompy, 533 North Monroe Street, Monroe, Michigan.

108.  MANTIS Lt. Marc Moore was the commanding officer; officer Robert Blair was the supervisor of the operation; DEA agent Brian Bishop was the lead investigator.

109. Officer Shawn Kotsch participated in the search and seizure, and interviewed Dr. Pompy, his patients, and visitors without the presence of an attorney.

110. Officer Robert Blair himself, although the affiant, executed the search warrants in violation of Magistrate Chaffin order, and in violation of MCL 51.84, which requires that search warrants shall be served upon the Sheriff's Office for execution.

111. Officer Robert Blair was not an appointed deputy sheriff under Michigan MCL 51.70 or an appointed undersheriff under Michigan MCL 51.71.

112. Plaintiffs property at Merrill Lynch, E*Trade , and i-Patient Care was not physically searched prior to the seizures as ordered by magistrate Chaffin and judge Vitale. Plaintiffs financial accounts were illegally seized/frozen without a physical search by detective Jon La Sotta in September 2016. La Sotta seized and froze the accounts by sending a FAX and EMAIL to Merrill Lynch in Florida and to E*Trade in New Jersey in violation of court orders and the statutes.
Plaintiffs patients medical records were not physically searched, but were seized by officer Blair in August 2017 by sending a FAX and EMAIL to iPatient Care in New Jersey. Release of medical records of patients on substance abuse requires a special court order.

113. Sheriff Dale Malone had jurisdiction over the execution of the search warrants. He should have been served with the warrants by detective Blair at his office at 102 E. second St, Monroe, MI 48161.

114. Law enforcement agencies who participated in both raids were: MANTIS, DEA, Michigan State Police uniformed trooper, Special Response Team (SRT/SWAT), Monroe City Police Department, Monroe County Uniformed Services, Monroe Vice (MPD and MCSO), GS, SA, TFO.

115. Law enforcement officers who participated in the raid of Dr. Pompy medical practice were, inter alia, officer Street, officer La Sotta, officer Brent Cathey, and DEA officer Christina Hicks.

18

116. Officer Hicks transcribed the video recordings from Investigator Howell's visits to Dr. Pompy 's office, printed out "James Stewart" patient file, and organized it in chronological order.

117. Law enforcement officers who participated in the raid of Dr. Pompy home were MANTIS D/Sgt Beard, detective Cathey (OIC), and detective Jon La Sotta; MPD Vice Unit SGT. Lindsay, officer Oetjens, officer Merkle; and MSP Det. Sproud.

118. At or about 8:15 A.M. agent Brian Bishop, Lt. Marc Moore, and officer Shawn Kotsch arrived at Dr. Pompy's office at ProMedica Monroe Regional Hospital and showed their badges.

119. Agent Brian Bishop, Lt. Marc Moore, and officer Kotsch did not produce a Notice of Inspection of Controlled Substances (DEA Form 82); an administrative inspection warrant; an administrative subpoena; a search warrant or a subpoena from the Monroe County District Court or the Monroe County Circuit Court or the U.S. District Court, Eastern District of Michigan, Southern Division.

120. Agent Bishop, Lt. Moore, and officer Kotsch interviewed Dr. Pompy in the absence of his attorney in violation of his Fifth and his Sixth Amendments Rights; and illegally ordered him to produce the list and the files of his Suboxone patients in violation of State and federal statutes.

121. Dr. Pompy quietly complied with the order without incident.

122. Agent Bishop, Lt. Moore, and officer Kotsch reviewed the Suboxone files, took note, and left the office after 45 minutes.

123. Dr. Pompy was induced to believe that DEA was about to conduct its first inspection and evaluation under 21 USC 1301.71 (b).

124. At or about 10:00 A.M. agent Brian Bishop, Lt. Marc Moore, officer Robert Blair, and officer Shawn Kotsch returned suddenly to the office in full force, screaming and yelling, with several masked gunmen, guns drawn, with such severity that patients, employees, several people and their children got scared, screamed hysterically, trembling in fear of a robbery.

125. Patients medical records were seized manu military without a valid search warrant.

126. The search and seizure was a violation of the Fourth Amendment and Michigan Constitution protecting against unreasonable search and seizure.

127. MANTIS officers and DEA agent Brian Bishop trashed the office; dispersed everything to the floor; took away important documents, administrative files, and medical records of the patients.

128. MANTIS officers and DEA agent Brian Bishop caused considerable damage to the office in violation of Michigan 780.657 prohibiting any person executing a search warrant to willfully exceed his authority or exercise it with unnecessary severity.

129. Patients and employees were not permitted for hours to leave the office in violation of MCL 780.652 (2); the Fourth Amendment and Michigan Constitution protecting against unreasonable searches and seizures; the Due Process Clause and Equal Protection Clause of the Fourteenth Amendments protecting Dr. Pompy civil rights, liberty, and property.

130. Law enforcement illegally seized, inter alia, cash in U.S. currency and foreign currency, patients medical records, original data, computers, IPad data, IPhone, patient cash co-pays, patient payments by checks, employee attendance software; mobiles phones of employees Erika Kandler, Diana Knight, Jordan Rippe, and Dr. Pompy; and Dr. Pompy U.S. passports without a court order.

131. The value of the seized items was over and above the $25,000.00 jurisdiction of the First District Court of Michigan; outside the judicial authority of magistrate Chaffin; and outside the scope of the search warrants.

132. Under emotional distress and duress, Dr. Pompy's memory became adversely impacted.

133. Victim of a gunshot wound in the left arm in 1985, Dr. Pompy suffered from emotionally adverse, intrusive recurring thoughts of the 1985 trauma.

134. Dr. Pompy negative thoughts produced significant emotional distress.

135. Officer Robert Blair photographed the scene and videotaped the search and seizure with audio.

136. The noise was so loud that it disturbed visitors, patients, employees, and physicians at ProMedica Monroe Regional Hospital.

137. Physicians, nurses, employees, administrators of the hospital became more agitated upon noting that the raid was being executed by Lt. Marc Moore, husband of Molly Moore.

138. Molly Moore was the Executive Director of the Philanthropic Division of ProMedica Monroe Regional Hospital.

139. Agent Brian Bishop imaged the computer drives in violation of the Computer Fraud and Abuse Act; the Health Insurance Portability Laws and Accountability Act (HIPAA); Blue Cross Blue Shield HIPPA Compliance Statements; the Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2); the Americans with Disabilities Act (ADR); federal, state, and local privacy laws and rule.

140. Agent Brian Bishop reviewed the computer files; seized the contract between Insys and Dr. Pompy, and a Subsis Presentation by Dr. Pompy, in violation of the Privacy Laws and in violation of Dr. Pompy Right to Financial Privacy Act (12 U.S.C. 3401, et seq.)

141. Officer Jon La Sotta maliciously obtained from i-Patient Care the password of Dr. Pompy Computers by sending them in New Jersey a copy of an invalid search warrant, not directed to them, but already served and executed for the search and seizure of the property of Dr. Pompy in Monroe, Michigan.

142. Officer La Sotta immediately downloaded 1500 patient medical records from January 20, 2016 to September 26, 2016 and handed them over to officer Robert Blair, thus breaking the chain of custody.

21

143. Officer Robert Blair gave copies of the files to agent Brian Bishop, officer Shawn Kotsch, MSP/MANTIS, Monroe County Prosecutor's office, thus breaking the chain of custody.

144. MSP/MANTIS made copies of the files for Blue Cross, thus breaking the chain of custody.

145. Agent Brian Bishop gave copies of the files to Dr. Leon Pedell, BPL, and Vaughn Hafner, thus breaking the chain of custody.

146. Officer La Sotta illegally received on October 7, 2016 from i-Patient Care the entire Dr. Pompy's patient medical records totaling 3,241 files.

147. Among those patients were, inter alia, patients covered by Medicare, Medicaid, Blue Cross, and other carriers, on Methadone, Suboxone, and/or other controlled substances.

148. Among the medical records illegally obtained by officer L Sotta were:

 a) The records of Danielle Andrews, Ricky Bryant, Roy Fisher, Evelyn Sarnowsky, John Hernandez;

b) 10,134 pages or records, pertaining to patients Danielle Andrews, Terry Brooks, Ricky Bryant, Roy Fisher, John Hernandez, Cheryl Hollingsworth, Michael Mudge, Judy Shinevarre, Heidi Smallwood, and Jes Staten.

c) The records of James Stewart, Ricky Bryant, Tracy Lapalme, Diana Knight, Stephanie Stine, Floyd England, Robin Oldham, Lisa Kohlman, Gerard Toro, Joey Shienevare, Angela McBee, Kristen Reaster, Melissa Ball, KW, Lowry Bradley.

d) 16,000 pages of medical records forwarded by agent Brian Bishop to Dr. Leon Pedell.

e) 11,000 pages of records forwarded by BPL to Dr. Leon Pedell.

f) 24 SUBSIS files illegally obtained by Blue Cross from MANTIS and given to Dr. Christensen for review, thus breaking the Chain of Custody.

149. All the files are still illegally in possession of the defendants and/or their attorneys in violation of judge White order, the Computer Fraud and Abuse Act, the Health Insurance Portability Laws and Accountability Act (HIPAA); Blue Cross Blue Shield HIPPA Compliance Statements; the Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2); the Americans with Disabilities Act (ADR); federal, state, and local privacy laws; and the Chain of Custody

150. Officer Blair also handed copies of the medical files to agent Brian Bishop and officer Shawn Kotsch, in violation of the Health Insurance Portability Laws and Accountability Act (HIPAA); the Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2); the Americans with Disabilities Act (ADR); the Privacy Laws, Blue Cross Blue Shield HIPAA Compliance Statements; and federal, state and local privacy laws; and the Chain of Custody.

151. Protected medical files, patients identities, MAPS data were copied, reproduced, disclosed, re-disclosed, divulged by agent Brian Bishop and officer Robert Blair, and distributed to MCPO, BCBSM, Michigan Department of Attorney General (MDAG), LARA, Dr. Carl Christensen, and Dr. Leon Pedell, in violation of the Health Insurance Portability Laws and Accountability Act (HIPAA); the Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2); the Americans with Disabilities Act (ADR); federal, state, and local privacy laws; Blue Cross Blue Shield HIPAA Compliance Statements, and Chain of Custody.

152. Lt. Marc Moore detained Dr. Pompy in his office from 10:00 AM until 3:30 PM, in violation of the Fifth Amendment prohibiting deprivations of life, liberty, or property without due process.

153. Lt. Marc Moore kept Dr. Pompy in solitary confinement, in a bounded place, without access to the office phone, for 5 ½ hours, from 10:00 A.M. to 3:30 P.M. until Dr. Pompy was transferred to Monroe County Jail.

154. Lt. Marc Moore subjected Dr. Pompy to a condition tantamount to cruel and unusual punishment prohibited under the Eight Amendment, by not permitting

him to have lunch; to have access to drinking water or his medicines; to go to the toilet for his natural needs; or to call his attorney.

155. No officer of the same rank as Lt. Marc Moore would reasonably believe that Lt. Marc Moore was acting within the scope of his authority. **[MCL. 691.1407 Sec.7 (2) (a)]**

156. The conduct of Lt. Moore was reckless and demonstrated a substantial lack of concern for whether an injury results. MCL 691.1407 (8) (a).127.

157. The conduct of Lt. Marc Moore amounts to gross negligence which is the proximate cause of Dr. Pompy's injuries and damages. **MCL 691.1407 Sec. 7 (2) (c).**

158. Dr. Pompy's attorney, Geoge B. Donnini, arrived at Dr. Pompy's office at/or about 1:00 PM after the employees were released one by one and were able to contact him.

159. Lt. Marc Moore questioned Dr. Pompy in the absence of his attorney, once prior to the search, once during the search, once after the search, and once on March 2, 2017 in violation of Dr. Pompy Fifth Amendment Rights against self-incrimination and Sixth Amendment Rights to the assistance of counsel.

160. Dr. Pompy had not reviewed and signed a Miranda Waiver prior to the interviews.

161. Agent Brian Bishop illegally questioned Dr. Pompy three times in the absence of his attorney: once prior to the search, once after the search, and once on March 2, 2017 in the parking lot of ProMedica Monroe Regional Hospital in violation of Dr. Pompy Fifth and Sixth Amendments Rights.

162. Dr. Pompy had not reviewed and signed a Miranda Waiver prior to the interviews.

163. Officer Shawn Kotsch interviewed Dr. Pompy and the persons present during the search and seizure of the office property without the presence on an attorney

in violation of the Sixth Amendment protecting Dr. Pompy rights to counsel; and in violation of the Fifth Amendment against self-incrimination.

164. Dr. Pompy had not reviewed and signed a Miranda Waiver prior to the interviews.

165. Lt. Moore, agent Bishop, and officer Kotsch did not inform Dr. Pompy, prior to the custodial interrogations, that he had the right to remain silent; that anything he said could be used against him at trial; that he had the right to the assistance of a lawyer; and that if he could not afford a lawyer, the government would provide him with one.

166. Agent Brian BISHOP accused Dr. Pompy of having committed many violations and, jointly with Lt. Marc Moore and officer Shawn Kotsch, placed Dr. Pompy under arrest without an arrest warrant.

167. The arrest of Dr. Pompy was outside the scope of employment and authority of agent Brian Bishop.

168. Agent Brian Bishop act and action constitutes misconduct, willful and wonton negligence, abuse of power and authority, retaliation.

169. Lt. Marc Moore, agent Brian Bishop, and officer Shawn Kotsch did not give the Miranda warning to Dr. Pompy.

170. Dr. Pompy was then handcuffed and transported in a police car, at or about 3:30 P. M., to Monroe County Jail (MCJ) by MPD Vice Officers OETJENS and Merkle without incident.

171. At the Monroe County Jail Dr. Pompy was photographed, fingerprinted, and placed in a cell with other inmates.

172. At 8:30 PM Dr. Pompy was finally released from Monroe County Jail without charge, after a total of 10 hours and 30 minutes of detention, solitary confinement, and illegal imprisonment, pending warrant authorization by the Monroe County Prosecutor, in violation of his Fifth Amendment Right.

173. Agent Brian Bishop, MANTIS officers, and DEA agents illegally searched and seized at Dr. Pompy's office numerous items outside the jurisdiction of the First District Court of Michigan, outside the scope of the judicial authority of magistrate Chaffin, and outside the scope of the illegal, overbroad, and invalid search warrant.

174. The value of the items seized was over and above the $25,000.00 jurisdiction of the First District Court of Michigan.

175. MANTIS officers searched Dr. Pompy's home in the morning until 12 noon approximately and seized numerous items outside the scope of an invalid search warrant, outside the scope of the judicial authority of magistrate Chaffin, and over and above the $25,000.00 jurisdiction of the First District Court of Michigan.

176. At or about noon, after the end of the improper search and seizure at Dr. Pompy's home, Mantis officers closed the doors, secured the premises, and left.

177. In the afternoon, agent Brian Bishop went to Dr. Pompy's home in the absence of MANTIS law officers and without the knowledge of officer Brent Cathey who was responsible for the search.

178. Agent Brian Bishop broke into Dr. Pompy's home, without the authority of a search warrant, in violation of:

(1) MCL 691.1407 Sec. 8 (d) ii;

(2) U.S. and Michigan Constitution;

(3) The Trespass and Deception Rule of the Fourth Amendment

(4) Federal, state, and local privacy laws and Rule.

179. Agent Brian Bishop conduct equates to burglary, subject to fine, demotion, dismissal, or felony charges.

180. Bishop conducted his own search, seized, numerous items from the first, second, and third floor of the premises without a valid search warrant or a

26

subpoena, and illegally removed them to his office in DEA Detroit Field Office without a court order.

181.  On September 27, 2016, officer Robert Blair executed an invalid search warrant at MB& T, by service of a copy thereof upon its Vice President and Deputy General Counsel Susan Mehregan.

182.  Officer Robert Blair was the affiant and was not ordered by magistrate Chaffin to serve and execute the invalid search warrants.

183.  Service of the search warrant by officer Robert Blair himself was illegal, and consequently null, void, and of no effect.

184.  The invalid search warrants of the First District Court were based on retaliation, illegality, fraud, deception, defamation, and caused the loss, seizure and freeze of Plaintiffs property and financial accounts.

185.  On September 29, 2016 detective Robert Blair, through detective Jon La Sotta who had access to MANTIS FAX machine, transmitted a copy of an invalid search warrant to Merrill Lynch, Pierce, Fenner and Smith Incorporated (Merrill Lynch).

186.  Officer Robert Blair was not a deputy sheriff or undersheriff, but a MCSO detective unqualified by law to serve search warrants under MCL 51.21 and Michigan Court Rules, Rule 2.103 (B).

187.  Service by detective Robert Blair of the invalid warrant was illegal and is deemed void, null, and of no effect.

188.  Service of the invalid search warrant by mail to Merrill Lynch violated DUE PROCESS, Florida and New Jersey Rules of Civil Procedure for service of process upon corporations.

189.  On September 28, 2016 detective Blair, through detective Jon La Sotta again, transmitted a copy of an invalid search warrant by FAX to E*Trade Financial, LLC (E*Trade).

190. Officer Blair was not a deputy sheriff or undersheriff, but a MCSO detective unqualified to serve search warrants under MCL 51.21 and Michigan Court Rules, Rule 2.103 (B).

191. The service of the invalid search warrant by FAX to E*Trade violated DUE PROCESS, Michigan and New Jersey Rules of Civil Procedure for service of process upon corporations.

192. On September 29, 2016, E*Trade sent its answer to Robert Blair at 7150 Harris Drive, Dimondale, MI 48821.

193. E*Trade informed Robert Blair that their records reflected the following accounts and sums which may be subject to the Summons and Levy:

| | | | | | |
|---|---|---|---|---|---|
| Brokerage xxxx-8412 | Individual | Restricted | Lesley Pompy | Sole Owner | XXX |
| Brokerage xxxx-3195 | Contributory | Restricted | Lesley Pompy | Sole Owner | XXX |
| Brokerage xxxx-4850 | Individual | Restricted | Lesley Pompy | Sole Owner | XXX |

194. Unless there is a tax levy or other legal process called "eminent domain," the US Government has no legal standing to seize the contents of protected Dr. Pompy and IPM retirement accounts, such as 401 K, IRA, Thrift Savings Plan, self-employed retirement plan, or any other retirement plan.

195. On September 30, 2016 Merrill Lynch sent its answer to Robert Blair at 7150 Harris Drive, Dimondale, MI 48821.

196. Merrill Lynch informed officer Robert Blair under MICHIGAN FOIA that the following accounts were restrained:

| Title of Account | Account No. | Type of Account |
|---|---|---|
| Leslie Pompy | xxx-6591 | IRRA |
| Leslie Pompy | xxx-8177 | IRA |
| Leslie Pompy | xxx-x2H39 | IRA |
| Leslie Pompy/Keogh Plan | xxx-x5U41 | CASH |
| Leslie Pompy | xxx-x5y61 | MARGIN |
| Interventional Pain Management | xxx-x5235 | RCMA |

IPMA Profit Sharing
FBO DR, Lesly Pompy
Interventional Pain Management      xxx-x5234         RCMA
Associates, P.C.

197. Unless there is a tax levy or other legal process called "eminent domain," the US Government has no legal standing to seize the contents of Dr. Pompy and IPM protected accounts, such as 401 K, IRA, Thrift Savings Plan, self-employed retirement plan, or any other retirement plan.

198. Officer Robert Blair knew that IRRA, IRA, and RCMA accounts were pension accounts protected under the federal Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001-146. He should not have seized and frozen those accounts.

199. Plaintiffs accounts at MB& T were in addition over and above the $25,000.00 jurisdiction of the First District Court of Michigan.

200. Magistrate Jessica Chaffin knowingly exceeded the jurisdiction of the First District Court and acted outside the scope of her judicial authority in ordering the Sheriff or any Peace Officer to search, seize, and freeze Plaintiffs accounts at MB& T.

201. Plaintiffs out-of-state accounts at Merrill Lynch in Florida and at E*Trade in New Jersey were not within the jurisdiction of the First District Court of Michigan.

202. Judge Vitale knowingly exceeded the jurisdiction of the First District Court of Michigan and acted outside the scope of his judicial authority in ordering the Sheriff or any Peace Officer to search and seize under Michigan Civil Forfeiture law financial accounts located outside of Monroe County at Merrill Lynch in Florida and at E*Trade in New Jersey.

203. Officer Blair affidavits for search warrant and magistrate Chaffin search warrants did not comply with the required official forms prescribed by the State Court Administrative Office (SCAO) and were improper and invalid.

204. There is no transcript of the minutes of the hearing before Magistrate TINA TODD for the issuance of an invalid search warrant on September 21, 2016.

205. Magistrate Todd's acts and actions amount to misconduct, and particularly gross negligence that is the proximate cause of the injury and damage to Plaintiffs.

206. There is no transcript of the minutes of the hearing before Magistrate Jessica Chaffin for the issuance of the invalid search warrants on September 23 and 27, 2016.

207. Magistrate Chaffin's acts and actions amount to misconduct, and particularly gross negligence that is the proximate cause of the injury and damage to Plaintiffs.

208. There is no transcript of the minutes of the hearing before Judge Jack Vitale for the issuance of the invalid search warrants on September 28, 2016.

209. Judge Vitale's acts and actions amount to misconduct, and particularly gross negligence that is the proximate cause of the injury and damage to Plaintiffs.

210. Magistrate Jessica Chaffin and Judge Jack Vitale ordered the suppression of the affidavits for search warrants until Dr. Pompy had been charged with a crime or named a claimant in a civil forfeiture proceeding, thus accruing Plaintiffs Claim.

211. A civil forfeiture action was filed in Monroe County Circuit Court on December 22, 2016 and served upon Dr. Pompy's attorneys in January 2017.

212. On June 26, 2018 a federal criminal forfeiture action was commenced against Dr. Pompy based upon:

a) An invalid search warrant obtained by officer Robert Blair on August 14, 2017 from magistrate Jessica Chaffin who lacked jurisdiction over the subject matter.

b) The federal prosecutor use of and reliance on tainted medical records and devices in the illegal use, possession and control of officer Robert Blair, officer

John La Sotta, MSP/MANTIS, and DEA agent Brian Bishop on and after September 26, 2016, in violation of the chain of custody legal context.

c) An alleged federal Anticipatory Search Warrant reportedly filed in February 2018, but found to be an application for search warrant dated May 23, 2018 to the U.S. District Court.

d) The violation of a March 16, 2018 Monroe County Circuit Court order, which directed Prosecutor Nichols and MANTIS to return all the seized property within 14 days after March 30, 2017, except certain financial accounts designated TARGET ACCOUNTS.

e) An invalid application of Special Agent Michael Hendricks addressed to no one on May 23, 2018 for "electronic devices seized pursuant to a State of Michigan Search Warrant executed by DEA/MSP." The search warrant was invalid and was already dismissed on March 6, 2018. The application of agent Hendricks shows no probable cause and is deemed invalid, void, null, and of no effect for lack of an exact description and exact location of the property, the identification of the person it is addressed to by name and address, and the violation of the Chain of Custody legal context.

213. Agent Michael Hendricks failed to obtain a warrant to search the contents of the seized computers, cell phones, and other devices.

V

**PRELIMINARY STATEMENT**

215. This is a complaint for false light claim and for a combined claim for damages as a result of injuries and loss of property arising out of the defendants violations of civil rights, breach of contract, defamation, deceit, frauds on September 21 and 26, 2016; out of the defendants discrimination, retaliation, misconduct, wonton and willful negligence on and after September 26, 2016; and out of the defendants violation of the Chain of Custody legal context.

216. On December 22, 2016 The People commenced an in rem civil forfeiture action titled People of the State of Michigan ex rel William P. Nichols, Monroe County Prosecuting Attorney v. $27,814.00 in U.S. Currency; $346,847.63 at the Monroe Bank and Trust; $404,324.67 at E-Trade; $1,102,210.65 at Merryl Lynch; $4,018.00 at Monroe Community Credit Union; 2015 Nissan Pathfinder; one SHOTGUN and real property at 533 North Monroe Street, Monroe, Michigan, in Monroe County Circuit Court, File No. 16-139517-CF. Honorable Daniel S. White.

217. The Monroe County Prosecutor's Office falsely theorized that the seized property and Dr. Pompy's residence were the proceeds or instrumentalities of crime that were subject to forfeiture under the Michigan Public Health Code.

218. More than a year had elapsed and Dr. Pompy was not able to obtain from the Monroe County Clerk's Office copies of officer Blair invalid affidavits dated September 23, 27, and 28, 2016.

219. Dr. Pompy lost the opportunity, prior to the commencement of the in rem civil forfeiture action, to appeal to the Monroe County Circuit Court for the dismissal of the District Court invalid search warrants issued by magistrate Jessica Chaffin, on the ground that the latter (1) lacked jurisdiction over Dr. Pompy $27,814.00 in U.S. Currency and other financial accounts illegally seized during the raid; (2) on further ground that the latter acted outside the scope of her judicial authority; and (3) on further ground that probable cause did not exist.

220. Dr. Pompy lost the opportunity, prior to the commencement of the in rem civil forfeiture action, to timely ask the Florida Circuit Court not to recognize the Michigan invalid search warrant, on the ground, (1) that service thereof was improper; (2) that the First District Court of Michigan lacked jurisdiction outside of Monroe in in rem civil forfeiture action; (3) that judge Vitale acted outside of the scope of his judicial authority; and (4) that probable cause did not exist.

221. Dr. Pompy lost the opportunity, prior to the commencement of the in rem civil forfeiture action, to timely ask the New Jersey Superior Court not to recognize the Michigan search warrant, on the ground, (1) that service of the

search warrant was improper; (2) that the First District Court of Michigan lacked jurisdiction over property outside of Monroe County; (3) that judge Vitale acted outside of the scope of his judicial authority; and (5) that probable cause did not exist.

222. On March 2, 2017, DEA summarily suspended Dr. Pompy's certificates of registration upon the false statements and misrepresentations of Blue Cross, DEA agent Brian Bishop, Lt. Marc Moore, officer Robert Blair, investigator James Howell, Dr. Christensen, and pharmacist Vaugh Hafner.

223. On the same day Lt. Marc Moore and agent Brian Bishop met Dr. Pompy at the ProMedica Monroe Regional Hospital parking lot and asked him, again in the absence of his attorney, to surrender his DEA certificates of registration and to waive the upcoming DEA hearing.

224. Lt. Marc Moore and agent Brian Bishop knowingly violated again Dr. Pompy rights to an attorney under the Sixth Amendment.

225. On March 22, 2017 Dr. Pompy filed his answer in the civil forfeiture action in the Monroe County Circuit Court and asserted the following affirmative defenses:

   1) The Complaint fails to state a claim upon which relief can be granted.

   2) The claims are time-barred.

   3) The people cannot prove that the seized property is subject to forfeiture by clear and convincing evidence, as required by law.

   4) The warrant authorizing seizure was unlawfully obtained through false statements.

   5) The seized property was, in whole or in part, unlawfully seized.

   6) The seized property is, in whole or in part, beyond the Court's jurisdiction.

7)    The seized property is, in whole or in part, not subject to forfeiture under federal Employee Retirement Income Security Act, 29 U.S.C. Sections 1001-1461.

8) There is insufficient nexus between the property seized and the criminal activity alleged.

9) The seized property, in whole or in part, are from independent, innocent source and not traceable to the criminal activity alleged.

10) The forfeiture violates the Excessive Fines Clause of the Eight Amendment to the U.S. Constitution.

11)    The forfeiture violates the Excessive Fines Clause of Article 1, Section 16 of the Michigan Constitution.

226.  Dr. Pompy affirmative defenses were never answered for more than a year and were deemed admitted.

227.  In July 2017 DEA conducted a hearing on the suspension of Dr. Pompy's certificates of registration.

228.  DEA submitted to the Chief Administrative Law Judge John J. Mulrooney five unauthorized SUBSIS files of patients Daniele Andrews, Ricky Bryant, Roy Fisher, Evelyn Sarnowsky, John Hernandez, plus the file of "James Stewart" in violation of the Chain of Custody legal context.

229.  The five medical files were part of Dr. Pompy 24 SUBSIS medical records illegally seized by officer Robert Blair, sent to MSP, then obtained from MSP by Blue Cross, and thereafter, admittedly distributed by Blue Cross to agent Brian Bishop and Dr. Carl Christensen, in violation of the Chain of Custody legal context.

230.  MSP, MANTIS, Blue Cross, Blue Cross Complete, agent Brian Bishop, officer Robert Blair, officer Shawn Kotch, and Dr. Carl Christensen obtained the medical records through an invalid search warrant issued by magistrate Chaffin and are not covered by HIPAA under 45 CFR Sec. 164.512 (f).  They violated Blue Cross

HIPAA Compliance Statements; State and Federal Privacy Laws prohibiting access and attempting unauthorized access to members private information under the Health Insurance Portability Laws and Accountability Act (HIPAA); the Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2); the Americans with Disabilities Act (ADR); the federal, state, local privacy laws and rules; and the Chain of Custody legal context.

231.  U.S. Constitution and Michigan Constitution require suppression of all the evidence stemming from illegal seizure and arrest.

VI

## ALLEGATIONS AGAINST VAUGHN HAFNER AND Dr. LEON PEDELL

232.  On August 3, 2017 Michigan Bureau of Professional Licensing (BPL) summarily suspended Dr. Pompy's license to practice medicine in Michigan, upon inaccurate and unverified documents of Blue Cross; and upon the false statements and misrepresentations of agent Brian Bishop, Lt. Marc Moore, officer Robert Blair, Dr. Christensen, Brian Zasadny, James Stewart, and pharmacist Vaugh Hafner.

233.  An emergency hearing on the BPL suspension of Dr. Pompy's medical license was commenced on October 16, 2017 before Administrative Law Judge Michael j. St. John and lasted five months until March 26, 2018 without any fault by the Plaintiffs.

234. The hearing was continued on May 30, 2018 and lasted until June 22, 2018 without any fault on the part of the Plaintiffs.

235.  More than six months have elapsed since the end of the hearing and there has been no final decision by the Administrative Law Judge St. John and BPL Board's Disciplinary Subcommittee (DSC), in violation of Dr. Pompy Sixth Amendment right to a speedy trial, applicable to federal courts and incorporated to apply in state courts.

236. Evidence submitted before Administrative Law Judge Michael J. St. John by BPL illegally included in violation of the Chain of Custody legal context:

(1) Dr. Pompy's ten subpoenaed SUBOXONE patients files, totaling 10,134 pages of records, pertaining to patients Danielle Andrews, Terry Brooks, Ricky Bryant, Roy Fisher, John Hernandez, Cheryl Hollingsworth, Michael Mudge, Judy Shinevarre, Heidi Smallwood, and Jes Staten.

(2) Impermissible submission of MAPS reports pertaining to patients Danielle Andrews, Terry Brooks, Ricky Bryant, Roy Fisher, John Hernandez, Cheryl Hollingsworth, Michael Mudge, Judy Shinevarre, Heidi Smallwood, and Jes Staten.

(3) 16,000 pages of unauthorized medical records illegally obtained by DEA from MSP/MANTIS and illegally forwarded to Dr. Leon Pedell.

(4) 11,000 pages of unauthorized medical records illegally forwarded to Dr. Leon Pedell by BPL;

(5) 3,241 unauthorized patients files illegally and maliciously obtained from i-Patient Care by officer La Sotta;

(6) Vaughn Hafner, R.Ph. impermissible submission of Confidential 2015 MAPS data for 2015 and for 1/1/16 to 9/30/16.

(7) Vaughn Hafner, R.Ph. impermissible submission of confidential individual Drug Monitoring Section MAPS.

(8) Vaughn Hafner, R.Ph. impermissible submission of epidemiology data from the Michigan Department of health and Human Services.

(9) Vaughn Hafner, R.Ph. impermissible submission of a prior dismissed allegation # 113108 against Dr. Pompy.

(10) Vaugh Hafner, R.Ph. impermissible submission of "doctor shopper" data from MAPS between 2014-2015.

(11) Vaugh Hafner, R.Ph. impermissible false and defamatory statement that the laboratory tests were ordered as a secondary source of revenue for Dr. Pompy.

(12) Vaugh Hafner, R.Ph. investigation report of February 17, 2017 admitting:

i) That DEA provided various patients medical files as well as an audio recording of interview held with Dr. Pompy;

ii) That the medical files were predominantly patients who had been prescribed Subsis;

iii) That DEA provided the medical files to Dr. Christensen for expert opinion.

237. Vaughn Hafner violated the public policy of the state.

238. U.S. Constitution and Michigan Constitution require suppression of all the evidence stemming from illegal seizure and arrest.

239. Dr. Leon Pedell, a physician identified by his NPI No. 1992744973—Internal Medicine Cardiovascular—admitted on June 30, 2017, as BPL medical expert, "Dr. Pompy is an Anesthesiologist practicing as a pain management specialist. It is not for me as an internist to comment on the necessity of the procedures he performed, the tests he ordered, or his interpretation of the relationship of imaging reports to his assessment of pain complaints."

240. Defendant Dr. Leon Pedell confirmed in a letter of June 30, 2017 that he reviewed 10 cases; that each of the 10 cases was often out of order date wise with no real way to put things in chronological order and correlate those notes with hundreds of pages of MAPS information.

241. Defendant Dr. Leon Pedell further added that he reviewed the files as thoroughly as possible and took extensive notes. Dr. Pedell is not qualified under Dauber to submit an expert opinion and testify against Dr. Pompy in legal proceedings.

242. U.S. Constitution and Michigan Constitution require suppression of all the evidence stemming from illegal seizure and arrest.

VI

## THE ANTICIPATORY SEARCH WARRANT (S) HAS NO LEGAL SUPPORT

243.  In February 2018 **an ANTICIPATORY SEIZURE WARRANY** allegedly placed under the jurisdiction of the federal court certain Dr. Pompy and IPM financial accounts, designated as TARGET ACCOUNTS, which were already illegally seized and frozen by officer-affiant Robert Blair at MB& T, Merrill lynch, and E*Trade on September 26, 27, and 28, 2016.

244.  To date, there is no evidence in the Eastern District Court, Southern Division, of the existence of such **ANTICIPATORY SEIZURE WARRANT** and affidavit related thereto, in spite of Dr. Pompy due diligence, personnel research, or attorneys inquiries.

245.  On March 16, 2018 Monroe County Circuit Court Judge Daniel S. White issued a TURNOVER ORDER for the return within 3 days to Dr. Pompy of all in rem defendants, to wit: Cash Defendant $27,814.00; Vehicle Defendant 2915 Nissan Pathfinder; and Real Estate Defendant, except certain accounts, designated TARGET ACCOUNTS located at MB& T, Merrill Lynch, and E-Trade, that were transferred on consent to the jurisdiction of the federal court upon false representation that there was an ANTICIPATORY SEARCH WARRANT.

246.  Cash Defendant $27, 814.00 in U.S. Currency was visibly over the jurisdiction of the First District Court of Michigan and should not have been seized on September 26, 2016.

247.  Plaintiffs had no alternative on March 16, 2018, but to give consent to the transfer of the Target Accounts to the jurisdiction of the federal court, upon representation that said accounts were already seized and frozen in February 2018 by a federal court **ANTICIPATORY SEIZURE WARRANT**, whose records were allegedly sealed. In fact, Honorable Judge White was misled, absent any evidence of the existence of such anticipatory seizure warrant.

248. Plaintiffs were later advised that the **ANTICIPATORY SEIZURE WARRANT would have** violated due process on the ground:

(A) That the federal court was not informed that the Anticipatory Seizure Warrant would be based upon a search and seizure warrant issued by magistrate Jessica Chaffin of the First District Court of Michigan who had no jurisdiction over the financial accounts.

(B) That the federal court would not have signed an ANTICIPATORY SEIZURE WARRANT had it been informed of the misconduct, errors, and mistakes of magistrate Chaffin and judge Jack Vitale of the First District Court of Michigan in seizing and freezing above their jurisdiction: Plaintiffs $27,814.00 in U.S. Currency; $346,847.63 at MB& T; $404,324.67 at E*Trade; $1, 102,210.65 at Merrill Lynch; and a 2015 Nissan Pathfinder worth over $25,000.00.

(C) That the First District Court search warrants, dismissed on March 16, 2018 as corollaries of the dismissed civil forfeiture action under a settlement agreement, would be an illegal basis for the 2018 federal anticipatory warrant, when no probable cause existed.

D) That Plaintiffs property were turned over to agent Brian Bishop on and after September 26, 1986, and more than 90 days had elapsed and notice thereof had not been given to Plaintiffs in violation of 18 USC 983 (a) (1) (A) (iv).

249. The settlement agreement of March 16, 2018 shows the following:

(1) Dr. Pompy and IPM expressly deny the allegations and claims in the in rem civil forfeiture action.

(2) Neither the agreement nor any of its terms was an express or implied admission of wrongdoing, misconduct, responsibility, or liability on the part of Dr. Pompy or IPM.

(3) MCPO agreed to never bring criminal charges against Dr. Pompy and IPM regarding any aspect of the operation of IPM or Dr. Pompy's practice of medicine for actions occurring on or before the effective date of the agreement.

(4) At paragraph 1.20, "Released Parties means MCPO, MCSD, MPD, and each of their Agents, except for any agents who (a) participated in the execution of warrants executed at or on IPM's Office, Dr. Pompy's residence, MBT, M3CU, E*Trade, or Merrill Lynch and (b) are employed or were employed by, assigned to, or otherwise acting on behalf of MANTIS, MSP, or the Federal Government on the date(s) that the warrants were executed."

(5) MCPO will dismiss the Lawsuit with prejudice after securing the entry of orders by the court.

250. Judge Daniel S. White ordered that financial defendants Merrill Lynch Pierce Fenner & Smith, INC., MBT Financial Corp., and Monroe County Community Credit Union be released from all seizure warrants issued and freeze orders entered by the Monroe County Circuit Court and the First District Court for the State of Michigan as to any accounts in any way connected to Lesly Pompy and Interventional Pain Management Associates, P.C. and other certain designated accounts.

251. Judge White ordered Prosecutor William Paul Nichols to return the seized cash, real property, and vehicle to Dr. Pompy within 3 days from the effective date of the agreement; and the other seized property 14 days after March 16, 2018.

252. Dr. Pompy's vehicle was returned by Lt. Marc Moore on March 30, 2018.

253. The money seized on September 26, 2016 by officer Robert Blair and Lt. Marc Moore was required by law to be deposited into an interest-bearing account. MCL 333.7523, Sec. (2) (d).

254. Upon information and belief, the money seized was not deposited into an interest- bearing account by Lt. Marc Moore and/or officer Robert Blair.

255. Lt. Marc Moore returned to Dr. Pompy a check in the amount of $24,400.00 on March 30, 2018, holding a balance of $3,414.00, in violation of

Honorable Judge Daniel S. White order. Such conduct is tantamount to implied malice and theft.

256. To date, more than eight months have elapsed and Lt. Marc Moore continued with his contemptible conduct in failing to comply with the order of Honorable Judge White for full restitution of the U.S. Cash Currency. Such conduct is tantamount to implied malice and theft.

257. On May 4, 2018 Lt. Marc Moore and agent Brian Bishop returned to Dr. Pompy five damaged and unrepairable computers, with a value of $3, 750.00 on September 26, 2016, in violation of 18 U.S.C.1030 (a)(5). Such conduct is tantamount to implied malice and theft.

258. To date, more than nine months have elapsed, and Lt. Marc Moore, continuing with his contemptible arrogance, has not returned several items over which he continued, after March 30, 2018 to maintain an illegal ownership, possession, and control: to wit: One $ 1,200.00 computer, one $1,000.00 IPAD, one $500.00 IPOD, one $1,200.00 IPhone, two telephones belonging to Dr. Pompy and employee Jordan Rippee, one $500.00 external data storage drive...etc. in violation of Such conduct is tantamount to implied malice and theft.

VII)

## THE STATUTE OF LIMITATIONS WAS TOLLED

259. On September 23, 27, and 28, 2016 officer Robert Blair authored six affidavits for six search warrants for the search and seizure of property of Dr. Lesly Pompy and Interventional Pain Management Associates.

260. The six search warrants were issued by magistrate Chaffin and judge Vitale on September 23, 27, and 28, 2016 and ordered the Sheriff or any Peace Officer to search and seize the described property.

261. The search warrants furthermore ordered that the affidavits in support of the search warrants shall be suppressed and not given to the person whose property was seized or whose premises were searched **until that person is**

41

**charged (1) with a crime, or (2) named as a claimant in a civil forfeiture proceeding involving evidence seized as a result of the search, or (3) until further ordered by the Court.**

262. The search warrants tolled the Michigan Statute of Limitations on September 23, 27, and 28, 2016.

263. On September 26, 2016 MANTIS and other law enforcement agencies raided Dr. Pompy home and residence.

264. On December 22, 2016 the People of the State of Michigan filed in Monroe County Circuit Court an in rem civil forfeiture case against Dr. Pompy's as claimant, but served Dr. Pompy's attorneys in January 2017.

265. Plaintiffs claim accrued on December 22, 2016 in accordance with magistrate Chaffin search warrants; and in January 2017 with the service of the summons and complaint.

266. On March 22, 2017 Dr. Pompy filed his answer with 11 affirmatives defenses.

267. On March 16, 2018 upon a settlement agreement between Monroe County Prosecutor William P. Nichols, Dr. Pompy, and IPM, Monroe County Circuit Court Judge, Honorable Daniel S. White, dismissed the civil forfeiture action with prejudice, issued an Order to Return Property, and released Merrill Lynch, MB& T and Monroe County Community Credit Union from all seizure warrants issued and freeze orders entered by **the Monroe County Circuit Court  or by the First District Court of Michigan**, as to any accounts in any way connected to Lesly Pompy, interventional Pain Management Associates, P.C., United Administrative Services of Monroe, LLC …etc.

268. Plaintiffs claim re-accrued on March 16, 2018.

269. On June 26, 2018 the federal prosecutor commenced a criminal forfeiture action against Dr. Pompy..

270. Dr. Pompy combined claim re-accrued a third time on June 26, 2018 upon service of the federal criminal forfeiture action; a fourth time with the government shutdown; and will accrue a fifth time at the end of the proceedings.

271. Dr. Pompy claim arose out of the law enforcement misconduct in his detention and in the severity of the execution of the search warrants, and will accrue upon his final recovery from fear and emotional shock sustained on September 26, 2016.

272. Dr. Pompy condition was caused, precipitated and/or aggravated on September 26, 2016, and continuing, by the cruel and unusual punishment imposed upon him by Lt. Marc Moore, agent Brian Bishop, and officer Shawn Kotsch during the long and illegal detention.

273. Dr. Pompy condition was precipitated and aggravated on September 26, 2016, and continuously thereafter, by the discrimination, defamation, intimidation, false statements and threat by Lt. Marc Moore and Ray Kisonas in Monroe News, various newspapers, and social media.

274. Dr. Pompy preexisting fear of weapon reappeared during the raid of September 26, 2016 and was aggravated by Lt. Marc Moore and Ray Kisonas publication in Monroe News on October 13, 14, and 15, 2016, which caused Dr. Pompy to continuously regurgitate the souvenir of a 1985 event where he was shot in the left arm by a would-be thief.

275. Dr. Pompy Claim for defamation and false light claim on September 26, and October 13, 14, and 15, 2016 accrued in 2017 and continued to accrue in 2018 until the present time on account of illness and permanent health condition.

276. Dr. Pompy claim for false claim on and after September 26, 2016 is protected by the three-year statute of limitations.

277. Dr. Pompy has a timely valid claim against Lt. Marc Moore and Ray Kisonas for defamation, false claim, and discrimination in Monroe News in 2017 and January 19, 2018.

278.  Dr. Pompy claim for false imprisonment against Lt. Marc Moore, agent Brian Bishop, and officer Shawn Kotsch arose on September 26, 2016, but accrued on December 22, 2016, March 16, 2018, June 26, 2018, and also with the government shutdown.

279.  Dr. Pompy claim for false imprisonment re-accrued and will accrue again many times, and is not barred by the two-year statute of limitations of MCL 600-5805 (2).

280.  Dr. Pompy claim for frauds is protected by the six-year time limitations.

281.  Plaintiffs action to recover damages for false light claim, injuries and property is protected by the 3-year statute of limitations. [MCL 600. 5805 (1)]

282.  Dr. Pompy claim is further tolled by the government shutdown.

283.  The settlement agreement of March 16, 2018 released MCPO, MCSD, MPD, and each of their Agents, **except for any agents** who (a) participated in the execution of warrants executed at or on IPM's Office, Dr. Pompy's residence, MBT, M3CU, E*Trade, or Merrill Lynch and (b) are employed or were employed by, assigned to, or otherwise acting on behalf of MANTIS, MSP, or the Federal Government on the date(s) that the warrants were executed. (Paragraph 1.20)

VIII

## COMMON ALLEGATIONS

### AGAINST DISTRICT COURT  MAGISTRATE TINA TODD, MAGISTRATE JESSICA CHAFFIN, AND JUDGE JACK VITALE

284. The conduct of magistrate Todd, magistrate Chaffin, and judge Vitale was prejudicial to the effective and expeditious administration of the court.

285.  Magistrate Todd, magistrate Chaffin, and judge Vitale violated their constitutional oath of office, the scope of their employment, and the scope of their judicial authority. MCL 691.1407  Sec. 7 (2) (a).

44

286. Magistrate Todd, magistrate Chaffin, and judge Vitale committed gross negligence which was the proximate cause of damages to Plaintiffs. MCL 691.1407 Sec. 7 (2) (c).

287. Magistrate Todd, magistrate Chaffin, judge Vitale conduct was reckless and prejudicial.

288. Magistrate Todd, magistrate Chaffin, and judge Vitale demonstrated a substantial lack of concern for whether injury or damage results.

289. Plaintiffs are entitled to a lien on the $50,000.00 Performance Bond filed by Magistrate Todd with Monroe County Treasurer and the Chief Judge of the District Court.

290. Plaintiffs are entitled to a lien on the $50,000.00 Performance Bond filed by Magistrate Chaffin with Monroe County Treasurer and the Chief Judge of the District Court.

291. Magistrate Todd, Magistrate Chaffin, judge Vitale violated substantive due process prohibiting the government from infringing on fundamental constitutional liberties.

292. Magistrate Todd, Magistrate Chaffin, judge Vitale are not entitled to qualified immunity. Their conduct violated clearly established statutory or constitutional right of which a reasonable person would have known.

(IX)

### ALLEGATIONS AGAINST MAGISTRATE TINA TODD

293. Officer Robert Blair reported on September 23, 2016 that on September 21, 2016 magistrate Tina Todd issued a search warrant for the search and seizure of financial records of Dr. Pompy and Interventional Pain Management Associates [sic] at MB& T, 102 East Front Street, in the City of Monroe, County of Monroe, State of Michigan 48101.

45

294. Officer Blair affidavit for search warrant and magistrate Todd search warrant of September 21, 2016 have never been produced in spite of Dr. Pompy's repeated demands to MB& T-- personally and by subpoena served by counsel-- and in spite of Dr. Pompy diligent effort at the Monroe County Clerk's Office.

295. Officer Blair affidavit for search warrant on September 21, 2016 appeared to be a hoax, as well as the alleged search warrant ordering the release of financial information by MB& T on Plaintiffs.

296. Magistrate Todd has a history of misconduct. **Michael D. McCray v. Marc Moore, et al. U.S. District Court, Eastern District of Michigan, Southern Division, Case No. 07-13297 (US COURTS-mied-2 -07-cv-13297-1...)**

### X

### ALLEGATIONS AGAINST MAGISTRATE JESSICA CHAFFIN

297. On September 23, 2016 upon a 3-page overbroad affidavit for search warrant authored by officer Robert Blair, an invalid search warrant was issued, in violation of Michigan Court Rules Rule 1.109 (D) (1) (b), for the search and seizure of the property/person, if found, specifically described as any and all business records of Lesly Pompy and/or Interventional Pain Management Associates [sic], related to patient identity, treatment or medical records and billing information at Interventional Pain Management [sic],730 North Macomb Street, Suite 222, Monroe, Michigan 48162.

298. Interventional Pain Management Associates, P.C., the plaintiff herein, was not exactly described and was not served.

299. The address of the property was not exactly described.

300. The name, address, and the case number of the issuing court were not given.

301. The name of the magistrate was not printed, and his/her signature was illegible and unascertainable.

302. Dr. Pompy learned months later that the magistrate was Jessica Chaffin of the First District Court of Michigan, 106 E. First Street Monroe Michigan 48161.

303. The value of the seized property and the frozen financial accounts was over and above the $25,000.00 jurisdiction of the First District Court of Michigan.

304. On September 23, 2016 upon a second 3-page overbroad affidavit for search warrant authored by officer Robert Blair, a second invalid search warrant was issued, in violation of the Michigan Court Rules Rule 1.109 (D) (1)(b), ), for the search and seizure of the property/person, if found, specifically described as any and all business records of Lesly Pompy and/or Interventional Pain Management Associates [sic], related to patient identity, treatment or medical records and billing information at the residence found at 533 North Monroe Street, Monroe, Michigan 48162.

305. Interventional Pain Management Associates, P.C., the plaintiff herein, was not exactly described and was not served.

306. The name, address, and the case number of the issuing court were not given.

307. The name of the magistrate was not printed and his/her signature was illegible and unascertainable.

308. Dr. Pompy learned months later that the name of the magistrate was Jessica Chaffin.

309. Dr. Pompy learned months later that the issuing court was the First District Court of Michigan.

310. The value of the seized property and the frozen financial accounts was over and above the jurisdiction of the First District Court of Michigan.

311. On September 27, 2016 upon an overbroad affidavit authored by officer Robert Blair, an invalid search warrant was issued, in violation of Michigan Court Rules Rule 1.109 (D), for the search and seizure of accounts or account

47

information related to any account owned in whole or in part by Lesly Pompy and/or Interventional Pain Management Associates [sic] located at MB& T, 102 East Front Street in the City of Monroe, County of Monroe, State of Michigan 48161.

312.  Affiant Robert Blair mistook plaintiff Interventional Pain Management Associates, PC . He served neither Interventional Pain Management Associates, PC P.C., nor Interventional Pain Management Associates [sic].

313.  The name, address, and the case number of the issuing court were not given.

314.   The name of the magistrate was not printed and his/her signature was illegible and unascertainable.

315.  Dr. Pompy learned months later that the name of the magistrate was Jessica Chaffin.

316 The order of magistrate Jessica Chaffin was illegally executed by affiant Robert Blair **in violation of MCL 780. 654 Sec. 4. (1), and (2);**

317.  Dr. Pompy learned months later that the issuing court was the First District Court of Michigan.

318.  Magistrate Chaffin maliciously reiterated the same errors, mistakes, and misconduct on August 14, 2017 by illegally issuing, upon detective Blair affidavit, a fourth invalid search warrant for the search and seizure of all business records of the medical practice of Lesly Pompy and Interventional Pain Management Associates (sic) at iPatient Care in New Jersey.
Detective Blair did not search the records in New Jersey for the execution of the warrant. He illegally served the warrant by FAX upon iPatient Care in violation of court order and the statutes.
The name, address, and the case number of the issuing court were not given. The name of the magistrate was not printed and his/her signature was illegible and unascertainable.  Dr. Pompy and Interventional Pain Management Associates

were not described. Dr. Pompy learned months later that the issuing court was again the incompetent First District Court of Michigan; and that the magistrate was again Jessica Chaffin.

XI

## ALLEGATIONS AGAINST JUDGE JACK VITALE

319. On September 28, 2016 upon an overbroad affidavit for search warrant authored by officer Robert Blair, Judge Jack Vitale issued, in violation of Michigan Court Rules Rule 1.109 (D), an invalid search warrant for the search and seizure of all accounts or account information related to any account owned in whole or in part by Lesly Pompy and/or Interventional Pain Management Associates [sic] at Merrill Lynch, located at 4800 Deerlake Drive East Building R First Floor Jacksonville Florida 32246.

320. Interventional Pain Management Associates P.C. was not exactly described.

321. The name, address, and the case number of the issuing court were not given.

322. The balance of the accounts was over and above the jurisdiction of the First District Court of Michigan.

323. The First District Court of Michigan had no jurisdiction outside of Monroe County in civil forfeiture proceedings.

324. On September 28, 2016 upon an overbroad affidavit for search warrant authored by officer Robert Blair, Judge Jack Vitale issued, in violation of Michigan Court Rules Rule 1.109 (D), an invalid search warrant for the search and seizure of the property/person to be searched for and seized, if found, specifically described as all accounts or account information related to any account owned in whole or in part by Lesly Pompy and/or Interventional Pain Management Associates [sic] at E-Trade Securities LLC located at Harborside Financial Center 501 Plaza 2 34 Exchange Place Jersey City, New Jersey 07311.

325. The name, address, and the case number of the issuing court were not given.

326. The value of the financial accounts was over and above the jurisdiction of the First District Court of Michigan.

327. The FIRST District Court of Michigan has no jurisdiction outside of Monroe County in civil forfeiture proceedings.

328. On September 28, 2016 upon an overbroad affidavit for search warrant authored by officer Robert Blair, Judge Jack Vitale issued, in violation of Michigan Court Rules Rule 1.109 (D), an invalid search warrant for the search and seizure of property/person to be searched and seized, if found, specifically described as all accounts or account information related to accounts or account information related to Dr. Pompy and Interventional Pain Management Associates [sic at Monroe County Community Credit Union, 715 North Telegraph Road Monroe Michigan 48162.

329. The name, address, and the case number of the issuing court were not given.

330. The seized accounts were owned by three innocent corporations: L Pompy Land Development, LLC, The Pain Foundation, and Interventional Pain Management Associates, P.C.

331. The search warrants issued by magistrate Todd, magistrate Chaffin, and judge Vitale, for the searches and seizures of Plaintiffs property and financial accounts, violated the Fourth Amendment, the Due Process and Equal Protection Clause of the Fourteenth Amendments protecting Dr. Pompy civil rights; MCL 780.658 prohibiting officer Robert Blair from procuring a search warrant maliciously and without probable cause; and the State and Federal Privacy Laws.

XII

**COMMON ALLEGATIONS**

## BLUE CROSS AND BLUE CROSS COMPLETE VIOLATED PUBLIC POLICY OF THE STATE

332. State and Federal Privacy Laws prohibit unauthorized access to Blue Cross and Blue Cross Complete members private information, and violators may be subject to prosecution.

333. Clause 7.7 of Blue Cross Practitioner Agreement provides that the corporations may disclose TRUST PRACTITIONER specific information:

 (a) Pursuant to any federal, state or local statute or regulations;

 (b) To customers for purposes of audit and health plan administration so long as the customer agrees to restrict its use to these purposes;

 (c) For purposes of public reporting of benchmarks in utilization management and quality assessment initiatives, including publication in databases for use with all consumer driven health care products, or other similar BCBS business purposes; and

 (d) For civil or criminal investigations, prosecutors, or litigator to the appropriate law enforcement authorities or in response to appropriate legal processes.

334. Blue Cross policies are preempted by state public policy.

335. Blue Cross Practitioner Agreement has not amended HIPPA, Blue Cross HIPPA Compliance Statement, the Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2), federal, state, and local privacy laws and rules, the Notice of Privacy Practices between the patients and his physicians.

336. Blue Cross wrongfully offered into evidence in administrative proceedings a PHARMACY UTILIZATION project, dated 7/25/17, of 2012-2016 data consisting of prescriptions, medical records, and mental health of ten Medicare/Medicaid patients, to wit: Ricky Bryant, Evelyn Sarnowsky, Judy Shinevarre, Catherine Bussell, Roy Jr. Fisher, Abina Fix, Cheryl Holligworth, Lods Buell, David Cools, and Heidi Smallwood.

337. Information from BCBSM Pharmacy Utilization project was restricted and was disclosed in violation of state public policy.

338. Mich. Comp Laws Ann Sec. 333.2632 holds that all information, records, and other data, concerning medical research project, are inadmissible in a court or agency proceeding.

339. Mich. Comp Laws Sec. 330.1748 and Sec. 330.1748a hold that records and information relating to the mental health of an individual are confidential and privileged to the patient and may only be disclosed under an order or a subpoena of a court of record or a subpoena of the legislature.

340. Dr. Pompy patients medical files were illegally searched, seized and divulged, in violation of the Fourth Amendment and Article 1 of the Michigan Constitution protecting Plaintiffs against unreasonable searches and seizures, warrantless searches and seizures; in violation of MCL 780.658 prohibiting any person from procuring a search warrant maliciously and without probable cause; and in violation of the Privacy Laws.

341. Patients health information, identities, and MAPS reports are protected health information and cannot be downloaded, obtained, seized, divulged without valid subpoenas, valid search warrants, and/or proper medical authorizations.

342. Blue Cross violated its own rule in failing to require its prescribed medical forms for release of medical information, to wit:

a) Member Consent for Release of Protected Health Information.

b) Request for release of members protected health information.

c) Authorization for use and Disclosure of psychotherapy.

d) Request for access to designated protected health information records.

e) Affidavit of Next of Kin for complaint about Blue Cross privacy practices or failure to comply with their Notice of Privacy Practices, or federal, state, and local privacy laws and rules.

## XIII
## COMMON ALLEGATIONS

**AGAINST DEFENDANTS BRIAN BISHOP, MARC MOORE, ROBERT BLAIR, SHAWN KOTCH, JOHN LASOTTA, MICHAEL ZSENYUK, JIM GALLAGHER, BRIAN ZASADNY, JAMES HOWELL, DIANE SILAS, CARL CHRISTENSEN, J. Alan ROBERTSON, SHELLY EDGERTON, SEAN SIEBIGTEROTH, KIM GAEDEKE, and VAUGHN HAFNER.**

343. All the above defendants violated state and federal statutes, including the Chain of Custody legal context, jointly or severally, both within the scope of their employment and outside the scope of their authority.

344. Defendants conspired, colluded, and combined to obtain, disclose, re-disclose, and divulge unauthorized medical records of Dr. Pompy patients; confidential MAPS reports; inaccurate, unsubstantiated, unsigned, uncertified, Prescriber Block Analysis, Utilization Review, Pharmacy Utilization Review, and statistically incorrect comparison between the practice of pain management physicians and the practice of anesthesiologists.

345. Defendants conspired, colluded, and combined to submit into evidence at a DEA hearing in July 2017 incomplete, unauthorized, and tainted medical records on five Subsis patients, without a review of the patients medical history, actual diagnoses and complaints, years of concurrent treatments for multiple diagnoses and/or procedures, hospital records, date of initial treatment at Dr. Pompy's office, years of treatment and prior diagnoses of the referring physicians.

346. Patient D.A. initially saw Dr. Pompy on May 14, 2016.

347. Submission of 338 pages of patient D.A. records at the DEA hearing and Dr. Christensen expert testimony was illegal, incomplete, and unreliable without the patient prior hospital and medical records, without the diagnosis and prognosis of the referring doctors, without the records on past treatment.

348.  Patient R.B. initially saw Dr. Pompy on May 28, 2015.

349.  Submission of 766 pages of patient R.B. medical records was illegal, incomplete, and unreliable, without the patient prior hospital and medical records, without the referring doctors diagnosis and prognosis, without the past treatment.

350.  Patient R.F. initially saw Dr. Pompy on January 19, 2016.

351.  Submission of 628 pages of records of patient R.F. was illegal, incomplete, and unreliable, without the patient prior hospital and medical records, referring doctors diagnosis and prognosis, past treatment, all easily obtainable by subpoena.

352.  Patient J.H. initially saw Dr. Pompy on January 18, 2016.

353.  Submission of 1,423 pages of medical records of patient J.H. was illegal, incomplete, and unreliable, without prior hospital and medical records, referring doctors diagnosis and prognosis, past treatment.

354.  Patient E.S. initially saw Dr. Pompy on January 8, 2015.

355.   Submission of 598 pages of medical records was incomplete and unreliable, without prior hospital and medical records, referring doctors diagnosis and prognosis, past treatment.

356.  Patient "James Stewart" came to the private medical office of Dr. Pompy in January 2016.

357.   Defendants conspired, colluded, and combined to have Patient "James Stewart" illegally videotape Dr. Pompy employees, patients, and visitors in a private medical office, without their knowledge, consent, or authorization.

358.  Defendants conspired, colluded, and combined to have Plaintiffs DEA certificates of registration summarily suspended on March 2, 2017.

359.  Defendants conspired, colluded, and combined to have Dr. Pompy's medical license summarily suspended on August 3, 2017.

360.  Defendants conspired, colluded, and combined to submit into evidence, without a peer group review or a professional peer group review, at the BPL hearing in October 2017, unauthorized, incomplete, and tainted medical records of the patients of Dr. Pompy, without the patients medical history, actual diagnoses and complaints, years of concurrent treatments for multiple diagnoses and/or procedures, hospital records, date of initial treatment at Dr. Pompy's office, number of years of treatment, and prior files, diagnosis, and prognosis of the referring physicians.

361.  Defendants illegally submitted at the DEA hearing and at the BPL hearing, without a peer group review, without a summary review of the 2015 and 2016 of Dr. Pompy's  patients medical records, without the patients medical history, actual diagnoses and complaints, years of concurrent treatments for multiple diagnoses and/or procedures, hospital records, date of initial treatment at Dr. Pompy's office, years of treatment, and prior files and diagnoses of the referring physicians.

362.  Defendants failed to provide reliable testimony and expert opinion, a peer group review or a professional peer group review based upon the patients medical history, past and present complaints, actual diagnoses and complaints, prognoses, number of years of concurrent treatments, number of years of multiple diagnoses and/or procedures, hospital records, date of initial treatment at Dr. Pompy's office, prior diagnoses and number of years of treatment, prior medical files and diagnoses of the referring physicians.

363.  Defendants illegally downloaded on September 26, 2016 over 1,500 medical records at Dr. Pompy's office, and illegally disclosed and re-disclosed them without the patients authorization, for review by Dr. Carl Christensen, Dr. Leon Pedell, agent Brian Bishop, and other physicians, federal agents, and law enforcement officers, in violation of State and federal laws on the confidentiality of medical records, identities of patients, and MAPS reports; and in violation of

364. Defendants conspired, colluded, and combined to obtain, disclose, and re-disclose illegally, without a peer group review or a professional peer group review or required authorizations, Dr. Pompy's patient medical records for the purpose of an anticipatory search warrant, a potential criminal forfeiture, and/or other legal procedures.

365. Defendants conspired, colluded, and combined to obtain and divulge unauthorized protected medical records.

366. Defendants acts and actions were negligents, fraudulent and malicious.

367. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

368. U.S. Constitution and Michigan Constitution require suppression of all the evidence stemming from illegal seizure and arrest.

XIII

## COMMON ALLEGATIONS

## AGAINST DEFENDANTS MARC MOORE, ROBERT BLAIR, SHAWN KOTSCH, JON LASOTTA, BRIAN BISHOP

369. Defendants violated State and federal statutes, jointly or severally, outside the scope of their employment and outside the scope of their authority.

370. Defendants engaged in excessive force in searching and seizing property at DR. POMPY office and home.

371. Defendants engaged in the false arrest and illegal imprisonment of Dr. Pompy;

372. Defendants engaged in the malicious prosecution of Dr. Pompy.

373. Defendants violated Dr. Pompy First Amendment Right against retaliation.

374. On September 26, 2016 defendants violated Dr. Pompy civil rights and privacy and the Chain of Custody legal context:

a) By illegally searching, seizing, divulging unauthorized patients medical records under the possession and control of Dr. Pompy.

b) By searching, seizing, and divulging confidential and privileged information on the mental health of patients in possession and control of Dr. Pompy in violation of federal and state statutes.

c) By searching, seizing, and divulging confidential and privileged health care information on Dr. Pompy's Blue Cross, Blue Cross Complete and other health insurer patients in violation of federal and state statutes.

d) By seizing at Dr. Pompy office personal, business, patients property and financial accounts without valid search warrants, probable cause, and due process.

e) By searching, seizing, and freezing illegally Dr. Pompy and employees protected pension accounts, located in New York and New Jersey financial institutions, outside of the jurisdiction of the First District Court of Michigan and the Monroe County Circuit Court.

f) By searching, seizing, and freezing illegally non-owned innocent accounts related to plaintiffs, whose value was over and above the competence and jurisdiction of the First District Court of Michigan.

g) By colluding, conspiring, and combining for the summary suspension of Plaintiffs DEA certificates of registration on March 2, 2017.

h) By producing false, illegal, and impermissible evidence against Dr. Pompy at a DEA hearing on the summary suspension of the Plaintiffs certificates of registration in July and August 2017.

i) By falsely testifying and/or producing impermissible evidence at the BPL hearings on the summary suspension of Dr. Pompy's license to practice medicine at the Michigan Administrative Hearing System.

j)  By conspiring with BPL to have the BPL emergency hearing stretched over one year and a half in violation of Dr. Pompy constitutional right to a speedy trial.

k)  By conspiring with BPL to have the emergency hearing, scheduled for October 16 and 17, December 18 and 20, 2017 extended to March 2, 5, 9, and 26, 2018; May 30 and 31, 2018, June 1, June 18, June 19, June 20, and June 22, 2018, commencing at 8:30 a.m. on each day, without any fault by the Plaintiffs.

l)  By combining, conspiring, and colluding for the summary suspension of Dr. Pompy medical license to practice medicine in the State of Michigan, without consideration to Dr. Pompy's disruption of medical practice, drain on financial resources, and personal anxiety.

m)  By reporting to government agencies unverified, unsworn, inaccurate, impermissible, confidential, and unauthorized MAPS reports and other Statistics for illegal purposes, in violation of public policy of the state of Michigan.

375.  Defendants closed Dr. Pompy ProMedica Monroe Regional Hospital- based primary medical office on North Macomb Street by illegally seizing, trashing, removing for their own profits patient medical records, office computers, software, business records...etc.

376.  Defendants caused Dr. Pompy to lose his ProMedica Monroe Regional Hospital privilege and be unable to provide anesthesia administration services to the hospital patients.

377.  Defendants illegally distributed in violation of the Chain of Custody legal context:

a) Dr. Pompy Medicare and Medicaid patients medical records obtained by officer Jon LaSotta from i-Patient Care maliciously and fraudulently without a valid search warrant.

b) Confidential and privileged information on the mental health of Dr. Pompy patients.

c) Confidential and privileged information on the Dr. Pompy patients names, addresses, identities, urine drug screens.

d) Confidential MAPS report on Dr. Pompy's Medicare, Medicaid, and Blue Cross patients.

e) Confidential and privileged information on Dr. Pompy patients on disability in violation of ADR.

f) Confidential and privileged health records protected by Blue Cross HIPAA Compliance Statements and Michigan Public Health Code.

378. Defendants violated:

a) The Computer Fraud and Abuse Act [(18 U.S.C. sec.1030 (a)(5)(A);]
b) The Health Insurance Portability Laws and Accountability Act (HIPAA)
c) The Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2)
d) The Americans with Disabilities Act (ADR)
e) The Right to Financial Privacy Act (12 U.S.C.3401, et seq.)
f) Federal, state, and local privacy laws and riles.

## XV

### FALSE LIGHT CLAIM AGAINST Lt. MARC MOORE AND RAY KISONAS

379. Dr. Pompy has a valid and meritorious false light claim against Lt. MARC MOORE AND RAY KISONAS for misrepresentations and false statements arising from September 26, 2016 to January 19, 2018, when Lt. Marc Moore and reporter Ray Kisonas violated Dr. Pompy civil rights by publishing outright lies made with malicious intent to see Dr. Pompy:

a) Lose permanently his DEA registrations and Michigan medical license to practice medicine.

b) Prosecuted by the federal or state governments, and imprisoned.

c) Dr. Pompy assets forfeited by The United States of America.

380. Lt. Marc Moore and reporter Ray Kisonas commenced to defame Dr. Pompy on September 26 2016 by reporting false statements in the Monroe News.

381. On September 26, 2016 Lt. Marc Moore inaccurately reported within the scope of his employment to Ray Kisonas, for publication in the Monroe News, that Dr. Pompy was accused, a) of prescribing more than one million doses of narcotic pills in the past year alone; b) of seeing hundreds of patients a day; c) of issuing prescriptions for opiates to people who did not need them; and d) of being responsible for his patients selling his pills on the streets.

382. On September 27, 2016 Lt. Marc Moore , outside the scope of his employment, tipped off Ray Kisonas, for publication in the Monroe News, that Dr. Pompy issued illegal prescriptions for opiates, such as NORCOS and Oxycodone, and that he will try to have the plaintiff's license or his ability to prescribe narcotics suspended immediately--at least on a temporary basis.

383. Officer Moore inaccurately tipped off at the same time, outside the scope of his employment, THE BLADE of Toledo, for publication, "Our information was, you go in there a handful of times and eventually you'll get a medication from him." "Patients and their relatives had contacted Law Enforcement with allegations against Dr. Pompy; an undercover detective had confirmed the tips."

384. Officer Moore further inaccurately tipped off, outside the scope of his employment, Monroe Evening News for publication, that Dr. Pompy was the leading cause of heroin addiction in Monroe County.

385. On October 13, 2016 Officer Moore tipped off  Ray Kisonas, outside of the scope of his employment, for publication in the Monroe Evening News, that investigators were waiting for documentation from Dr. Pompy's office at ProMedica Monroe Regional Hospital; that the company in charge of providing these documents were moving slowly; that since the September 26 raid, agents have requested medical files, but the release of those files had been laborious; that prior to the raid the prosecutor's office had issued the search warrant.

386. On October 14, 2016 officer Marc Moore tipped off  WTOL  of Toledo for

publication that Dr. Pompy was over prescribing narcotics; that Dr. Pompy committed prescription fraud and illegal distribution of narcotics; that he was quite certain criminal charges were forthcoming; that Dr. Pompy conducted business illegally.

387.  On October 15, 2016 officer Moore tipped off WTOL of Toledo, outside the scope of his employment, that Dr. Pompy was under investigation for prescription fraud and illegal distribution of **illegal drugs; that Dr. Pompy prescribed more than 1.2 million doses of controlled** substances in the past year to 1500 patients; that many patients filled prescription and sold the pills on the street; and that evidence will be turned over to the Monroe County Prosecutor's Office.

388.  On January 19, 2018 officer MOORE, acting outside the scope of his employment or within the belief of the scope of his authority, combined with Ray Kisonas, acting within the scope of his employment, to violate Dr. Pompy's privacy by publishing in the Monroe Evening News the name and address of Dr. Pompy; the photo of the home of Dr. Pompy; confidential financial information and assets of Dr. Pompy, whereas white suspects are not subject to the same treatment and disclosure in Monroe News.

389.  Defendants Marc Moore and Ray Kisonas discriminated against Dr. Pompy on the basis of national origin, color, and race.

390.  Defendants Ray Kisonas and Marc Moore continuous accusations against Dr. Pompy, without any basis in fact or at law, were geared to destroy Dr. Pompy's reputation, credibility, and good standing in the community.

391.  Defendants Ray Kisonas and Marc Moore misrepresentations were to push Plaintiffs out of Monroe County, as it was done in the past against other black physicians.

392.  Defendants Lt. Marc Moore and Ray Kisonas' false statements, misrepresentations, allegations, and accusations in 2017 were to destroy Dr. Pompy's reputation, credibility, and standing in the community.

393.  Defendants Lt. Marc Moore and Ray Kisonas' false statements, misrepresentations, allegations, and accusations were collaterally dismissed with

prejudice in the in rem civil forfeiture complaint by a settlement agreement in Monroe County Circuit Court on March 16, 2018 between MPO and the Plaintiffs.

394.  Officer Moore conspired, colluded, and combined with Ray Kisonas to wrongfully and erroneously publish on January 19, 2018 in the Monroe News that Dr. Pompy's home was seized by the federal government.

395. The misrepresentations and false statements of Lt. Marc Moore and Ray Kisonas in Monroe News caused Dr. Pompy to suffer great harm and prejudice.

396. Lt. Marc Moore and Ray Kisonas are collaterally estopped from submitting into evidence their misrepresentations and false statements contained in the complaint of the dismissed in rem civil forfeiture action.

397.  The dismissal of the in rem civil forfeiture action is ground for a directed verdict against Lt. Marc Moore and Ray Kisonas.

XVI

## BLUE CROSS AND JAMES HOWELL COMMITTED FRAUDS IN THEIR CRIMINAL INVESTIGATION OF PLAINTIFFS

398.  Defendants Blue Cross and James Howell, alias patient "James Stewart", committed frauds, deceit, defamation, unauthorized disclosure and distribution of health protected information, unfair claim practice, business interference and unfair dealings, forgery, intentional torts, and breach of contracts which commenced in December 2015 and continued until June 26, 2018.

399.  Blue Cross Corporate and Financial Investigation (CFI) department, Utilization Review (UR) department, and Clinical Pharmacy Fraud, Waste and Abuse (CPFWA) department are corporate services:

 a)  Defrauding practitioners by forgery, concealment, and false statements;

 b)  Submitting into evidence in administrative proceedings impermissible, unofficial statistics, data, and reports not verified by a Blue Cross current officer or director, or by a former officer or director of a defunct affiliate.

c) Violating the Rules of Civil Procedures.

400. On February 18, 2016 Lt. Marc Moore reported that the MANTIS Office met with Blue Cross investigators in December 2015 about conducting a joint investigation involving Dr. Lesly Pompy.

401. Blue Cross Provider Agreement violated the Bill of Rights and established laws and policies.

402. Blue Cross had no issues with Plaintiffs and had no reason to investigate them under their Practitioner Affiliation Agreement, the Blue Cross Complete Member Handbook or the Blue Cross Manual.

403. There was no complaint against Plaintiffs before BHCS/Enforcement Division of the Michigan Department of Licensing and Regulatory Affairs, in Lansing, Michigan.

404. There was no complaint against Plaintiffs before Blue Cross Special Investigation Unit, in Essington, Pennsylvania.

405. There was no complaint against Plaintiffs before Blue Cross, Member Grievances, in North Charleston, South Carolina.

406. There was no complaint against Plaintiffs before Blue Cross, Claim Department, in London, Kentucky.

407. Lt. Marc Moore falsely stated to Blue Cross that Information had come from various sources that Dr. Pompy was writing large amounts of opioid prescriptions to patients who showed drug seeking behaviors and to patients who are diverting those medications on the streets.

408. Blue Cross knew or should have known by its participation in the prosecutions of over 4000 providers that anonymous tip by itself does not constitute a basis for reasonable suspicion.

409. Blue Cross knew or should have known that hunches are insufficient, improper, and invalid to support a search warrant and establish probable cause.

410. More than two years had elapsed and Lt. Moore had not been able to produce any informant or the source of his information.

411. Lt. Marc Moore sole and only informant to be was James Howell, a Blue Cross undercover investigator who commenced an investigation in January 2016.

412. CFI Brian Zasadny assigned James Howell to conduct undercover visits to Dr. Pompy office, under the patient name "James Stewart" and the supervision of Lt. Moore.

413. James Stewart had in his possession a medical report, dated October 7, 2015, indicating that Dr. J. Alan Robertson was seeing him secondary to back/nerve problems.

414. On December 10, 2015 Blue Cross physician consultant, Dr. J. Alan Robertson, referred James Howell, under the fake patient name "James Stewart," to Dr. Pompy for pain management.

415. Blue Cross officers, directors, managers, supervisors, and/or employees provided and/or permitted James Howell to use under fraudulent pretenses the fake name "James Stewart"; to use the fake Michigan driver license S 363 367 758 544 for identification; to use the fake date of birth of 7/9/70; to **use invalid Social Security No. 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**; and to use an ad hoc insurance card showing "Enrollee ID No. XYY925081728".

416. The scheme caused Blue Cross to sustain unnecessary expenses in violation of 18 U.S. Code Sec. 1347.

417. Blue Cross website of September 3, 2017 reported that from July 1980 to March 2017 Blue Cross referred 4, 424 cases to law enforcement, thus implying that Blue Cross opened 4,424 fake insurance policies; permitted the use of 4,424 fake driver licenses; distributed 4,424 invalid Social Security Identification cards; and handed 4,424 free ad hoc health insurance cards.

418. James Stewart went to see Dr. Pompy on January 5 and 26, 2016; February 18, 2016; March 9 and 22, 2016; April 26, 2016; May 9 and 17, 2016.

419. On January 26, 2016 "James Stewart" signed a Notice of Privacy Practices and a Narcotic Agreement in which he agreed, (1) that he "will take all prescriptions that Dr Pompy has prescribed"; and (2) that he will not use any illegal drugs.

420. On January 26, 2016 "James Stewart" signed at Dr. Pompy office a Narcotic Agreement whereby, at paragraph 12, he agreed that he would not sell, lend or give his prescription medications to anyone else and would keep them in a safe place.

421. "James Stewart" further agreed that he would not distribute his pain medication pills to other people.

422. In February 2016, James Howell confirmed his need for treatment by signing a second Narcotics Agreement and a Notice of Privacy at Dr. Pompy, which are self-explanatory.

423. On February 18, 2016 and thereafter "James Stewart" went to Dr. Pompy's office with a covert camera and recorded his visit, while in an immediate area for surveillance purposes and in communication with Lt. Marc Moore.

424. "James Stewart" made eight visits to Dr. Pompy's office and recorded each one of them.

425. "James Stewart" attempted several times to obtain controlled substances under false pretense with intent to distribute them to Lt. Marc Moore in violation of CFR 21; to aid and abet the possession of controlled substances outside of the scope of his professional practice and not for a legitimate medical purpose.

426. On February 18, 2016 James Stewart" drug screen showed positive for Nordiazepam, Oxazepam, and Tamazepam.

427. No legitimate prescription was found on Michigan Automated prescription Service (MAPS) report.

428. On March 22, 2016 " James Stewart" drug screen tested positive for barbiturates.

429. On April 26, 2016 "James Stewart" filled out Dr. Pompy's prescription for Norco and Lyrica and handed them over to Lt. Marc Moore with the consent of Blue Cross in violation of CFR 21, Michigan Public Health Code, 18 U.S.C. Sec. 1347, and his narcotics agreement with Dr. Pompy.

Blue Cross, James Stewart, and Lt. Marc Moore conspired to distribute controlled substances, aided and abetted the possession of controlled substances outside of the scope of their investigation.

430. On May 9, 2016 "James Stewart" filled out a second prescription for Norco and Lyrica and handed them over to Lt. Marc Moore with the consent of Blue Cross, in violation of CFR 21, Michigan Public Health Code, 18 U.S.C. Sec. 1347, and his narcotics agreement with Dr. Pompy.

Blue Cross, James Stewart, and Lt. Marc Moore conspired to distribute controlled substances, aided and abetted the possession of controlled substances outside of the scope of thir investigation.

431. On May 17, 2016 a non-prescribed control substance " Gabapentin" was confirmed by LCMS on "Stewart" urine drug screen, along with the presence of Lyrica.

432. Blue Cross wrongfully concealed to Dr. Pompy the personnel records and medical records of "James Stewart".

XVI

## BLUE CROSS FRAUDULENTLY SUBSTITUTED ITS 2016 OBSOLATE GUIDELINES FOR ITS 2016 ELECTRONIC BILLING SYSTEM

433. Defendants "James Stewart", Dr. Carl Christensen, and a "medical coder" reported, based upon a Blue Cross manual Medical Coding Guidelines, that Blue Cross was overbilled for the length and depth of "Stewart" visits to Dr. Pompy's

office, but offered no alternative billing or proof that Dr. Pompy intended to defraud Blue Cross.

434. Dr. Pompy did not personally do billing.  His office used his notes to bill Blue Cross on an approved software renewed and purchased yearly from i-Patient Care.

435. Blue Cross preferred and recommended electronic billing based on diagnosis, coding, complexity, evaluation and typical times. Actual time is used in anesthesia, and if counselling is the predominant service provided.

436. Defendants Stewart, Dr. Christensen, and the "medical coder" had no authority, competence, or mandate to substitute the Medical Coding Guidelines for Blue Cross official electronic billing as a means to defraud providers.

437. Blue Cross Medical Coding Guidelines is a hidden sword to obtain reimbursement for legitimate claim already paid; a means to defraud providers by threat, criminal investigation, and malicious prosecution by using Blue Cross face to face billing option instead of Blue Cross comprehensive electronic billing option based on complexity.

438. Defendants Stewart, Dr. Carl Christensen, and their "medical coder" knew or should have known that Blue Cross recommends and demands to be billed electronically on the basis of complexity, diagnosis and medical coding, and not on face to face visit.

439. Defendants Stewart, Dr. Carl Christensen, and their "medical coder" had no competence, mandate or authority to disapprove payments made several years by Blue Cross accounting department without the authorization of such department.

440. Defendants Stewart, Dr. Carl Christensen, and the "medical coder" had no competence, authority, and mandate to change Blue Cross pre-approved claim rate, already contractually negotiated with Medicare, Medicaid, the providers, and Michigan Department of Health, in order for Blue Cross to obtain restitution.

441. Blue Cross wrongfully concluded, without an audit, that Dr. Pompy committed insurance fraud; and assisted MSP, MANTIS, DEA, BPL, and Monroe County Prosecutor's Office in creating false criminal charges against Dr. Pompy for its own profits and for recovery and cost savings against victimized providers.

442. Blue Cross failed to provide, as contractually required: (1) the obsolete 2016 Procedural Terminology Coding Guidelines relied upon by officer Blair, Brian Zasadny, james Howell, Jim Gallagher, Dr. Carl Christensen and their "medical coder", in lieu and place of Blue Cross pre-approved electronic billing, prior to accusing Dr. Pompy of insurance fraud, as required by contract; or (2) the obsolete Blue Cross Healthcare Common Procedure Coding System "HCPCS" used by Zasadny, Howell, Gallagher, Dr. Christensen, and their medical coder, in lieu and place of Blue Cross electronic billing, to substantiate their overbilling allegations.

443. Blue Cross failed to identify, as contractually required, any training completed by officer Robert Blair, Brian Zasadny, "James Stewart", Jim Gallagher, Dr. Carl Christensen, and the "Medical Coder" for the understanding of ICD Manuel, ICD 10 Manual, CPT-HCPS Manual, diagnostic coding, procedural coding, and coding systems, prior to accusing Dr. Pompy of insurance fraud and overbilling.

444. Blue Cross failed to produce, as contractually contracted, any audits, reports, and investigations against Dr. Pompy by its Certified Financial Analysts (CFAs), Certified Internal Auditors (CIAs), Certified Fraud Examiners (CFEs), Certified Government Auditing Professionals (CGAPs), prior to accusing Dr. Pompy of insurance fraud and overbilling, as contractually required.

445. Robert Blair, Brian Zasadny, "James Stewar", Jim Gallagher, Dr. Carl Christensen and the "medical coder" never attended a medical billing and coding school and do not have an Associate of Science degree in Medical Administrative Billing and Coding.

446. Robert Blair, Brian Zasadny, "James Stewart", Jim Gallagher, Dr. Carl Christensen, and the "medical coder" do not know Evaluation and Management Procedure (E&M), often abbreviated to "HEM", and failed to ask the "medical coder" to look at the level of intensity and pain management.

447. Robert Blair, Zasadny, "James Howell", Dr. Christensen, and the "medical coder" did not have the required knowledge, training, and experience to:

a) Evaluate indemnity insurance, Managed Care Organization (MCO), Health Care Maintenance Organization (HMOs), Preferred Provider Organizations (PPOs);

b) Evaluate procedure, decide reimbursement, and issue Explanation of Benefits (EOB).

448. Defendants Robert Blair, Zasadny, "James Howell", Dr. Christensen, along with their "medical coder, did not have a certification in procedure and diagnosis codes used by professional medical coders, whether Current Procedure Terminology (CPT), Healthcare Common Procedure Coding System (HCPCS), CMS 1500, HIPAA, Cobra, Co-Insurance, Electronic Remittance Advice (ERA), Independent Practice Association (IPA), Medicare, Medicaid, Point of Service (POS) Plan, Triple Option Plan (TOP), TRICARE, UB-O$ (CMS-1450 form, and Utilization Limit.

449. Blue Cross does not require a social security number for payment of claim, but creates an invalid one for its investigators to violate the tax law and the Social Security Act.

450. Blue Cross medical coder failed to turn to ICD-9-CM to look for subcategories or sub-classifications to establish a diagnosis code.

451. By order of Blue Cross, "James Stewart" could not and did not perform medical tests ordered by Dr. Pompy to ascertain his true condition.

452. Blue Cross "medical coder" wrongfully failed to look at the intensity of "James Stewart" evaluation and pain management.

453. Robert Blair, Zasadny, "James Howell, Dr. Christensen, and the 'medical coder" wrongfully failed to consider the amount of work that went into HEM and the intensity option offered to Dr. Pompy under Blue Cross own server.

454. Blue Cross failed, in violation of Mich. Admin. Code r. 325.6810, to produce copies of the notarized medical authorizations, on its prescribed forms, to Diane Silas to request, obtain, and use medical records, urine tests, pharmacy utilization, and protected health information on SUBOXONE Medicare, Medicaid, Blue Cross patients, and on SUBOXONE patients of other excess health insurers as contractually required.

455. Blue Cross failed, in violation of Mich. Admin. Code r. 325.6810, to produce copies of notarized medical authorizations, on its prescribed medical authorization forms, to Brian Zasadny to obtain from MSP/MANTIS medical records, urine tests, pharmacy utilization, and protected health information on SUBSIS MEDICARE, Medicaid, and Blue Cross patients, and SUBSIS patients of other excess health insurers as contractually required.

456. Blue Cross failed, in violation of Mich. Admin. Code r. 325.6810, to produce copies of its notarized prescribed medical authorizations or subpoenas having permitted Blue Cross to forward Dr. Pompy's SUBSIS and SUBOXONE patients medical records and protected health information to DEA, BPL, Assistant Attorney Generals Jennifer Fitzgerald, M. Catherine Waskiewcz, and Timothy Erickson as evidence at the BPL hearing in Lansing, as contractually required.

XVIII

## BLUE CROSS BREACHED ITS CONTRACTUAL AGREEMENT TO SUPPORT ITS POTENTIAL FELONY CHARGES AGAINST PLAINTIFFS

457. Blue Cross, by its managers Don Gentner and Michael Zsenyuk, wrongfully and mistakenly assigned additional employees Amy Walker, Kim Johnson, "Angie", Shannon Pelphrey, Diane Silas, UR "MARI", Jim Gallagher, jointly with physician consultant Dr. J. Alan Robertson, and physician consultant Dr. Carl Christensen to initiate, conspire, collude, combine, and assist MANTISS, DEA, BPL,

and Monroe County Prosecutor's Office in the investigation of Dr. Pompy prescriptions habits in violation of the Controlled Substance Act, Sec. 802 (56) (C).

458. Blue Cross violated the provisions of Blue Cross Manual and Blue Care Complete Member Handbook.

459. Blue Cross breached its agreement with Plaintiffs in initiating a criminal investigation and prosecution of Plaintiffs on the basis of Lt. Marc Moore misrepresentations and false statements, and in failing to give notice.

460. Blue Cross certificates of incorporation or mergers do not give their officers, directors, and trustees the right to investigate and prosecute Providers without due process, without prior audits, and on the basis of law enforcement false statements, misrepresentations, and retaliation.

461. On August 8, 2016 CFI investigator Shannon Pelphrey requested banking information on Dr. Pompy from "MARI" of Utilization Review department in preparation for the raids at Dr. Pompy's office and home, in violation of the privacy laws, the confidentiality of bank records and statements, and the Right to Financial Privacy Act (12 U.S.C. 3401 et seq.).

462. CFI Brian Zasadny provided officer Robert Blair with the name and address of MB& T, where Plaintiffs maintained their accounts and other related financial accounts independently owned by several innocent corporations, in violation of the Privacy Laws, the confidentiality of bank records, and the Right to Financial Privacy Act (12 U.S.C. 3401 et seq.).

463. On August 11, 2016 CFI Brian Zasadny requested an audit by Utilization Review, after the execution of the search warrants and the seizure of the files, in order to determine loss and verify the records of Dr. Pompy in the course of his practice.

464. On November 9, 2016 CFI Amy Walker confirmed that MSP had electronic copies of all the records of Blue Cross patients.

465. On November 11, 2016, more than 45 days after the raid, Kim Johnson sent a request for audit by Amy Walker (CFI case 2015-03020).

466. Amy Walker answered that if Utilization Review provided the names of the patients' files they would need for an audit, MSP would provide those copies so the audit would not have to be done at the provider's (Dr. Pompy) office.

467. Utilization Review sent to CFI Brian Zasadny the names of the patients needed for the audit, without the required Blue Cross prescribed medical authorizations from the patients.

468. CFI Zasadny forwarded the list to MSP and obtained copies of DR. Pompy SUBSIS patients medical files, in violation of the Health Insurance Portability and Accountability Act (HIPAA), BCBSM and Blue Cross Network HIPAA Compliance Statements, 42 CFR Part 2, the Computer Fraud and Abuse Act, the Privacy laws, and Michigan Public Health Code.

469. Blue Cross committed frauds and intentional torts against Dr. Pompy and IPM.

470. James Howell committed forgery, theft of services, intentional torts.

471. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

472. U.S. Constitution and Michigan Constitution require suppression of all the evidence stemming from illegal seizure and arrest.

473. Utilization Review decided not to conduct an audit in Dr. Pompy's office in violation of the corporations routine, customarily, and contractual obligation.

474. CFI Brian Zasadny disclosed to MSP the income of Dr. Pompy from January 2012 to June 2016, in violation of Plaintiffs business relation with Blue Cross and affiliates, the Privacy Laws, and the Right to Financial Privacy Act (12 U.S.C.3401, et seq.)

475.  CFI Brian Zasadny disclosed to MSP the total amount of Dr. Pompy prescription cost, in violation of the privacy of Plaintiffs business relation with Blue Cross and affiliates.

476.  CFI Brian Zasadny disclosed to MSP Plaintiffs accounts at Monroe Bank & Trust in violation of the Privacy Laws and the Right to Financial Privacy Act (12 U.S.C. 3401 et seq.)

477.  CFI Brian Zasadny failed to use the Peer Review Process and Utilization Management mechanism contained in Blue Cross Manual, BCCM Member Handbook, and the Plaintiffs contractual agreements with the Blue Cross prior to investigating Plaintiffs.

478.  CIF Brian Zasadny wrote on August 8, 2017 that the State of Michigan LARA suspended Pompy's license as of 8/4/17 based upon CFI investigation.

479.  CIF Zasadny proudly explained that Loss was determined from the 1099 report from 2012 through mid-2016 and prescription costs for the same time frame.

480.  CIF Zasadny further wrote that the amount was used based on the records of the undercover visits and how they were documented by Pompy.

481.  CIF Zasadny further added that video showed Dr. Pompy records were erroneous.

482.  CIF Zasadny admitted his connection, participation, and demand for the raid in reporting that:

 a)  Implied Savings were the yearly average payments made for professional fees and prescriptions costs.

 b)  That Depar and PPUR submitted because a search warrant was executed by law enforcement as part of this investigation.

 c)  That FSTS update was also submitted.

483.  CFI Zasadny admits Blue Cross responsibility in the injury and damages to Dr. Pompy.

XIX

**BLUE CROSS UNVERIFIED PRESCRIBER BLOCK MALICIOUSLY CHANGED DR. POMPY PAIN MANAGEMENT PEER GROUP TO AN INNACURATE ANESTHESIOLOGY PEER GROUP COMPARISON IN SUPPORT OF ITS POTENTIAL FELONY CHARGES AGAINST DR. POMPY**

484. CFI Brian Zasadny and manager Jim Gallagher wrongfully, fraudulently, and maliciously misclassified Dr. Pompy and placed him in a peer group the latter did not belong to: Specialty 207L00000X-Anesthesiology.

485. CFI Brian Zasadny and manager Jim Gallagher further wrongfully, fraudulently, and maliciously submitted to MSP/MANTIS, BPL, DEA, and the Monroe County Prosecutor's Office the inaccurate misclassification that Lesly Pompy was an anesthesiologist who prescribed the most overall prescription medication and the most controlled prescription medication of 2,304 anesthesiologists during the date range of 01/2014 to 12/2014.

486. CFI Zasadny and manager Gallagher, wrongfully, fraudulently, and maliciously submitted further to MSP/MANTIS, BPL, DEA, and the Monroe County Prosecutor's Office the inaccurate misclassification that DR. Lesly Pompy was an anesthesiologist who ranked first in 2015 for the average number of members receiving high cost medications over 200 dollars per month, total day supply of controlled medication (52,026), average number of members per month receiving controlled prescription medication (70), and total quantity dispensed of controlled prescription (136, 267).

487. Blue Cross study was based, in violation of Mich. Admin. Code r. 500.554, on the unauthorized medical records and prescriptions cost for the following Medicare patients during the date range of 1/1/12 to 12/31/16:BCBSM patient (R.B.) Ricky Bryant; Medicare patient (E.S.) Evelyn Sarnowsky; Medicare Patient Plus Blue patient (J.S.) Judy Shinevarre; Medicare patient (C.B.) Catherine Bussell; Medicare patient (R.F.) Roy Fisher; Medicare patient (A.F.) Albina FIX; Medicare patient (C.H.) Cheryl Hollingsworth; Medicare patient (L.B.) Loda Buell; Medicare patient (D.C.) David Coots; Medicare patient (H.S.) Heidi Smallwood.

488. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

489. U.S. Constitution and Michigan Constitution require suppression of all evidence stemming from illegal seizure and arrest.

490. CFI Zasadny and manager Gallagher submitted to MSP/MANTIS, BPL, DEA, and Monroe County Prosecutor's Office, in violation of Mich. Comp. Laws Ann, Sec.333.2631, that data from the National Association of Drug Diversion Investigators indicated that in 2015, 96.13% of Dr Pompy 177 patients covered by Blue Cross were prescribed controlled medications.

491. At all times CFI Zasadny had Dr. Pompy NPI number at hand.

492. At all times CFI Zasadny knew that Pompy was classified as a Pain Management physician, and not as an Anesthesiologist.

493. Blue Cross and former affiliates had been for years using Dr. Pompy NPI Number 1174578801 (Pain Management) in all their 1099- PROVIDER REPORTS.

494. Blue Cross wrong data and confidential Michigan Automated Prescription System (MAPS) data base report, from Zasadny and BPL Investigator Vaughn Hafner, were not permitted, under Mich. Comp. Laws Ann. Sec. 333.2631, to be turned over to DEA agent Brian Bishop and officer Jon LaSotta.

495. Officer Jon LaSotta re-disclosed medical records in his possession to Monroe County Office of the Prosecuting Attorney, particularly Monroe County Prosecutor William Paul Nichols, Assistant Prosecuting Attorneys Allison M. Arnold, Roehrig , and Jeffrey A. Yorkey.

496. CFI Brian Zasadny, in violation of Mich. Admin. Code r. 500.554, illegally submitted confidential MAPS report, including inaccurate, unverified, and false BCBSM anesthesiology report, analysis, script utilization reviews, data, breakdowns, dispensing trends, graphs, and trend dollars graphs to the Monroe

County Prosecuting Attorney Office, DEA, agent Brian BISHOP, and BPL, as evidence in criminal proceedings against Dr. Pompy.

497. CFI Brian Zasadny inaccurate and unverified documents were illegally used at a DEA administrative hearing in Alexandria, Virginia in July/August 2017; and at a BPL hearing before Administrative Law Judge Michael J. St. John at the Michigan Administrative Hearing System in Lansing, Michigan, from October 2017 to June 2018.

498. CFI Brian Zasadny requested from MSP, without medical authorizations to Blue Cross, Dr. Pompy's unauthorized patients medical records for a 344 pages of an inaccurate Prescriber Block Analysis and Utilization Review project; and for 169 pages of an inaccurate Pharmacy Utilization project.

499. Blue Cross Block Analysis and Pharmacy Utilization review were based on information developed from data compiled on 519 anesthesiologists who had nothing to do with Dr. Pompy true Pain Management classification.

500. Blue Cross Group Block Analysis and Pharmacy Utilization review were not verified, signed, sworn to by one of the officers, directors, or trustees of Blue Cross; and/or by a current or past officer, director, or trustee of the defunct affiliates whose records commingled with the Blue Cross data.

501. CFI and UR departments wrongfully and deceitfully extrapolated Dr. Pompy pain management data to the data of 519 anesthesiologists.

502. CFI Brian Zasadny further distributed, disseminated, disclosed, and re-disclosed Dr. Pompy unauthorized patient medical files among unauthorized employees of the CFR department, UR department, and CPFWA department not involved in the statistical project.

503. Blue Cross violated Comp. Laws Ann. Sec. 550.1406 regarding the regulations and guidelines pertaining to health care companies' protection of members privacy.

504. Blue Cross, by its officers, directors, trustees, employees, violated:

(1)  Admin. Code r. 500.554 regarding an insurer or health plan's information security program to ensure the security and confidentiality of consumer information.

(2)  Comp. Laws Ann. Sec. 550.1907 regarding the requirement for a health insurer to give an individual written notice and an explanation of internal grievance and external review processes for adverse determination.

(3)  Comp. Laws Ann. Sec. 550.524 regarding documents to be obtained by provider to avoid or rescind contract.

(4)  Comp. Laws Ann.Sec. 331. 533 regarding the confidentiality of the identity of any individual "studied".

505.  Blue Cross permitted "James Stewart" to violate Comp. Laws Ann. Sec. 333.7403a  in attempting to obtain controlled substance or prescription for controlled substance from Dr. Pompy.

XX

## BLUE CROSS VIOLATED ITS OWN PRACTITIONER AGREEMENT FOR PURPOSE OF ITS POTENTIAL FELONY CHARGES AGAINST PLAINTIFFS

506.  BLUE CROSS breached its contractual agreement:

a)  By discriminating against Dr Pompy patients based upon race, color, age, national origin.

b)  BY segregating its Members in any way and/or treating Members in a manner or location different from other persons receiving health care services.

c)  By its failure to give Dr. Pompy the right to appeal individual claim and audit determinations through BCBSM's internal process.

d)  By its failure to give Dr. Pompy the right to appeal to an independent review panel on the issue of medical necessity.

e) In failing to sponsor administrative services such as reviews, audits, claim processing systems.

f) In abusing its right to disclose practitioner's specific information pursuant to any federal, state or local statute or regulation, and for civil or criminal investigations, prosecutors, or litigators to the appropriate law enforcement authorities or in response to appropriate legal processes, in violation of established laws and procedures, particularly HIPPA, BCBSM HIPPA Compliance Statement, 42 CFR Part 2, Computer Fraud and Abuse Act.

## XXI

## BLUE CROSS FAILED TO COMPLY WITH ITS OWN MANUAL RECOMMENDATIONS FOR PURPOSE OF ITS FELONY CHARGES AGAINST DR. POMPY

507. Blue Cross violated its own policies:

A) In failing to treat Blue Cross Complete members in the same manner and with the same quality and promptness as other patients are treated.

B) In failing to refrain from discriminating against Providers and Blue Cross Complete members on the basis of membership, source of payment, sex, ethnicity, age, race, color, national origin, marital status, or any factor related to health status, including but not limited to medical condition (including conditions arising out of domestic violence), claims experience, receipt of health care, medical history, evidence of insurability, disability or handicap, or any other basis prohibited by federal law.

C) In failing to have DR. Carl Christenson and Dr. and Dr. J. Alan Robertsen comply with AMA Code of Medical Ethics.

D) In failing to put Dr. Pompy on notice and offer Dr. Pompy specific processes for appeals and complaints.

E) In failing to notify Dr. Pompy about the credential information received from The Monroe County Prosecutor Office.

F)  In failing to give Dr. Pompy the right to correct allegedly erroneous information.

G)  In failing to use confidential peer review process by Dr. Pompy pain management peer group.

H) In failing to give Dr. Pompy, in writing, 30 calendar days to respond to any concern of the medical director and the Quality Management Staff letter about his performance, behavior, conduct or attitude. (C. Disciplinary action or termination, Step 1 & 2 Action)

I) In concealing to The Monroe County Prosecutor and Lt. Marc Moore, prior to any investigation, that Dr. Pompy was contractually required to provide Blue Cross Members with access to care 24 hours a day, seven days a week. (Section 5: Standards and Ratings); and access to after-hours care.

J) In concealing to Monroe County Prosecutor that Dr. Pompy was contractually required to provide accommodation to the cultural and linguistic needs of the patients. (Section 6: Multicultural Health C)

XXII

## ALLEGATIONS AGAINST Dr. CARL CHRISTENSEN

508.  Dr. Carl Christensen committed defamation, deceit, and fraud against Dr. Pompy in 2016 and 2017 out of his assistance to Monroe County Prosecutor's Office, Blue Cross, Blue Cross Complete, MSP, MANTIS, and DEA in the criminal investigation of Dr. Pompy.

509.  Dr. Christensen failed to reveal that he was a member of Blue Cross Medicare Drug Utilization Review Committee, and in this capacity, reviewed for a fee 24 unauthorized patients SUBSIS files that UR illegally obtained from MANTIS.

510. Dr. Carl Christensen unethically posed as a "neutral expert witness" at a DEA hearing against Dr. Pompy, while at the same time he was selling his services to Blue Cross, DEA, MSP/MANTIS and Blue Cross undercover investigator "James Stewart" .

511. Dr. Carl Christensen actively conspired, colluded, and combined with Blue Cross, MSP, MANTIS, DEA, and BPL in the criminal investigation of the Plaintiffs, the suspension of Dr. Pompy DEA registrations, and the suspension of Dr. Pompy medical license.

512. Medical peer review group is formed by a committee of health care professionals examining the work of a peer and determining whether the person under review has met accepted standards of care in rendering medical services.

513. Dr. Carl Christensen expertise is OB GYN & Addiction Medicine.

514. Dr. Christensen was not neutral and had no qualification, training, experience in Anesthesia and Pain Management.

515. Dr. Carl Christensen NPI No. is 1598703621—Family Medicine Addiction Medicine.

516. Dr. Carl Christensen was not a peer of Dr. Pompy and has not evaluated Dr. Pompy's performance as a member of a qualified medical peer group.

517. Dr. Carl Christensen unethically engaged, under the cover of a "peer group review", in a solo "review" of 24 unauthorized Dr. Pompy Subsis patients medical files in order to give an inaccurate expert opinion to Blue Cross and DEA.

518. Dr. Carl Christensen chose five unauthorized medical records of Dr. Pompy, patients, to wit: DA, RB, RF, ES, JH, plus the file of James Stewart for his inaccurate expert opinion.

519. Dr. Carl Christensen was a paid member of Blue Cross Medicare Drug Utilization Review Committee who actively collaborated with UR Diane Silas.

520. Dr. Carl Christensen was a medico-legal advisor to Monroe County Prosecutor's Office (MCPO), MSP, MANTIS, and Blue Cross, and was unqualified to pose as a neutral expert witness against Dr. Pompy in a case to which he actively participated as a medical-legal adviser and rendered an expert opinion.

521. MCPO report that Dr. Carl Christensen made legal research for cases where criminal charges were appropriate for the delivery of Suboxone and Methadone.

522. Dr. Carl Christensen conspired, colluded, and combined with Dr. J. Alan Robertson to refer Blue Cross employee James Howell, alias patient "James Stewart", to the office of Dr. Pompy with a false medical history and a false diagnosis.

523. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

524. U.S. Constitution and Michigan Constitution require suppression of all evidence stemming from illegal seizure and arrest.

525. The investigation, opinion, and testimony of DEA Brian Bishop and Dr. Carl Christensen at the DEA July 2017 hearing have no judicial value and should not be given any weigh.

526. In Oregon v. Gonzales, the Supreme Court ruled that DEA's mandate and jurisdiction regarding controlled substances extends not to the intricacies of medical standards, but to diversion of controlled substances. The Court rejected the proposition that "DEA has authority to make quintessentially medical judgment." **(Administrative Law Judge Mulrooney, citing Gonzales v. Oregon, 546 U.S. 243 (20060, ruled 269, re In the Matter of Lesly Pompy, M.D., United States Department og Justice, Drug Enforcement Administration, Docket No. 17-21, Chief Administrative Law Judge, John J. Mulrooney). December 20, 2017.**

527. All the medical files, including the SUBSIS and Suboxone files, were seized, reviewed, and distributed illegally.

528. All the medical files are tainted and must be suppressed under U.S. Constitution and Michigan Constitution.

529. Dr. Pompy's patients signed a NOTICE of PRIVACY in which the unauthorized release and use of their medical records, identities, and MAPS report in administrative or legal proceedings are not permitted.

## XXIII

## ALLEGATIONS AGAINST DR. J. ALLAN ROBERTSON

530. Dr. Robertson committed fraud, forgery, and unethical behavior on October 7, 2015.

531. On that date Dr. Robertson referred James Howell under the fake name "James Stewart" to Dr. Pompy's medical office for back/nerve problems for several years.

532. Dr. Robertson wrote that he urged the patient to consult with a neurologist, a physical medicine specialist, or a family practitioner for conservative management such as PT.

533. Patient "Stewart" occupation was said to be an automobile transport driver.

534. On December 10, 2015 Dr. J. Alan Robertson gave James Howell, under the fake patient name "James Stewart," a second referral for pain management at Dr. Pompy's office, and committed fraud, forgery, and unethical behavior.

535. Dr. J. Alan Robertson conspired, colluded, and combined with Dr. Carl Christensen to train and retrain "James Stewart" to complain only of stiffness in his back/neck.

536. Dr. J. Alan Robertson conspired, colluded, and combined with Dr. Carl Christensen to train and retrain "James Howell" to look a patient seeking controlled substances.

537. Dr. J. Alan Robertson conspired, colluded, and combined with Dr. Carl Christensen to violate Michigan Insurance law, Michigan Vehicle Code, Michigan Fake ID Law, and other federal statutes.

## XXIV

## ALLEGATIONS AGAINST BANK OF MONROE AND TRUST

538. This is a claim for fraud, breach of contract, violation of fiduciary capacity, invasion of confidentiality of bank records and privacy of business, which arose on September 21 and continued on September 27, 2016 out of the negligence, incompetence, and collusion of MB& T with MSP/MANTIS and DEA.

539. On September 21, 2016 Officer Robert Blair allegedly obtained a search warrant for financial records for Lesly Pompy's accounts at Monroe Bank and Trust as well for the accounts for Interventional Pain Management Associates.

540. On September 27, 2016 upon an overbroad affidavit for search warrant authored by officer Robert Blair, an invalid search warrant was issued by magistrate Jessica Chaffin for the search and seizure of all accounts or account information related to any account owned in whole or in part by Lesly Pompy and or Interventional Pain Management Associates at Monroe Bank and Trust, 102 East Front Street in the City of Monroe, County of Monroe, State of Michigan 48161, including , but not limited, to other related accounts.

541. Plaintiffs accounts were immediately seized, frozen, and placed under the control of MANTIS Lt. Marc Moore.

542. In spite of diligent effort and repeated demands to MB& T, personally and by counsel, and even by filing a complaint with FDIC, MB& T refused to give any explanation and referred Dr. Pompy  to Lt. Marc Moore, in violation of MCL 333.7523, Sec. (2)(d).

543. MB& T routinely continued to fraudulently deduct bank fees from the frozen accounts of the Plaintiffs for bounced checks, whereas the accounts were allegedly frozen by order of magistrate Jessica Chaffin.

544. MB& T conduct is reprehensible and tantamount to frauds.

545. More than two years have elapsed and MB& T has offered no explanation to Plaintiffs in violation of its fiduciary duty and the Michigan Financial Institution Act.

546. Defendant MB& T violated on September 21 and 27, 2016 Plaintiffs rights:

(1)  Under the Right to Financial Privacy Act of 1978 (12 USC Sec.3401 et seq.

(2)  Under FDIC Law, Regulations, Related Acts 6000-Consumer Protection (12 USC 3406-Search Warrant).

547.  Defendant MB& T on September 21 and 27 2016:

(1)  Breached its fiduciary duty.

(2)  Invaded the confidentiality of banks records and privacy of business.

(3)  Violated Plaintiffs rights to property.

(4)  Violated the Computer Fraud and Abuse Act and MCL 487.14105 (m), by authorizing  Susan Mehregan and Thomas Scott to perform data processing services for officer Robert Blair and allowing them  to hand over to officer Robert Blair two CDs containing financial information on the Plaintiffs.

548.  MB& T committed tortuous interference with business relationship and business expectancy.

549.  Defendant MB& T was negligent and incompetent in accepting on September 21, 2016 from officer Robert Blair, in lieu and place of a search warrant, a Tabulation Sheet, copy of which was sent by MB& T to Plaintiffs.

550. Defendant MB& T was negligent and incompetent on September 27, 2016 in accepting without verification an invalid search warrant, without the name, address, case number of the issuing court; and without the printed name of the magistrate of the court.

551. Defendant MB& T was negligent and incompetent on September 27, 2016 in accepting a search warrant without the exact description of the Plaintiff Interventional Pain Management Associates, P.C.

552. Defendant MB& T was negligent in failing to give Plaintiffs the protection of MCL 487.691 regarding adverse claim to bank deposit, Act 349 of 1925.

553. Defendant MB& T was negligent and incompetent in failing to give timely written notice of the search warrant to the Plaintiffs within 90 days.

554. Because of MB& T errors, mistakes, negligence, incompetence, breach of contract, and violation of fiduciary duty, Plaintiffs were deprived of the possession, supervision, and control of their accounts, as well as the interests from their Corporate Demand Deposits Accounts (DDA) at BM& T since September 27, 2016.

555. On March 14, 2017 MB& T negligently and erroneously released $53, 787. 05 from the account of IPM, whereas the funds were ordered to be released from the account of Lesly Pompy by " District (sic) Court Judge Daniel S. White  P 33070".

556. More than 18 months have elapsed and MB& T has not corrected its error and returned the funds to Dr. Pompy accounts.

557.  In February 2018 an Anticipatory Seizure Warrant was allegedly obtained by the federal prosecutor and served upon MB& T for the search and seizure of the Plaintiffs accounts and related accounts.

558. MB& T failed again to give Plaintiffs notice of the Anticipatory Search Warrant within 90 days, in violation of its fiduciary duty and the Michigan Financial Institution Act.

559. Plaintiffs accounts would not have been seized and frozen for two years but for MB& T negligence, incompetence, and dereliction of duty in failing to give timely notice to Plaintiffs.

560. Plaintiffs accounts would not have been seized and frozen for two years but for MB& T negligence, incompetence, and dereliction of duty in accepting from officer Robert Blair on September 21, 2016 a Tabulation Sheet in lieu and place of a valid search warrant.

561. Plaintiffs would have timely filed opposition papers on the simple ground that Plaintiffs accounts were over and above the $25,000.00 jurisdiction of the First District Court of Michigan.


### XXV

### ALLEGATIONS AGAINST DEFENDANT ROBERT BLAIR

562. This is a claim for violation of civil rights and fraud which arose on September 26, 2016, and accrued on December 22, 2016, March 16, 2018, June 26, 2018.

563. On September 23, 2016 upon two overbroad affidavits for search warrant authored by officer Robert Blair, magistrate Jessica Chaffin illegally ordered the search and seizure of any and all business records of the medical practice of Lesly Pompy and/or Interventional Pain Management Associates located, (1) at 730 North Macomb Street, Suite 222, Monroe, Michigan 48162, and (2) at Dr. Pompy's home, 533 North Monroe Street, Monroe, Michigan, including, but not limited to, " account number (s); type of account; co-owners or authorized users including name, address and telephone; account opening applications (s) or form (s); statements; deposit and withdrawal records; checks; billpay transactions; loans and loan application, (s); wire transfers; debit or credit card transactions; and card account numbers. To include any and all safe deposit box (s) and the contents thereof in the prior mentioned name or names, or business, or bits

affiliates, and any account (s)/assets in the accounts in the prior mentioned name (s), either singularly or jointly."

564. Officer Robert Blair executed both search warrants on September 26, 2016 and seized property which happened to be at each location over the $25,000.00 jurisdiction of the First District Court of Michigan.

565. Officer Blair illegally provided a number of Dr. Pompy patient files to DEA and to Dr. Carl Christensen, including the files for "James Stewart", D.A., R.B., R.F., J.H., and E.S. Officer Blair broke the chain of custody.

566. Agent Bishop reviewed the seized computer files, gave copies to officer Robert Blair, and illegally took files and devices to his office in Detroit. Agent Bishop broke the chain of custody.

567. DEA agent Bishop illegally provided a number of unauthorized medical files to the Bureau of Professional Licensing and Professional Regulatory Affairs (BPL); and to the BPL attorneys: Assistant State Attorneys General Jennifer Fitzgerald, Assistant State Attorney General M. Catherine Waskiewcz, and Assistant State Attorney General Timothy Erickson. Agent Bishop broke the chain of custody.

568. BPL attorneys illegally used tainted and unauthorized medical files as evidence at the BPL administrative hearing in Lansing, Michigan, on the summary suspension of Dr. Pompy's medical license.

569. DEA illegally used the tainted and unauthorized medical files of patients D.A., R.B., J.H., R.F., E.S. as evidences at the hearing on the summary suspension of the DEA certificates of registrations of Dr. Pompy.

570. Blue Cross illegally obtained from MSP the unauthorized medical files of patients Ricky Bryant, Evelyn Sarnowsky, Judy Shinevarre, Catherine Bussell, Roy Jr. Fisher, Abina Fix, Cheryl Holligworth, Loda Buell, David Cools, and Heidi Smallwood, during the date range of 1/1/12 to 12/31/16.

571. Dr. Leon Pedell, M.D. admitted to have received from DEA Bishop and BPL over 26,000 pages of medical records.

572. Agent Brian Bishop illegally provided a number of unauthorized files to BPL. Agent Bishop broke the chain of custody.

573. All the medical files were illegally obtained and are to be suppressed as evidence in any present or future administrative or legal proceedings.

574. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

575. U.S. Constitution and Michigan Constitution require suppression of all evidence stemming from illegal seizure and arrest.

XXVI

## ALLEGATIONS AGAINST DEA AGENT BRIAN BISHOP

576. This is a claim for violation of civil rights, violations of court orders, abuse of power, intimidation, trespass, and fraud which arose on September 26, 2016 and accrued on December 22, 2016, March 16, 2018, and June 26, 2018, and continuing.

577. In the morning of the raid on September 26, 2016 agent Brian Bishop and DEA Document and Media Exploitation (DOMEX) team illegally searched and imaged Dr. Pompy's computer data at his medical office.

578. Agent Bishop utilized a machine created specifically for him to search computer data, which disabled Dr. Pompy's electronic devices beyond repair.

579. Agent Brian Bishop and DOMEX seized and removed to his office computers, original data, including administrative, business, and medical records, in violation of the Fourth Amendment and Article 1, Section 11 of the Michigan Constitution

protecting against unreasonable searches and seizures; warrantless searches and seizures; due process clause and equal protection clause of the Fourteenth Amendment protecting civil rights; Computer Fraud and Abuse Act prohibiting against illegal downloading of medical information; HIPAA; and 42 CFR Part 2. Agent Bishop broke the chain of custody.

580.  Agent Brian Bishop questioned Dr. Pompy three times in the absence of his attorney.

581.  Agent Brian Bishop illegally distributed Dr. Pompy patient medical records to MSP, Blue Cross, the Bureau of Professional Licensing, Dr. Carl Christensen, and BPL expert witness Dr. Leon Pedell,  in violation of the Confidentiality of Substance Use Disorder Patient Records  (42 CFR Part 2). Agent Bishop broke the chain of custody.

582. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

583. U.S. Constitution and Michigan Constitution require suppression of all evidence stemming from illegal seizure and arrest.

584. On September 30, 2016 agent Bishop filed a complaint with BPL for the suspension and revocation of Dr. Pompy's license to practice medicine in Michigan.

585.  DEA have three job categories: Special agents, Diversion Investigators (DIs), and Intelligence Research Specialists.

586.  DEA Special Agents are fully commissioned Federal law enforcement officers.

587.  DIs, like agent Brian Bishop, must rely on DEA special agents or state and local law enforcement officers.

588.  DIs are never authorized to carry firearms or to perform traditional law enforcement activities such as making arrests or controlling informants.

589. DIs served to deter diversion through evaluation of registrants' record-keeping procedures, security safeguards and general compliance with the Federal Controlled Substances Act (CSA) and implementing regulations.

590. Agent Brian Bishop dared, in the afternoon of September 26 2016, to go alone to Dr. Pompy's home at 533 N. Monroe St, Monroe, after the end of the search, broke into the premises, seized, and removed property, in violation of the Trespass and Deception Supreme Court Rule under the Fourth Amendment.

591. Agent Bishop acted outside the scope of magistrate Chaffin search warrant.

592. Agent Bishop committed an act or action tantamount to "burglary" in breaking into Dr. Pompy's premises.

593. Agent Bishop abused his power and authority in arresting Dr. Pompy, and committed a personal act outside the scope of his employment and authority.

## XXVII

### ALLEGATIONS AGAINST OFFICER JON LASOTTA

594. This is a claim for violation of civil rights, fraud, and illegally downloading of unauthorized medical records, which arose on September 26, 2016 and accrued on December 22, 2016, March 16, 2018, and June 26, 2018.

595. On September 26, 2016 officer Jon LaSotta contacted Dr. Pompy's medical records provider i-Patient Care, inc. during the raid.

596. Officer Jon LaSotta maliciously provided i-Patient Care, inc. with a copy of a search warrant addressed to Lesly Pompy at Interventional Pain Management Associates , whereas a new warrant addressed to i-Patient, Inc. was required.

597. Officer LaSotta illegally and fraudulently obtained from i-Patient Care Dr. Pompy's computer password and downloaded Dr. Pompy's patient medical records from January 2016 to September 26, 2016.

598. Officer LaSotta illegally provided copies of the medical records to officer Robert Blair.

599. On October 7, 2016 i-Patient Care provided Detective John La Sottaa with 3,241 pages of additional medical records without a subpoena or a search warrant.

600. Officer Jon La Sotta broke the chain of custody in making copies of the additional medical records and forwarded them to the Monroe County Prosecuting Attorney's Office in violation of:

a) The Health Insurance Portability Laws and Accountability Act (HIPAA)
b) The Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2)
c) The Americans with Disabilities Act (ADR).

601. The chain of custody was broken. Dr. Pompy's patients medical records illegally obtained by officer Robert Blair, officer Jon La Sotta, agent Brian Bishop, and DOMEX, and illegally distributed among officer Shawn Kotch, MSP, Blue Cross, BPL, Dr. Carl Christensen, Vaughn Hafner, are still in illegal use and possession of the defendants and/or their attorneys, particularly the medical files of the following patients:

a) Danielle Andrews, Ricky Bryant, Roy Fisher, Evelyn Sarnowsky, and John Hernandez.

b) Ricky Bryant, Evelyn Sarnowsky, Judy Shinevarre, Catherine Bussell, Roy Fisher, Albina Fix, Cheryl Hollingsworth, Loda Buell, David Coots, Heidi Smallwood.

c) James Stewart, Ricky Bryant, Tracy Lapalme, Diana Knight, Stephanie Stine, Floyd England, Robin Oldham, Lisa Kohlman, Gerard Toro, Joey Shienevare, Angela McBee, Kristen Reaster, Melissa Ball, KW, Lowry Bradley.

602. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

603. U.S. Constitution and Michigan Constitution require suppression of all evidence stemming from illegal seizure and arrest.

604. All the medical files of Dr. Patients were seized from invalid search warrants, are tainted, and should be returned to their original owners.

## XXVIII

### ALLEGATIONS AGAINST OFFICER SHAWN KOTSCH

605. This is a claim for violation of civil rights and frauds, which arose on September 26, 2016 and accrued on December 22, 2016 or March 16, 2018 or June 26, 2018.

606. On September 26, 2016 Officer Shawn Kotch participated in the illegal raid of Dr. Pompy's office.

607. The chain of custody was broken. Officer Kotch illegally requested and received a copy of Dr. Pompy i-Patient records from Detective Blair without the patient authorizations, in violation of:

a) The Health Insurance Portability Laws and Accountability Act (HIPAA)
b) The Confidentiality of Substance Use Disorder Patient Records (42 CFR Part 2)
c) The Americans with Disabilities Act (ADR)

608. Officer Kotch illegally interviewed Dr. Pompy twice without his attorney being present, in violation of Dr. Pompy Fifth Amendment Right against self-incrimination and the Sixth Amendment Right to the assistance of Counsel.

609. U.S. Constitution and Art. 1 and Section 11 of the Michigan Constitution dictate that warrantless searches and seizures are unreasonable as a matter of law.

610. U.S. Constitution and Michigan Constitution require suppression of all evidence stemming from illegal seizure and arrest.

## XXIX

## COMMON ALLEGATIONS AGAIN SHELLY EDGERTON, KIM GAEDERE, SEAN M. SIEBIGTEROTH

611.  This is a claim for fraud, violation of civil rights, and Due Process which arose on August 3, 2017 and accrued on June 22, 2018 with the end of the BPL hearing.

612.  Defendants Edgerton, Gaedere, and Siebigteroth were negligent in the training, retraining, supervision, and control of the employees of BPL Drug Monitoring Section regarding the confidentiality and disclosure of medical records, the patients identities, and the use of MAPS reports and data.

613.  Defendants Edgerton, Gaedere, and Siebigteroth were negligent in failing to give the employees of the Drug Monitoring Section a working knowledge of BPL requirements for public health reporting information.

614.  Defendants Edgerton, Gaedere, and Siebigteroth were negligent in the training, retraining, control and supervision of the employees of BPL Drug Monitoring Section on the Department of Health & Human Services (MDHHS) administrative policy regarding lawsuits, litigation, legal documents, and forms.

615.  Defendants Edgerton, Gaedere, and Siebigteroth were negligent in the training , retraining, control and supervision of the employees of BPL Drug Monitoring Section on MDHHS  own policy regarding service of litigation documents only by someone authorized to deliver the documents (process server) or by registered or certified mail, return receipt requested, and delivery restricted to the person and address.

616.  Defendants Edgerton, Gaedere, and Siebigteroth were negligent in permitting the employees of BPL Drug Monitoring Section and Vaughn Hafner, R.Ph. to violate:

 (1) Mich. Admi. Code r. 325.168 regarding exchange of records;

 (2)  Mich. Admi. Code r. 325.9054 regarding confidentiality of reports;

93

(3) Comp. Laws Ann Sec. 333.2638 regarding penalty for the person who discloses confidential information;

(4) Comp. Laws Ann.Sec 330.1748 regarding confidentiality of information obtained while providing mental health services;

(5) Comp. Laws Ann, Sec. 333.2242 regarding the requirement for the department to submit an affidavit before a warrant can be issued;

(6) Comp. Laws Ann.Sec. 333.2243 regarding ground for issuance a warrant;

(7) Comp. Laws Ann. Sec. 333.2245 regarding the requirement for the department to direct the appropriate sheriff or other law enforcement to assist in an inspection upon receipt of a warrant;

(8) Comp. Laws Ann. Sec.333.2632 regarding the inadmissibility of all information, records, and other data as evidence in a court or agency proceeding;

(9) Comp. Laws Sec. 330.1748, Sec. 330. 1748a regarding the confidentiality and privilege of records and information relating to the mental health of an individual;

(10) Admin. Code r. 325.14116 regarding confidentiality of client case records;

(11) Comp. Laws Ann. Sec. 330.1261 regarding the confidentiality and disclosure of all records listing the identity, diagnosis, prognosis, and treatment of a patient being treated for substance use disorder;

(12) Comp. Laws Ann. Sec. 330.1263 regarding consent to disclose, limitations, confidentiality of medical records within the statute being privileged to the patients;

(13) Comp. Laws Ann. Sec. 333.2635 prohibiting Michigan Department of Community Health to demand or require data;

(14) Comp. Laws Ann 333.2631 regarding the confidentiality of data concerning medical research project and use;

94

(15) Comp. Laws Ann. Sec. 333.2637 regarding procedures protecting confidentiality and regulating disclosure of data and records; and

(16) Comp. Laws Ann. Sec. 333.16238 regarding the confidentiality of information, including patient name and other personal information received by the Department.

617. Defendants Edgerton, Gaedere, Siebigteroth, and Vaughn Hafner conspired with Blue Cross, DEA, MANTIS, Dr. Christenson, Dr. Leon Pedell to violate Mich. Comp. Laws Ann. 333.2637 regarding procedures to protect the confidentiality of, and regulate the disclosure of, data and records contained in a departmental data system or system records.

618. Mich. Comp. Laws Ann. Section 333. 2638, makes defendants Edgerton, Gaedere, Siebigteroth, and Vaughn Hafner subject to immediate dismissal under section 333.2631 to section 333.2633 for disclosing at the BPL hearing DEA interviews and Blue Cross information and records--- Prescriber Bloc Analysis, Utilization Review, Pharmacy Utilization, MAPS reports--- shared with the Department of Health and Human Services (MDHHS) for statistical purpose.

619. Defendants Edgerton, Gaedere, and Siebigteroth were negligent and incompetent in failing to properly serve the BPL Order of Summary Suspension and the Administrative Complaint upon Dr. Pompy, in accordance with MDHHS "Administrative Policy Legal". (APL 403, page 2 of 9, APB 2016-006 2-1-2016).

620. Defendant Kim Gaedere issued an Order of Summary Suspension of Dr. Pompy medical license on August 3, 2017.

621. Dr. Pompy physical address was not written on the Order of Summary Suspension.

622. On August 3, 2017 defendant Kim Gaedere issued an Administrative Complaint to impose sanctions on Dr. Pompy.

623. Dr. Pompy physical address was not written on the Administrative Complaint.

624.  Dina Young of BPL Enforcement Division certified that on August 4, 2017 she mailed the Order of Summary Suspension signed August 3, 2017 and the Administrative Complaint signed August 3, 2017, by certified mailed, return receipt requested, first class mail, to Lesly Pompy, M.D., Mercy Memorial Hospital, 730 N. Macomb Street, Suite 222, Monroe, MI 48162; and by interdepartmental mail to Andrew Hudson, Manager, Drug Monitoring Section, Bureau of Professional Licensing.

625. Proof of service is not true and does not conform to the pleadings.

626.  On  August 4, 2017 agent Brian Bishop, in the presence of a BPL female employee, personally served Dr. Pompy with a copy of the Order of Suspension and a copy of the Administrative Complaint, File No. 43-16-143670, at ProMedica Monroe Regional Hospital, 718 North Macomb Street, Monroe, Michigan 48162, in presence of the hospital Vice-President.

627.  Diversion investigators are precluded from … serving arrest and search warrants **(oig.justice.gov.  (Lack of Law Enforcement authority for Diversion Investigators, Report Number I-2002-010, September 2002.)**

628.  Agent Brian Bishop, being a party to the proceeding prior to September 26, 2016, and continuing, was unqualified to serve the Order of Suspension and the Administrative Complaint, under **Michigan Rules of Civil Procedure Rule 2.103 (A), as well as under MDHHS "Administrative Policy Legal" (APL 403, 2 of 9, Lawsuits, Litigation, Legal Documents and Forms, APB 2016-006, 2-1-2016).**

629.  Agent Brian Bishop had filed a complaint with BPL against Dr. Pompy on September 30, 2016.

630.  Agent Brian Bishop had testified against Dr. Pompy at a DEA hearing in July 2017; and at a BPL hearing in October 2017 in Lansing, Michigan.

631.  Agent Brian Bishop is a witness for the federal prosecutor in the criminal prosecution of Dr. Pompy in the federal court.

632. Proof of Service, by BPL Enforcement Division Diana Young, of the Order of Suspension and the Administrative Complaint on August 4, 2017 is a false document and constitutes a fraud.

633. The medical license of Dr. Pompy was not legally suspended on August 4, 2017 upon the fraudulent and unauthorized service of the Order of Suspension and the Administrative Complaint by agent Brian Bishop.

634. Dr. Pompy medical license should be reinstated, effective August 3, 2017, by BPL with full force and effect as if same has never been suspended.

635. Defendants Edgerton, Gaedere, and Siebigteroth were negligent, incompetent, and derelict in their duty in failing to legally serve the BPL Order of Summary Suspension and the Administrative Complaint upon Dr. Pompy according to their own administrative policy.

636. The service of the Order of Suspension and the Administrative Complaint was not made in accordance with the constitutional requirements for notice of judicial proceeding under the Fourteenth Amendment (Mullane v. Central Bank & Trust Co., 339 U.S.C. 306 (1950).

### XXX

### ALLEGATIONS AGAINST VAUGHN HAFNER, R.Ph

637. This is a Claim by Dr. Lesly Pompy against Vaughn Hafner, R.Ph. for fraud, defamation, violation of civil rights and violation of Due Process, which arose on August 4, 2017.

638. Vaughn Hafner, by his misconduct, illegally caused Dr. Pompy's medical license to be suspended on August 3, 2017.

639. Notwithstanding, the Suspension Order and the Administrative Complaint were illegally served by agent Brian Bishop and are deemed invalid, null and of no effect.

640. Vaughn Hafner, R. Ph., posed as an expert pharmacist witness at BPL Drug Monitoring Section with authority and qualification to testify regarding the Bureau's investigation into the allegations against Dr. Pompy, the Michigan Automated Prescription System (MAPS) database, and Dr. Pompy's prescribing practices.

641. Dr. Pompy held Pharmacy CS-3 Licenses 5315050930 and 4301058720.

642. Vaughn Hafner had no qualification, authority, and competence to investigate Dr. Pompy judgment in the diagnosis and treatment of his patients, as confirmed by BPL expert witness Dr. Leon Pedell.

643. Vaughn Hafner, R.Ph. was incompetent and misled BPL, whereas he knew or should have known, that MAPS reports were confidential by law and could not be introduced into evidence in administrative or legal proceedings.

644. Section 17722 of the Public Health Code grants authority to the Board of Pharmacy to regulate, control, and inspect the character and standards of pharmacy practice; and to discipline licensees who have adversely affected the public's health, safety, and welfare.

645. Vaughn Hafner does not have the legal authority to investigate physician prescribing habits.

646. The practice of medicine, as defined in the Public health Code, Public Act 368 0f 1978, means the "diagnosis, treatment, prevention, cure or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts."

647. Vaughn Hafner does not have the legal authority to offer expert opinion on physician medical judgment and medical practices.

648. Vaughn Hafner was depicted in social media by his peers, from 2013 to 2017, as a racist person with no manners, a liar, idiot, stupid dumbass ugly,

discriminating against Indians and middle eastern pharmacists, intimidating Arabs by the way they look, and abusing his power against minorities.

649. On January 26, 2017 defendant Vaughn Hafner sent a contact letter to Dr. POMPY, requesting for the opportunity to obtain a signed statement.

650. Defendant Hafner scheduled a meeting with Dr. Pompy after February 8, 2017.

651. Dr. Pompy called defendant Hafner immediately and left a message that he would be ready at his convenience.

652. On February 17, 2017, nine days thereafter, while Dr. Pompy was waiting for a call from Hafner, the latter wrote an investigation report based upon information from MANTIS, Blue Cross, agent Brian Bishop, and Dr. Christensen; and recommended that the file be forwarded for expert opinion.

653. Vaughn Hafner never attempted to contact Dr. Pompy personally or through his attorney for approximately six months, from February 8, 2017 to August 3, 2017, date of the Order of Suspension.

654. Defendant Hafner fraudulently wrote that Dr. Pompy failed to respond to his communication.

655. Dr. Pompy had a statutory right to provide written comment and expert opinion on the matter, prior to the suspension of his medical license.

656. Condition precedent was not met by BPL, prior to the issuance of the Order of Summary Suspension and the Administrative Complaint.

657. The U.S. Constitution and Michigan Constitution provide that no person shall be deprived of life, liberty or property, without due process of law.

658. Dr. Pompy's due process rights under the United States and Michigan Constitution were violated.

659. The Order of Summary Suspension and the Administrative Complaint are violative of Dr. Pompy statutory rights to respond to BPL allegations prior to BPL decision, as established by the Michigan Legislature.

660. The Order of Summary Suspension and the Administrative Complaint are consequently invalid, void, null, and of no effect.

661. Because of the misconduct, bias, and dereliction of duty of defendant Hafner, Dr. Pompy medical license was caused to be unjustly suspended on August 3, 2017.

662. A hearing before Administrative Law Judge Michael J. St. John on the suspension of Dr. Pompy's medical license was commenced on October 16, 2017.

663. Defendant Hafner admitted that he combined with Monroe County Prosecutor's Office, MANTIS, DEA, Blue Cross, and Dr. Christenson to criminally investigate Dr. Pompy.

664. Defendant Hafner admitted that DEA provided him with medical files of patients who had been predominantly prescribed Subsis.

665. At the BPL hearing, defendant Hafner introduced into evidence impermissible 2015 MAPS report, 1/1/16 to 9/30/16 MAPS report, and epidemiology data from Michigan Department of Health and Human Services.

666. Defendant Hafner introduced into evidence impermissible individual MAPS data for patients Danielle Andrews, Terry Brooks, Ricky Bryant, Roy Fisher, John Hernandez, Cheryl Hollinswsworth, Michael Mudge, Judy Shinevarre, Heidi Smallwood, and Jes Staten.

667. Defendant Hafner violated at the BPL hearing the confidentiality of the medical records, identities, and MAPS records and data, pertaining to patients Danielle Andrews, Terry Brooks, Ricky Bryant, Roy Fisher, John Hernandez, Cheryl Hollinsworth, Michael Mudge, Judy Shinevarre, Heidi Smallwood, and Jes Staten.