UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLY POMPY,
        Plaintiff,

v.

MONROE BANK AND TRUST,
SUSAN MEHREGAN, THOMAS
SCOTT, TINA TODD, JESSICA
CHAFFIN, JACK VITALE,
MARC MOORE, ROBERT
BLAIR, JON LASOTTA, SHAWN
KOTCH, BRIAN BISHOP, BLUE
CROSS BLUE SHIELD OF
MICHIGAN, BLUE CROSS
BLUE SHIELD OF MICHIGAN
MUTUAL INSURANCE
COMPANY, BLUE CROSS
COMPLETE OF MICHIGAN,
BLUE CROSS COMPLETE OF
MICHIGAN LLC, MICHAEL
ZSENYUK, JIM GALLAGHER,
BRIAN ZASADNY, JAMES
HOWELL, DIANE SILAS, CARL
CHRISTENSEN, J. ALAN
ROBERTSON, SHELLY
EDGERTON, SEAN
SIEBIGTEROTH, KIM
GAEDEKE, VAUGHN HAFNER,
DINA YOUNG, RAY KISONAS,,
        Defendants.
_____/

Case No.: 19-10334

David M. Lawson
United States District Judge

Anthony P. Patti
United States Magistrate Judge

**REPORT AND RECOMMENDATION REGARDING MBT DEFENDANTS,
BLUE CROSS DEFENDANTS, AND DEFENDANT RAY KISONAS'S
MOTIONS TO DISMISS (ECF Nos. 67, 78, 79)**

I.     **RECOMMENDATION:** The Court should dismiss Plaintiff's Amended

Complaint (ECF No. 66) as to the MBT Defendants, Blue Cross Defendants, and

Defendant Ray Kisonas for failure to state a claim on which relief can be granted.

II.    **REPORT**

    **A. Background**

Because the issues before the Court focus on the sufficiency of the factual

allegations, I set forth only a general factual background here, giving greater detail

in the analysis that follows.

Pompy was a pain physician in Monroe, Michigan.  This case largely

concerns an investigation into his narcotic prescription practices by Blue Cross

Blue Shield, and local, state, and federal law enforcement.  He was ultimately

indicted on controlled substance and health care fraud charges; his criminal case is

still pending.  (*See* Case No. 18-20454).

Pompy sues a litany of defendants that are grouped as follows:

- Monroe Bank & Trust ("MBT") and the two employee defendants, Susan Mehregan and Thomas Scott (collectively "MBT Defendants");

- Shelly Edgerton, Kim Gaedeke, Vaughn Hafner, Marc Moore, Sean M. Siebigteroth, and Dina Young ("State Defendants");

- Robert Blair, Jessica Chaffin, Jon LaSotta, Tina Todd, Jack Vitale ("Monroe County Defendants");

- The "Blue Cross Defendants" include entities Blue Cross Blue Shield of Michigan, Blue Cross Blue Shield of Michigan Mutual Insurance Co., Blue Cross Complete of Michigan, Blue Cross Complete of Michigan, LLC, and

individuals Carl Christensen, Jim Gallagher, James Howell, J. Alan Robertson, Diane Silas, Brian Zasadny, and Michael Zsenyuk;

- Defendants Brian Bishop and Shawn Kotch (the "Federal Defendants"); and,

- Defendant Ray Kisonas.

He alleges that the Blue Cross entities and employees improperly conducted the investigation, that the law enforcement defendants obtained invalid search warrants from the Monroe County Defendants and violated his constitutional rights during and after the searches, that the MBT Defendants were wrong in responding to search warrants for bank records and to freeze his accounts, and that Defendant Kisonas's three published articles in the *Monroe News* about the criminal investigation were false and harmful to him.

MBT Defendants, Blue Cross Defendants, and Defendant Kisonas have filed motions to dismiss the Amended Complaint.

By way of background, the original complaint was dismissed for failure to follow Federal Rules of Civil Procedure 4 and 8. The complaint was incredibly long (over 180 pages and over 2,000 paragraphs) and prolix. Plaintiff was ordered to file an Amended Complaint that complied with the rules of pleading. (ECF No. 63, 74). The Amended Complaint is Plaintiff's attempt to file a compliant pleading. This complaint is about 20 pages in length, which is considerably shorter, but still at times unclear and circular. As discussed below, Plaintiff fails to state a claim to relief against the moving defendants.

3

## B. Standard

Defendants bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 Fed.Appx. 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

### C. MBT Defendants

#### 1. Amended Complaint Allegations

Plaintiff sues MBT Financial Corp. ("or its successor First Merchant Corporation"), and employees Susan Mehregan and Thomas Scott for their involvement in the investigation.  According to Plaintiff, on September 21, 2016, a purportedly overbroad search warrant issued from the First District Court in Michigan (an "incompetent court"), signed by Defendant Magistrate Tina Todd, for the search and seizure of Plaintiff's financial information at MBT.  Defendant Mehregan "released nonpublic personal information" on his accounts "without a

search warrant." (ECF No. 66, PageID.904, 909). Inconsistently, or perhaps alternatively, Plaintiff believes Mehregan should have known that the search warrant was invalid. (*Id.* at PageID.909). On September 27, 2016, another search warrant issued for search and seizure of Plaintiff's financial accounts at MBT. Defendant Scott released information to law enforcement Defendant Robert Blair pursuant to one or more of these warrants. MBT continued to deduct fees from the frozen accounts for bounced checks. (*Id.* at PageID.906). Plaintiff accuses Mehregan and Scott of negligence and "incompetence[.]" (*Id.* at PageID.909).

Without elaboration, Plaintiff lists the following claims against Mehregan: "negligence, incompetence, errors, mistakes, breach of promise, and violation of her fiduciary duty in accepting on 9/27/2016 an overbroad search warrant," and that she failed to protect his personal information under "Title 15." (*Id.* at PageID.911). Although not entirely clear, it appears Plaintiff intended to raise the same claims against Scott.

Plaintiff brings two federal statutory claims against MBT Financial: violation of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 501, and violation of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401-3422, on the basis of the disclosures made by Mehregan and Scott. (*Id.* at PageID.914). Specifically, Plaintiff claims that MBT violated the GLBA by disclosing his information, by making false or fraudulent statements, by providing knowingly

forged or counterfeit documents (defendant Blair allegedly presented MBT

Defendants "fraudulently brokered documents"), and by allowing Defendant Blair

to reuse the financial information without his consent.  Plaintiff also alleges that

MBT violated the Michigan Consumer Protection Act, M.C.L. § 445.903, "Unfair,

unconscionable, or deceptive methods, acts, or practices in conduct of trade or

commerce rules."  (*Id.* at PageID.914).

### 2. Motion to Dismiss

At the outset of their motion, MBT Defendants explain that First Merchants

Corp., the entity with which MBT merged after Plaintiff filed the Amended

Complaint, is the surviving entity and proper defendant.  However, they continue

to refer to MBT in their brief for consistency with the Amended Complaint.  (ECF

No. 67, PageID.925, n. 1).  As for the motion to dismiss, MBT Defendants raise

the following arguments: (1) that Plaintiff failed to a state a claim under the

Gramm-Leach-Bliley Act because the Act does not provide a private cause of

action; (2) that Plaintiff's Right to Financial Privacy Act claim should be dismissed

because MBT did not disclose any information to a federal agency; and (3) that

Plaintiff made no allegation against Mehregan and Scott individually, and thus

they should be dismissed.  (*Id.* at PageID.928-30).

In response, Plaintiff first argues that MBT Financial Corp. is the defendant,

that First Merchants Corp. has no standing in this matter, and that MBT has

defaulted since it was First Merchants that filed the motion to dismiss. (ECF No. 85, PageID.1201).

Plaintiff does not directly address MBT Defendants' substantive arguments. Rather, he reiterates the facts alleged in the unverified Amended Complaint and attempts to add new claims against the defendants: violation of the Michigan Financial Institution Act, the Computer Fraud and Abuse Act, his "constitutional rights to property," invasion of privacy, and tortious interference with a business relationship and business expectancy. (*Id.* at PageID.1207). As for the RFPA claim, Plaintiff insists that MBT disclosed information to a federal agency because Blair acted under the direction of a federal agency and Defendants DEA officer Brian Bishop and Task Force Officer Shawn Kotch participated in the search and seizure. (*Id.* at PageID.1209, 1214-15). Plaintiff also argues that Mehregan and Scott committed "gross and wanton negligence" in complying with invalid search warrants. (*Id.* at PageID.1215-16).

In reply, MBT Defendants make or reiterate the following arguments: (1) the GLBA does not provide cause of action, (2) RFPA does not apply because no disclosure of financial information was made to a federal agency, (3) RFPA does not apply because Plaintiff did not plead that MBT knew Robert Blair was working

with a federal agency,[1] and (4) any new claims raised in the response brief should be disregarded.  (ECF No. 84).

### 3. Discussion

#### a. Merger

Preliminarily, I will address MBT's merger with First Merchants Corp. and the implications of the merger on this litigation.  The MBT Defendants styled their motion as "Motion to Dismiss Amended Complaint by Defendants First Merchants Corp. (Successor-by-Merger to MBT Financial Corp.), Susan Mehregan, and Thomas Scott."  Neither MBT Financial nor Plaintiff filed a motion to substitute defendant MBT Financial with First Merchants Corp., but doing so is not necessary.  This action can continue with MBT Financial listed as defendant without interruption to this case. Rule 25(c) provides that, "[i]f an interest is transferred, the action may be continued by . . . the original party unless the court, on motion, orders the transferee to be substituted in the action. . . ." Fed . R. Civ. P. 25(c). "Rule 25(c) does not require that anything be done after an interest has been transferred." *Blachy v. Butcher*, 221 F.3d 896, 911 (6th Cir. 2000) (quoting *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc*., 13 F.3d 69, 71 (3d. Cir. 1993)).

---

[1] MBT defendants use the "GLBA" initialism in this argument, but it is clear they are referring to the Right to Financial Privacy Act, not the Gramm-Leach-Bliley Act.

Since no motion to substitute the entities as defendant has been filed, the Court will proceed with MBT as the entity defendant.  To be clear, the fact that MBT styled the motion as brought by First Merchants does not change who the defendant is; it is MBT Financial (at least as of the date of this report).  However the entity defendant refers to itself is of no moment, and as a practical matter, makes no difference to this action. I refer to the entity defendant as MBT, and the defendants collectively as MBT Defendants, throughout this report and recommendation.

### b. Gramm-Leach-Bliley Act

MBT Defendants are correct that any claims under the GLBA should be dismissed because there is no private cause of action under the Act.  The GLBA states:

> This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law. . . .

15 U.S.C. § 6805(a).  With this language, Congress expressly provided the method of enforcing the GLBA, and doing so suggests Congress intended to preclude others, including a private right of action.  *See Vinton v. Certegy Check Servs., Inc.*, 2009 WL 2777095, at *2 (W.D. Mich. Aug. 31, 2009) (collecting cases); *see also Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 271 (D.D.C. 2018)

("[C]ourts have consistently held that no private cause of action exists under [the GLBA.]"); *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 954 (N.D. Tex. 2013) ("Federal courts have determined that . . . the GLBA, by [its] terms, do[es] not create a private right of action."). Consequently, this claim should be dismissed.

### c. Right to Financial Privacy Act

The RFPA "protect[s] the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity by requiring federal agencies to follow established procedures when seeking a customer's financial records." *Anderson v. La Junta State Bank,* 115 F.3d 756, 758 (10th Cir. 1997) (citation omitted). It "outlines numerous restrictions on the disclosure of financial records held by bank employees and federal regulatory authorities[, and specifically] . . . imposes an affirmative duty on . . . banking officials to safeguard the financial records of individuals utilizing the services of banks." *In re Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470, 476 (6th Cir. 1983). Relevant to this case, the RFPA prohibits a financial institution from providing to any "Government authority" the financial records of a customer except under certain circumstances, including disclosure in response to a search warrant. 12 U.S.C. §§ 3401, 3402. The RFPA defines "Government authority" as "any agency or department *of the United States*, or any officer, employee, or agent thereof." § 3401(3) (emphasis added).

Plaintiff does not allege that any of the MBT Defendants provided his financial information to a federal agency or federal employee. Rather, he makes clear that the financial information was given to Blair, a local law enforcement officer, based on state court issued warrants. Blair is not alleged to have been a federal agent or openly working on behalf of a federal agent/agency in executing the warrants. By the statute's own terms, providing financial information to local law enforcement does not implicate the RFPA.

Plaintiff argues that Blair was working with, or under, federal agents. Plaintiff alleges that Blair and other local law enforcement officials later began working with DEA Agent Bishop (a federal agent) on the investigation. The federal and local agents executed the search of Plaintiff's home and medical office. (ECF No. 66, PageID.904). But it was Blair alone who was involved with the search warrant for MBT financial records and who was in communication with Mehregan and Scott to receive the financial documents. According to the Amended Complaint, the federal agents were not involved with the financial search warrant or with MBT at all.

Where the plaintiff does not allege the involvement of a federal agency or agent, or even that the financial institute was aware that a federal agency was involved in an investigation, the RFPA claim is generally dismissed. In *Bigi v. Wright-Patt Credit Union, Inc.*, 2013 WL 1721154 (S.D. Ohio Apr. 22, 2013), the

plaintiffs alleged two violations of RFPA by the defendant credit union.  The first of these, and the one relevant to this case, is as follows.  A local law enforcement agency began investigating allegations of PIN or VIN flipping.  At some point, the investigation broadened to include multiple jurisdictions of local police as well as the Federal Bureau of Investigation (FBI).  The FBI eventually took a lead role in the investigation.  An FBI agent assisted a local detective in obtaining plaintiffs' bank records.  *Id.* at *1.

The court dismissed the RFPA claim against the credit union.  The plaintiffs did not allege that the bank was aware that the local police were acting as agents of the FBI.  The court concluded that, "[g]iven that the Right to Privacy Act does not apply to state actors, it would be nonsensical to require Defendant to divine that these state actors were not state actors, but federal agents." *Id.* at *4.  Additionally, the court found that the defendant was permitted to divulge the information under the RFPA.  For these two reasons, the claim was dismissed.

Here, Plaintiff did not allege that Blair was acting on the behalf of a federal agency when he sought and obtained the search warrants for Plaintiff's financial records from MBT, and when he executed the search warrants.  (ECF No. 66, PageID.904).  Furthermore, Plaintiff also did not allege that MBT knew of any relationship between Blair and the DEA agents, if one existed.  Rather, it appears from the complaint that MBT would have had no reason at all to suspect that

federal law enforcement was involved in the case. C*f. Rufra v. U.S. Bankcorp*, 2006 WL 2178278 (W.D.Ky. July 28, 2006). The reasoning in *Bigi* is persuasive—to require MBT Financial to infer or know that responding to a state-issued search warrant and providing documents to a local official meant that it was providing financial information to a federal agent or agency would be "nonsensical" and unrealistic. *Bigi*, 2013 WL 1721154 at *4. The RFPA claim should be dismissed.

### d. Mehregan and Scott

MBT Defendants read the Amended Complaint as asserting no claims against Mehregan and Scott individually. In an apparent attempt to avoid dismissal of his claims against Mehregan and Scott, Plaintiff points to two references made in the Amended Complaint. More specifically, *in his response brief*, Plaintiff argues that Mehregan and Scott breached their fiduciary duty to him and acted with "gross and wanton negligence" by responding to the allegedly invalid search warrants. (ECF No. 85, PageID.1207-08, 1215-18). In the Amended Complaint, negligence and breach of fiduciary duty appear merely as part of a list of allegations or causes of action: "negligence, incompetence, errors, mistakes, breach of promise, and violation of her fiduciary duty in accepting on 9/27/2016 an overbroad search warrant[,]" apparently asserted against the individual Defendants. (ECF No. 66, PageID.911). Listing a cause of action without any factual

development does not state a plausible claim to relief. It is understandable that

Mehregan and Scott view the gross negligence and breach of fiduciary duty claims

as raised for the first time in Plaintiff's response brief (ECF No. 84, PageID.1198):

these claims were not rightly raised—much less plausibly pleaded—in the

Amended Complaint. These claims should be dismissed for Plaintiff's failure to

sufficiently plead them, and for the reasons stated below.

"Incompetence, errors, and mistakes" are not causes of action. It is not

entirely clear what Plaintiff intended to claim by adding "breach of promise" to the

list of wrongs. Plaintiff has failed to allege facts which would permit the Court to

conclude that any promise was ever made to him, let alone that he is entitled to

relief for breach of a promise. Nothing illuminates what the contours of such a

claim might be.

"Under Michigan law, fiduciary duties arise from 'the relation subsisting

between two persons of such a character that each must repose trust and confidence

in the other and must exercise a corresponding degree of fairness and good faith.'"

*Fremont Reorganizing Corp. v. Duke,* 811 F. Supp. 2d 1323, 1345 (E.D. Mich.

2011) (quoting *Portage Aluminum Co. v. Kentwood Nat'l Bank,* 106 Mich. App.

290, 294, 307 N.W.2d 761 (1981)); *see also Ulrich v. Fed. Land Bank of St. Paul,*

192 Mich. App. 194, 196, 480 N.W.2d 910 (1992) ("A fiduciary relationship arises

from the reposing of faith, confidence, and trust, and the reliance of one upon the

judgment and advice of another."). "A person in a fiduciary relation[ship with] another is under a duty to act for the benefit of the other with regard to matters within the scope of the relationship." *Ford Motor Co. v. Ghreiwati Auto,* 945 F. Supp. 2d 851, 865 (E.D. Mich. 2013) (quoting *Teadt v. Lutheran Church Missouri Synod,* 237 Mich. App. 567, 581, 603 N.W.2d 816 (1999)). Relationships that typically give rise to such a duty are "trustees to beneficiaries, guardians to wards, attorney to clients, and doctors to patients." *Portage Aluminum,* 106 Mich. App. at 294, 307 N.W.2d 761.  Importantly, "Michigan courts do not impose a fiduciary duty on banks arising from ongoing business relations" because to do so "would be too radical a departure from well-established, traditional banking laws." *Wright v. PNC Fin. Servs. Grp., Inc.*, 2015 WL 4619857, at *4 (E.D. Mich. July 31, 2015) (quoting *The Glidden Co. v. Janernoa,* 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998)).

Plaintiff has not alleged that there was a contract or statute from which a fiduciary duty arose between himself and MBT employees, or that there was any relationship between himself and MBT and its employees outside of the business relationship between them.  Accordingly, the breach of fiduciary duty claim should be dismissed.  *See, e.g.*, *Martinez v. Chase Bank, USA, N.A.*, 2014 WL 2700935, at *1-2 (W.D.Ky. June 13, 2014) ("[M]ere confidence that a bank will act fairly does not create a fiduciary relationship obligating the bank to act in the borrower's interest ahead of its own interest.").

The negligence claim should also be dismissed.  Plaintiff did not allege facts giving rise to a duty on the part of Mehregan and Scott that was breached when they responded to the search warrants.  In fact, taking the negligence reference to its logical conclusion, for Plaintiff to prevail, Mehregan and Scott would have to be liable for complying with judicially authorized search warrants, akin to somehow being at fault for obeying a subpoena.  As a matter of public policy, this simply cannot be so.  Nor did they have a duty to challenge the search warrants, formally or informally.

As noted above, Plaintiff also alleges that MBT violated the Michigan Consumer Protection Act, M.C.L. § 445.903.  Rather than state a claim under this statute, Plaintiff merely recited the title of the statute: "Unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce rules." (ECF No. 66, PageID.914).  Citing the statute and quoting the title are insufficient to state a claim to relief.   The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio,* 193 F.3d 389, 400 (6th Cir. 1999).

Finally, any claims raised for the first time in the response brief should not be considered.  In the prior report and recommendation, the rules of pleading were explained to Plaintiff, including that the complaint needed to state all his claims briefly and sufficiently to show entitlement to relief.  (ECF No. 64, PageID.879-

83).  Thus, Plaintiff was aware of the pleading rules before he filed the Amended

Complaint, and by extension was aware that all of his claims needed to be in the

Amended Complaint, not raised in a response brief.  *See Johnson v. Metro. Gov't*

*of Nashville & Davidson Cnty.*, *Tenn.*, 502 Fed. Appx. 523, 541–42 (6th Cir. 2012)

(citing *Moore's Federal Practice* § 12.34 ("The court may not ... take into account

additional facts asserted in a memorandum opposing the motion to dismiss,

because such memoranda do not constitute pleadings under Rule 7(a)."))

In sum, I conclude that the claims against the MBT Defendants should be

dismissed.

### C. Blue Cross Defendants

#### 1. Amended Complaint Allegations

Broadly, Plaintiff's claims against the Blue Cross Defendants are about the

insurance fraud investigation.  The recitation of facts and grievances against these

Defendants often read as a stream of consciousness.  Nevertheless, a summary of

the allegations follows.

Plaintiff alleges that on November 12, 2015, Defendant Blue Cross Blue

Shield Michigan Mutual Insurance Company ("BCBSMMIC") "ordered" an

investigation.  He alleges that the company, along with Lt. Marc Moore and non-

party William Nichols (purportedly Monroe County Prosecutor), "effectively

hir[ed]" the police to conduct the investigation.  (ECF No. 66, PageID.904).

Part of the investigation involved sending an undercover "patient" to Plaintiff's pain clinic.  Blue Cross investigator, Defendant James Howell, presented to Plaintiff's office with a Michigan driver's license and social security card under the name James Stewart, and a referral from Defendant Dr. J. Alan Robertson, a Blue Cross physician consultant.  Howell pretended to be a patient in need of pain medication.  According to Plaintiff, Defendant Brian Zasadny assigned Howell to the task and Defendant Zsenyuk permitted Howell to submit the false identification to Plaintiff.  Howell wore a recording device during his visit at Plaintiff's office "without a court order."  Howell later filled a prescription given to him by Plaintiff for a controlled substance.  Plaintiff alleges in conclusory fashion that Defendant Diane Silas conspired with DEA agent Defendant Bishop to have Zasadny obtain copies of Howell's videos from state and local police. [2] These videos "were unverified."  (*Id.* at PageID.906-07).

Plaintiff lists the following claims against defendant Howell for his role in the investigation: "abuse of process, theft of services and property by maliciously videotaping Plaintiff, the personnel, and patients without a court order; by diverting controlled and uncontrolled prescription medicines to . . . Blair; by making a claim for overbilling whereas he was informed that claim for payment

---

[2] Plaintiff refers to "James Samuel videos," but it is clear he is referring to the video taken by Howell, not someone named James Samuel.

was based on intensity of services, diagnosis, and medical coding."[3]  He also alleges that Howell admitted under oath that he did not know medical billing requirements and that Howell admitted that Plaintiff was being investigated for prescribing expensive medication.  (*Id.* at PageID.912).

Plaintiff appears to raise a RICO claim against the Blue Cross business entities for "hir[ing]" the police to conduct a private investigation.  (*Id.* at PageID.912).  He also alleges that BCBSMMIC was involved in a "private conspiracy," by "acquiring false medical referral from Dr. Alan Robertson."  (*Id.* at PageID.913).  Part of this conspiracy, according to Plaintiff, involved Defendant Dr. Carl Christensen, a Blue Cross employee, ignoring Howell's drug testing, which purportedly would have made Howell an unreliable informant.  (*Id.* at PageID.913).  Christensen's role in this case is otherwise unclear, as are the facts surrounding this allegation.

Plaintiff alleges that Blue Cross Blue Shield of Michigan ("BCBSM") breached its contract with Plaintiff.  Plaintiff and BCBSM signed a "Physician and Professional Provider Participation Agreement" in December 1991.  According to Plaintiff, BCBSM amended the agreement in 2012 and 2016 without giving notice

---

[3] To the extent Plaintiff is trying to articulate claims on behalf of his patients for "abuse of process, theft of services and property" or for some kind of invasion of privacy or defamation against Howell, Kisonas (see *infra*.) or others, he seemingly lacks standing to do so.

to Plaintiff.  He does not believe he is bound by the amendments and that the 1991

agreement became null and void because the company that signed the 1991

agreement—Blue Cross Blue Shield of Michigan—merged with Blue Cross Blue

Shield Michigan Mutual Insurance Company in December 2013, and thus no

longer exists.  Plaintiff does not have an agreement in place with BCBSMMIC.

(*Id.* at PageID.915).  In light of all this, it is unclear what contract he believes

could have been breached, as one is alleged to be void and the other two are

alleged to be invalid as to him.

He also claims that BCBSM "violated current [unspecified] resolution

procedures in place" because it did not submit his four $360 health insurance

claims to a peer review process before commencing the investigation.  (*Id.*).  He

claims they placed Plaintiff in the wrong peer group specialty when analyzing and

comparing his revenues.  (*Id.* at PageID.916).  There is no further factual

development on this breach of contract claim.

In addition to the foregoing, Plaintiff also lists "lack of qualified immunity,

gross negligence, malice, conspiracy, forgery, breach of contract" as claims against

Blue Cross Defendants, without specifying against which specific defendant(s)

each claim is raised.  (*Id.*).  Further, included in his demand for relief is an

additional litany of claims, which is apparently infinite: "Violation of Antitrust

Laws: Clayton Antitrust Act, Sherman Antitrust Act, Federal Trade Commission

Act, including, but not limited to, Mergers and Acquisitions, Unfair Competition, Contracts Laws, RICO Act. . . etc." (*Id.* at PageID.917-18).

### 2. Motion to Dismiss

Blue Cross Defendants first argue that, although the Amended Complaint is considerably shorter than the original Complaint, the Amended Complaint is still not in compliance with Fed. R. Civ. P. 8 because it mostly consists of unnumbered paragraphs and is very disjointed and difficult to comprehend. (ECF No. 78, PageID.1048). It is hard to dissent from this assessment.

They next argue for dismissal of the breach of contract claim, insisting that the claim was insufficiently pleaded and any remedy Plaintiff might have would come from the appeal procedure set forth in the contract, not in this Court. (*Id.* at PageID.1052, 1054; Exhibit A). Defendants next argue that any other claim Plaintiff attempted to bring should be dismissed for failure to state a claim. (*Id.* at PageID.1056-66).

As a general proposition, Plaintiff does not expressly address the arguments made in the Blue Cross Defendants' brief. Instead he restates the factual allegations in his Amended Complaint while adding some additional facts. A portion of Plaintiff's response is devoted to discussing the different Blue Cross entities. He believes all the entities—BCBSM, BCBSMMIC, Blue Cross Complete of Michigan, and Blue Cross Complete of Michigan LLC (all of which

are listed as defendants)[4]—are different entities that had different roles or obligations with respect to their business interactions with Plaintiff.  The precise issue Plaintiff has with the different entities and their appearance and defense in this case is unclear.  Plaintiff believes BCBSM conducted the investigation (although he also claims that BCBSMMIC conducted the investigation), but argues that BCBSM had no authority to do because it ceased to exist in 2015 when it merged with or into BCBSMMIC.  (ECF No. 87, PageID.1267-68, 1285).

Plaintiff attempts to raise new claims in his response against some or all of the Blue Cross Defendants, including libel, slander, and fraudulent misrepresentation—claims that were not stated in the Amended Complaint.  (ECF No. 87).

In their opening brief, the Blue Cross Defendants cited but did not discuss M.C.L. § 500.4509(3) in support of their immunity to suit.  The statute provides that, in the absence of malice, an insurer and its agent who cooperates with law enforcement in an investigation of suspected insurance fraud are immune from civil liability for any tort arising out of such cooperation.  (ECF No. 78, PageID.1061-62).  Plaintiff did not address this statute in his response.  This argument becomes the Defendants' main argument in their reply brief.  They insist

---

[4] It does not appear that there are any claims raised against Blue Cross Complete of Michigan and Blue Cross Complete of Michigan LLC in the Amended Complaint.

they are immune from any tort arising from the investigation because Plaintiff did not plead malice or that the Defendants knowingly provided false information. (ECF No. 89, PageID.1332-33). They further argue that, even if they are not immune, Plaintiff failed to state a claim against them. (*Id.* at PageID.1333-35).

### 3. Discussion

#### a. Immunity

There is very little case law interpreting the statutory immunity found in M.C.L. § 500.4509(3), but its terms are plain to understand. It reads in full as follows:

> In the absence of malice, an insurer, or any officer, employee, or agent of an insurer, or any person who cooperates with, furnishes evidence, or provides information regarding suspected insurance fraud to an authorized agency, the national association of insurance commissioners, or any organization, or who complies with an order issued by a court of competent jurisdiction acting in response to a request by any of these entities to furnish evidence or provide testimony, is not subject to civil liability for libel, slander, or any other tort, and a civil cause of action of any nature does not exist against the person, for filing a report, providing information, or otherwise cooperating with an investigation or examination of any of these entities, unless that person knows that the evidence, information, testimony, or matter contains false information pertaining to any material fact or thing.

For purposes of this and similar statutes, "malice exists when a person supplying information or data to the appropriate authorities, as set forth in the

statutes, does so with knowledge of its falsity or with reckless disregard of its truth

or falsity." *Radu v. Herndon & Herndon Investigations, Inc.*, 302 Mich. App. 363,

379, 838 N.W.2d 720, 729 (2013).

Plaintiff alleges that Blue Cross Defendants conducted an investigation into

his prescription drug practices and billing, and gave the information collected to

law enforcement officers, or otherwise worked with law enforcement during the

investigation.  Plaintiff's issue appears to be twofold: he believes the investigation

conducted by Blue Cross Defendants was illegitimate and undertaken by improper

means, and he appears to take issue with Blue Cross Defendants working with law

enforcement on the investigation and/or providing information to law enforcement.

The latter issue, and allegations directed to it, appears to implicate this

statute, which protects employees or agents of insurers—like the Blue Cross

entities—from suit for providing evidence or information to an "authorized

agency."  What constitutes an "authorized agency" is not defined in the statute;

however, it seems likely that law enforcement is an authorized agency given the

purpose of the statute as explained in fairly recent case.  In *Marks One Car Rental,*

*Inc. v. Auto Club Group Ins. Co.*, 55 F. Supp. 3d 977, 983-84 (E.D. Mich. 2014),

the court was faced with the defendant insurer's argument that it was immune from

liability under the statute for statements made to other customers regarding its own

investigation into the plaintiff. The court disagreed. The court described the

purpose of the statute as follows:

> The purposes of both [related statute] MCL 29.4 of the
> Fire Prevention Code and MCL 500.4509 of the
> Insurance Code similarly foster the communicative and
> evaluative processes related to fire prevention and
> insurance-fraud prevention. And, both statutory
> provisions clearly grant the protection of immunity to
> persons who have provided information related to
> investigations of suspected arson and suspected insurance
> fraud if they acted without malice.

*Id.* at 983 (quoting *Radu v. Herndon & Herndon Investigations, Inc.,* 302 Mich.

App. 363, 379, 838 N.W.2d 720 (2013)). Since the insurer divulged information to

customers and not an agency, it was not immune.

As the purpose of the statute is to foster communication related to insurance

fraud and prevention, communicating with law enforcement entities regarding an

insurance fraud investigation would directly further that purpose. Thus, Blue

Cross Defendants' work with, or provision of information to, law enforcement falls

under the purview of the statute. The Amended Complaint does not set forth

sufficient facts to make a plausible finding that statements or information given to

law enforcement by any of the Blue Cross Defendants was knowingly false, or

with malice. Plaintiff lists "malice" among other causes of action he "intends to

prove" against Blue Cross Defendants, but it is not at all clear whether this

assertion of malice is about providing information from the investigation or some

other set of facts.  Nor does he specify the information that was maliciously provided.  Even though he is proceeding *pro se*, Plaintiff must do more than list bare claims without any factual development.  Indeed, Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). Accordingly, Blue Cross Defendants are immune from suit for providing information or evidence to law enforcement agencies with regard to the investigation into insurance fraud.

The statute does not appear to protect Blue Cross or its employees from suit for actions taken in their own investigation, or for the means they used to investigate insurance fraud.  The statute clearly protects from claims about "filing a report, providing information, or otherwise cooperating with an investigation or examination of any" agency, not against claims about the insurer's investigative methods.  Plaintiff alleges that certain Blue Cross investigators used improper procedures for the investigation: using an undercover agent who had false identification documents, neglecting to submit claims to a peer review process before commencing an investigation into the billing, and by evaluating Plaintiff's billing practices as an anesthesiologist rather than a pain doctor, which would have provided a more accurate point of reference for billing charges and revenue.  (*See* ECF No. 87, PageID.1272 – Plaintiff's Response).  These assertions, however, do

not readily point to a specific cause of action against these Defendants for the investigation.  To the extent Blue Cross Defendants are not immune from suit, and notably some of Plaintiff's claims do not fall under the purview of the immunity statute, I will address the remainder of the Defendants' motion to dismiss.

### b. Breach of Contract

The first breach of contract claims is that BCBSM amended the contract without notice to Plaintiff and merged with BCBSMMIC without a new contract in place.  The second claim is that investigators compared Plaintiff with the wrong peer group, in violation of "current resolution procedures."

"To recover for breach  of contract under Michigan law, [Plaintiff has] to prove: 1) the existence of a contract between [himself] and [BCBSM], 2) the terms of the contract, 3) that [the Defendant entity] breached the contract, and 4) that the breach caused [Plaintiff's] injury." *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).  Defendants attached the contract to their brief. (ECF No. 78-2.)[5]  It clearly states that the contract could be amended only after 90

---

[5] Considering the contract attached to the Blue Cross Defendants' motion to dismiss does not convert the motion to one for summary judgment.  Plaintiff expressly cites the contract in his Amended Complaint.  *Havenick v. Network Exp., Inc.*, 981 F. Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed. R. Civ. P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim . . ., the defendant may submit an authentic

days' notice to the other party.  (ECF No. 78-2, PageID.1081, § 6.2).  Plaintiff

alleges he was not given notice of the two amendments.  He sufficiently states a

breach of contract.  He also alleges he was injured by the 2012 amendment: he was

no longer required to carry a certain amount of professional liability insurance.

Had he known about the change, he would have opted "to carry less coverage" or

be self-insured.  He seeks reimbursement of premiums he paid from the date of

2012 amendment to September 26, 2016.  (ECF No. 66, PageID.915).  These

allegations form a plausible claim to relief for breach of contract against BCBSM,

or its successor, but not any other Blue Cross Defendant.  This claim should

nonetheless be dismissed for lack of supplemental jurisdiction, as discussed below.

Plaintiff's second breach of contract claim is, at best, sparse and conclusory.

This alleged breach is related to the peer group against which BCBSM compared

his revenues.  The results of this comparison prompted the investigation, according

to Plaintiff.  Defendants insist that Plaintiff's recourse is through the appeal

process articulated in the agreement, not this Court.  The provision provides that

Plaintiff "may appeal individual claim and audit determinations through BCBSM's

internal process and, if medical necessity is disputed, [Plaintiff] may further appeal

---

copy to the court to be considered on a motion to dismiss.").  Plaintiff did not
challenge the authenticity of the attached contract, and circumstances do not
suggest its inauthenticity.  On a side note, Defendants are directed to comply with
Local ECF Rule/EFPP 19(b)(3) for ease of reference on the docket.

to an independent review panel." The decision of the panel is binding on both parties and enforceable in any court in Michigan. (ECF No. 78-2, PageID.1080, § 5.1 of the Provider Agreement). Plaintiff did not address this argument. (ECF No. 87, PageID.1282-83).

It is not clear that Plaintiff's complaint allegations are about an "individual claim" or "audit determination[]" contemplated by this contract provision. The appeal process seems to exist for claims, for example, about not getting paid on a claim sent to Blue Cross for medical services rendered. Plaintiff's claim is not like that. His allegation is that BCBSM violated some contract or procedure when it improperly assessed his medical claims for fraud. While the contours of Plaintiff's claim are less than clear, the applicability of the Defendants' argument is also less than clear.

In addition to the ambiguities just discussed, it is also ambiguous whether "current resolution procedures" are part of a contract between Plaintiff and BCBSM, or whether the procedures he mentions are more of an investigation policy of BCBSM. Notably, Plaintiff did not plead the terms of any investigation procedure such that this Court could plausibly conclude that BCBSM violated these procedures (assuming they are part of a contract with Plaintiff) by taking the steps it took in the investigation. For this reason, Plaintiff has not stated a viable breach of contract claim here.

### c. "Civil Rights"

To the extent Plaintiff intended to raise a claim for a civil rights violation under 42 U.S.C. § 1983 against Blue Cross (or any defendant), he failed to do so. Putting aside the question whether Plaintiff sufficiently alleged that Blue Cross Defendants were acting under of color law, Plaintiff completely neglected to specify which right he believes was violated. Stating that his "civil rights" were violated does not state a claim for relief.

### d. Claims Against Defendant Howell

Plaintiff alleges that Defendant Howell, who presented to his office undercover as patient James Stewart, committed abuse of process and theft of services and property by videotaping Plaintiff and his office. (ECF No. 66, PageID.912). A claim of abuse of process under Michigan law has two essential elements: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc,* 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981) (citing *Spear v. Pendill,* 164 Mich. 620, 623, 130 N.W. 343 (1911)). "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure[.]" *Vallance v. Brewbaker*, 161 Mich. App. 642, 646 (1987). Plaintiff does not allege

31

any facts tending to show that Howell availed himself of some proper legal process with an ulterior purpose against Plaintiff.  This claim should be dismissed.

Theft of services and property is not a civil cause of action.  To the extent Plaintiff attempts to raise a common law conversion claim against Howell, as Defendants point out, the claim lacks merit.  "Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Magley v. M & W Inc.*, 325 Mich. App. 307, 314 (2018) (quoting *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 303 Mich. App. 441, 447 (2013)).  Plaintiff does not state an allegation that Howell exhibited dominion over any of his personal property, and intangible property, such as one's image, cannot be converted. *Powers v Fisher*, 279 Mich. 442, 272 NW 737 (1937) (to be object of conversion, property must be tangible).  The allegation that Howell videotaped him without permission does not state a claim for conversion.

Finally, Plaintiff also alleges that Howell diverted controlled and uncontrolled prescription medicines to Defendant Blair and made a claim for overbilling against Plaintiff.  These are not civil causes of action, and should be dismissed.

### e. Various Claims

As noted above, Plaintiff lists "lack of qualified immunity, gross negligence, malice, conspiracy, forgery, breach of contract" claims against Blue Cross defendants.  Listing these claims is as far as Plaintiff has gone.  (ECF No. 66, PageID.916).  The complaint must rise to the level of "plausibility" by containing "more than labels and conclusions."  *Twombly,* 550 U.S. at 555, 564.  For this and for the reasons explained below, these claims should be dismissed.

While breach of contract is discussed above, lack of qualified immunity relates to a *defense*, and malice − while sometimes required as *an element* of a tort − is not a cause of action in and of itself.

Plaintiff has not stated a claim for "gross" negligence.  Preliminarily, as this Court explained in *Alexander v. Galzetta*, 2018 U.S. Dist. LEXIS 54533, at *53 (E.D. Mich. Feb. 26, 2018):

> [G]ross negligence in Michigan is not a tort in and of itself; rather […] it is simply a level of proof which can statutorily overcome governmental immunity under state law. *Bricker v. Ausable Valley Cmty. Mental Health Servs.*, 2009 Mich. App. LEXIS 206, 2009 WL 211883, *8 (Mich. Ct. App. 2009) ("[A]n assertion of gross negligence by itself is not an independent tort. MCL 691.1407(2) does not by itself create a cause of action called 'gross negligence.'") (citing *Rakowski v. Sarb*, 269 Mich. App. 619, 627, 713 N.W.2d 787 (2006)).

*See Maiden v. Rozwood*, 461 Mich. 109, 122, 597 N.W.2d 817, 824 (1999) ("ordinary negligence does not create a material question of fact concerning gross negligence"); *see also* Grant H. Morris, *Gross Negligence in*

33

*Michigan-- How Gross Is It*?, 16 Wayne L. Rev. 457, 468 (1969) (arguing that the term "gross negligence" should be eliminated from the legal lexicon as courts are unable to properly define and apply the term).

To the extent that Plaintiff intends to pursue a claim for *ordinary* negligence, he would be required to plead and ultimately prove that: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v. Sears, Roebuck & Co*., 492 Mich. 651, 660; 822 N.W.2d 190 (2012) (quoting *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C*., 489 Mich. 157, 162; 809 N.W.2d 553 (2011)).  Gross negligence, to the extent it must be demonstrated to overcome governmental immunity or some other defensive threshold, requires "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu v. Gay*, 257 Mich. App 263, 269; 668 N.W.2d 166 (2003).  As a general rule, "'there is no duty that obligates one person to aid or protect another.'"  Generally, the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law.  *Hill*, 492 Mich. at 660-61 (quoting *Loweke*, 489 Mich. at 164).

Plaintiff does not discuss negligence in relation to any of the Blue Cross Defendants in the Amended Complaint, except to list gross negligence among

other causes of action against these Defendants.  Pertinent to a negligence claim,

Plaintiff does not allege any facts to support that any of the Blue Cross Defendants

owed him any particular duty of care, and that they breached that duty in

conducting the investigation or by some other conduct.  Without such allegations,

Plaintiff has not stated a negligence (much less a gross negligence) claim.

Though couched in the word "false," rather than "forged," the forgery claim

appears directed at Howell's use of a "false" driver's license and social security

card in the name of James Stewart in order to gain access to Plaintiff as an

undercover patient.   Forgery is defined as the making of a false document, with

the intent to deceive in a manner which exposes another to loss. *People v. Susalla,*

392 Mich. 387, 392-393, 220 NW2d 405 (1974); *Matter of Loyd,* 424 Mich. 514,

526, 384 NW2d 9 (1986).  "Intent to defraud is the gist of the offense of forgery."

*Marlo Beauty Supply, Inc. v. Farmers Ins. Group of Companies*, 2005 WL

1249249, at *6 (Mich. Ct. App. May 26, 2005) (citing *People v. Gil,* 8 Mich. App

89, 92-93, 153 NW2d 678 (1967)), *reversed on other grounds*, 474 Mich. 1119

(2006).

To the extent Plaintiff is attempting to prosecute the Defendants for the

crime of forgery, he cannot do so.  "[I]n American jurisprudence at least, a

private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another," which means that Plaintiff lacks standing to invoke the

judicial process to enforce state criminal laws or to bring a state criminal prosecution. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). If Plaintiff is attempting to bring a civil cause of action for forgery, he cannot do so because forgery is a crime, not a civil cause of action. Section 750.248 of Michigan Compiled Laws is the criminal code section for felony alteration, forgery , or counterfeit of certain public records. "[T]his section does not create a private civil cause of action." *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 601 (E.D. Mich. 2014) (citing *Lucido v. Apollo Lanes & Bar, Inc.,* 123 Mich. App. 267, 271– 72, 333 N.W.2d 246 (1983) (where criminal statute does not specifically create a cause of action, none exists)); *see also Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

To the extent this is a civil cause of action for fraud, Plaintiff does not plead facts to demonstrate that Howell and the other Blue Cross Defendants used identification for "James Stewart" with the intent to defraud Plaintiff. Nor does he explain how they defrauded him or what damages he suffered from it. Moreover, fraud must be pleaded with particularity in federal court. Fed. R. Civ. P. 9(b). But here, the Amended Complaint is clear that the documents were created and used as part of an investigation into Plaintiff's medical billing, in conjunction with law enforcement. That Plaintiff suffered loss as a result of the investigation does not state an allegation that Howell defrauded Plaintiff through forgery.

Plaintiff alleges that the creation and use of the "false documents" is "strongly corroborative of the defendant's intent . . . to commit crimes."  This statement falls under the heading "Private Conspiracy."  (ECF No. 66, PageID.913).  "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.,* 194 Mich. App. 300, 313, 486 N.W.2d 351 (1992). "However, 'a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort.'"  *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (2003) (quoting *Early Detection Center, PC v. New York Life Ins. Co.,* 157 Mich. App. 618, 632, 403 N.W.2d 830 (1986)).  As demonstrated above, Plaintiff failed to establish the underlying claim of forgery, or other actionable tort.  Thus, Plaintiff failed to state a civil conspiracy claim.

To the extent Plaintiff intended to raise a civil conspiracy claim against any or all of the Blue Cross Defendants for their roles in the investigation, as discussed herein, the underlying claims were not sufficiently pleaded.  Thus, there can be no conspiracy claim.

### f. Claims in Request for Relief

Plaintiff makes the blanket assertion, in his request for relief, that the Blue Cross Defendants violated antitrust laws (Sherman Act and Clayton Act), unfair competition, and RICO (Racketeer Influenced and Corrupt Organizations Act). These claims should be dismissed for two reasons.  First, the vague and generalized manner in which Plaintiff raises these claims does not satisfy Fed. R. Civ. P. 8(a)(2), which requires a short and plain statement showing that Plaintiff is entitled to relief.  Second, the claims lack merit.

Plaintiff lacks standing to bring an antitrust claim, based on the allegations in the Amended Complaint.  "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 535, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). To establish antitrust standing, an antitrust claimant must prove antitrust injury, which is to say (1) "injury of the type that the antitrust laws were intended to prevent" and (2) injury "that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690 (1977); *see Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 110 n. 5, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (noting that antitrust injury is a "necessary, but not always sufficient," condition of antitrust standing); *see also Atl. Richfield Co. v.*

*USA Petroleum Co.,* 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990)

(noting that the necessary "antitrust injury" is an injury attributable to the

anticompetitive aspect of the practice under scrutiny).

> [U]nless an antitrust plaintiff alleges an injury that arises
> from "an anticompetitive aspect of the practice under
> scrutiny," the complaint will not survive Rule 12(b)(6)
> scrutiny. *CBC Companies, Inc.*[*v. Equifax, Inc.,* 561 F.3d
> 569, 572 (6th Cir. 2009)]. Furthermore, a plaintiff
> alleging antitrust injury must allege injury to a relevant
> market, not just injury to the plaintiff. *Bassett v. Nat'l
> Collegiate Athletic Ass'n,* 528 F.3d 426, 434 (6th
> Cir.2008). That is, an antitrust plaintiff must demonstrate
> that "the alleged violation tended to reduce competition
> overall" and that "the plaintiff's injury was a consequence
> of the resulting diminished competition." *CBC
> Companies, Inc.,* 561 F.3d at 572 (quoting *J.B.D.L. Corp.
> v. Wyeth–Ayerst Labs., Inc.,* 485 F.3d 880, 887 (6th
> Cir.2007)). This heightened standing requirement reflects
> the principle that antitrust laws exist to protect
> competition, not individual competitors. *Brunswick
> Corp.,* 429 U.S. at 488, 97 S.Ct. 690 (citing *Brown Shoe
> Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8
> L.Ed.2d 510 (1962)).

*Wagner v. Circle W. Mastiffs*, 732 F. Supp. 2d 792, 800–01 (S.D. Ohio 2010).  In

light of the foregoing case law, it is clear that Plaintiff has not alleged standing to

bring an antitrust claim, as his complaint makes no mention of any anticompetitive

conduct or that any injury he suffered was a consequence of diminished

competition.  Accordingly, these claims should be dismissed.

Plaintiff also listed unfair competition and RICO as claims in his request for

relief, without any factual development.  As noted above, the Amended Complaint

cannot at all be fairly said to be about market competition between competitors.

Plaintiff's claims against the Blue Cross Defendants have to do with their role in

investigating his medical practice for insurance fraud, not for unfair competition.

*Good Housekeeping Shop v. Smitter*, 254 Mich. 592, 596, 236 N.W. 872, 873

(1931) ("[I]n order that there may be unfair competition, there must be actual

competition[.]").  Accordingly, there is no actionable unfair competition claim.

The RICO claim is similarly insufficiently pleaded.  Pursuant to 18 U.S.C. §

1964(c), RICO provides a private right of action for "[a]ny person injured in his

business or property by reason of a violation of [18 U.S.C. §] 1962."  To establish

a violation of § 1962, a plaintiff must show: "(1) that there were two or more

predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus

between the pattern of racketeering activity and the enterprise; and (4) that an

injury to business or property occurred as a result of the above three

factors."  *VanDenBroeck v. Common Point Mortg. Co*., 210 F.3d 696, 699 (6th

Cir.2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem.*

*Co*., 553 U.S. 639 (2008).  A "pattern of racketeering activity" requires at least two

acts of "racketeering activity" which are set forth in Section 1961(1). 18 U.S.C.

§ 1961(5).

"A civil Rico action does not require that there be a prior criminal conviction

for the conduct forming the predicate act; however, the conduct used to support a

40

civil RICO action must be indictable.  Thus, the plaintiff must prove each prong of the predicate offense, or 'racketeering activity,' to maintain a civil action under the RICO statute."  *Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d. 181, 183–84 (6th Cir. 1993) (internal citations omitted), *vacated on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008); *see also Craighead v. E.F. Hutton & Co., Inc*., 899 F.2d 485, 494 (6th Cir. 1990) (holding that certain of plaintiffs' RICO claims failed because they did not plead the basic elements of the alleged predicate acts of mail fraud with sufficient particularity).

This claim fails because Plaintiff did not plead the elements of two or more predicate offenses.  Even if he had, Plaintiff's conclusory allegation that Defendants' actions constitute "racketeering" does not state a claim under RICO.  *Binford v. John Adams Mortg*., 2011 WL 4469140 (E.D. Mich. Aug. 23, 2011), *report and recommendation adopted in part*, 2011 WL 4469131 (E.D. Mich. Sept. 27, 2011).  In addition, Michigan law expressly provides that violations of the state racketeering laws do not create a private cause of action.  *See* Mich. Comp. Laws § 750.159u ("this chapter does not create a civil cause of action between 2 or more persons.").  Thus, Plaintiff has no racketeering claim under Michigan law either.

Finally, as noted above, any new claims raised in the response brief must be disregarded.

### g. Supplemental Jurisdiction

The only remaining claim is the breach of contract claim against Defendant BCBSM for allegedly amending the contract without first giving notice to Plaintiff. If this report and recommendation is adopted, there will be no federal claims against Blue Cross Defendants, but it appears federal claims currently remain against the non-moving defendants for constitutional violations regarding the purportedly invalid search warrants, the conduct during the searches, and interrogations.  Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case  or controversy." 28 U.S.C. § 1367(a).  Thus, to retain supplemental jurisdiction over the breach of contract claim, it must be part of the same case or controversy as the remaining federal claims.  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (stating that a federal court has supplemental jurisdiction over a state law claim that forms part of the same controversy as a federal claim "even if the state law claim is asserted against a party different from the one named in the federal claim."); *Cox ex. Rel. Dermitt v. Liberty Healthcare Corp.*, 622 F. Supp. 2d 487, 503 (E.D.Ky. 2008) ("Therefore, in order for this Court to exercise jurisdiction over Cox's state-law claims, it must determine that there is sufficient basis to believe, at this point in the proceedings,

that the allegations in these various state-law claims "form part of the same case or controversy" as the allegations in the remaining [federal] claim.").  "In other words, if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002) (quoting *Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 892 (6th Cir. 1998)).  Claims form part of the same case or controversy when they "derive from a common nucleus of operative facts." *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 454–55 (6th Cir. 1996).

Clearly, amending a provider agreement without notice in 2012 and 2016 does not derive from a common nucleus of operative fact as the claims regarding invalid search warrants and improper conduct during the searches and interrogations.  Accordingly, the breach of contract claim should be dismissed without prejudice to being refiled in state court.

### E. Defendant Ray Kisonas

#### 1. Amended Complaint Allegations

At the time of the events alleged in the Amended Complaint, Defendant Ray Kisonas was a reporter for the *Monroe News*.  Plaintiff's complaint against him is about three news stories run by Kisonas about Plaintiff and the investigation into his controlled substance prescription practices and insurance billing.  The first of

these news stories was published September 26, 2016, wherein Kisonas reported that Plaintiff was unnecessarily issuing prescriptions for opiates and that Plaintiff was responsible for his patients selling the pills on the street.  According to Plaintiff, this September 2016 article contained false statements that Kisonas did not verify but instead published with reckless disregard of the truth.  It appears there was also an article published on November 18, 2017.  This article included Plaintiff's personal information and address.  (ECF No. 66, PageID.908, 910).

On January 19, 2018, Kisonas published a story including photographs of Plaintiff's identification, of Plaintiff himself, and of his home, including the address.  Plaintiff alleges he was harmed by these stories because the articles placed his life in "imminent danger," since he lived alone.  He alleges he was "forced to spend his time outside his home longer than necessary and to sleep elsewhere," and it was difficult to find a buyer for the house "because of Kisonas' false reports."  (*Id.* PageID.908).

Plaintiff states that this case is against Kisonas for negligence, defamation, and "false claim."  (ECF No. 66, PageID.903).  In his request for relief, he lists defamation, *discrimination*, and false claim as claims against Kisonas.  (*Id.* at PageID.916).

### 2. Motion to Dismiss (ECF No. 79)

On April 14, 2020, Defendant Kisonas filed a motion to dismiss the Amended Complaint, raising the following arguments: (1) Plaintiff did not effectuate service of process on Kisonas, (2) Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute against Kisonas for lack of proper service of process, (3) alternatively, the defamation and false light claims should be dismissed because they are beyond the one-year statute of limitations, (4) Kisonas's speech is privileged and not actionable under the "fair report privilege," and (5) Plaintiff's claims of negligence and discrimination are insufficiently pleaded.  (ECF No. 79).

In response, Plaintiff argues that the motion to dismiss should be stricken because he believes Kisonas's attorney, Danessa P. Watkins, is not admitted to practice law in Michigan, and therefore cannot represent Kisonas in this matter. Further, he says there is no notice of appearance for attorney Ryan V. Jacobson on behalf of Kisonas, whose name appears in the motion to dismiss.  (ECF No. 86, PageID.1231).  He also argues that he did properly serve Kisonas on February 13, 2019 by certified mail, delivery restricted to the addressee.  (*Id.* at PageID.1229). He attached a certified mail return receipt card signed by someone other than Ray Kisonas, as well as other unsigned certified mail receipts.  (*Id.* at Exhibit 2, PageID.1248, 1251).  Finally, Plaintiff argues that he properly stated claims to relief for negligence in failing to publish accurate information, defamation, and

false light.  (*Id.* at PageID.1231-38).   Again, Plaintiff asserts new claims in his

response brief that do not appear in the Amended Complaint: slander per se and

"repeater's liability."  (*Id.* at PageID.1235).

In his reply, Kisonas discusses the certified mail receipt attached to

Plaintiff's response, but argues that it does not show that he was properly served

for reasons explained below.  (ECF No. 88, PageID.1294).  Kisonas also reiterates

his argument that Plaintiff's claims are untimely and are insufficiently pleaded.

(*Id.* at PageID.1295-1300).  Regarding Plaintiff's assertions against counsel,

Kisonas's counsel attached a screen shot from this Court's website showing their

(attorney Ryan Jacobson and Danessa Watkins) admission to practice before the

District Court for the Eastern District of Michigan.  (ECF No. 88-2, PageID.1309-

10).

### 3. Discussion

#### a. Kisonas's Counsel

Danessa Watkins, who signed and filed the motion to dismiss on Kisonas's

behalf, is not an active member of the State Bar of Michigan.[6]  The Court's

---

[6] Attorney Jacobson's name is listed in the signature block to the motion to
dismiss.  However, it does not appear that he has taken an otherwise active role in
representing Kisonas, and has not filed even a limited appearance in this matter.
Should this portion of the R&R be overruled, Kisonas will have to retain local
counsel immediately. The Court notes that Ms. Watkins has appeared as counsel
for Ray Kisonas in another matter without local counsel (Case No. 18-12634).
Apparently, the issue was not raised. Watkins also appeared in a case on behalf of

website, however, shows that she is admitted to practice in this District. (*See* https://www.mied.uscourts.gov/index.cfm?pagefunction=AdmissionCheck for "Danessa Watkins") (last visited July 17, 2020). Local Rule 83.20(f)(1) requires counsel not admitted to the State Bar of Michigan, but admitted to practice before this Court, to specify as local counsel a member of bar of this Court who has an office in this district. "Local counsel must enter an appearance. . . ." *Id.* No local counsel has filed an appearance in this case on behalf of Kisonas. Kisonas has not filed an application or motion to proceed without local counsel.

The purpose of the requirement of local counsel is having counsel close to the court and accessible for case preparation events, and "ready availability to the court for conferences . . . [and] familiarity with the Local Rules and the local legal culture." *Belle v. Sunbeam Prods., Inc.*, 2009 WL 3757059, at *1 (E.D. Mich. Nov. 9, 2009). In this instance, these purposes are not obviated by proceeding to the merits of the motion to dismiss filed by foreign counsel admitted to practice before this Court. While the proper course would be for local counsel to be identified and to appear in this case, in the interest of judicial economy, I will proceed to address to the motion to dismiss. As discussed more fully below,

---

Monroe County; local counsel had appeared in that case. (Case No. 15-10877). Ms. Watkins is reminded of the local rule's requirements, going forward.

Defendant Kisonas should be dismissed from this case, regardless of who represents him.

### b. Service of Process

In a prior report and recommendation filed in this case by Magistrate Judge Michael Hluchaniuk and adopted by the District Judge, the claims against Kisonas were dismissed for failure to effectuate proper service of process under the Federal Rules of Civil Procedure and Michigan Court Rules. (ECF No. 63, PageID.867-70; ECF No. 74). At the time of that report and recommendation, there was no indication that Plaintiff mailed the summons and complaint to Kisonas, delivery restricted to Kisonas, by registered or certified mail with a return receipt requested. This is the method prescribed by Michigan Court Rule 2.105(A) for service on individuals.

Plaintiff named Kisonas in the Amended Complaint, although he did not re-attempt service. In an effort to save his claims against Kisonas, Plaintiff provided a copy of the return receipt from the original attempt demonstrating that the package was sent by certified mail, addressed to Kisonas, with a return receipt requested. (ECF No. 86, PageID.1248). As previously noted, however, the signature is not Ray Kisonas's signature. According to Kisonas, a co-worker signed for the package. (ECF No. 88-1, PageID.1303-04). Plaintiff believes this is sufficient under the rules for service of process. (ECF No. 86, PageID.1229).

The Federal and Michigan rules for service of process were thoroughly explained in the prior report and recommendation, and need not be restated here. Plaintiff's method for service falls under M.C.R. 2.105(A)(2).  It is clear that Plaintiff mailed the service documents by certified mail, return receipt requested; however, although the addressee was Kisonas, delivery was apparently not restricted to him since he is not the person who signed for the package.  And importantly, Kisonas did not acknowledge receipt of the mail.  *Id.* ("Service is made when the defendant acknowledges receipt of the mail.").  Since Kisonas himself did not acknowledge receipt of the mail and did not sign the return receipt, service was improper under the rules.  Plaintiff has not moved for alternate service on Kisonas.  "In the absence of service of process (or waiver of service of process by the defendant), a court ordinarily may not exercise power over a party that the complaint names as a defendant." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999); *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (explaining that "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant[,]" and "in the absence of personal jurisdiction, a federal  court is powerless to proceed to an adjudication." (internal quotation marks and citations omitted)).

As this Court does not have personal jurisdiction over Kisonas, the claims against him should be dismissed without prejudice.  Alternatively, should the Court

conclude that jurisdiction has been established, then the claims against Kisonas

should be dismissed with prejudice on the merits, as discussed below.

### c. Statute of Limitations – Defamation and False Light

Although Plaintiff does not use the phrase "false light" in his Amended

Complaint, but instead uses "false claim" against Kisonas, it is clear from the

substance of the allegations that Plaintiff has attempted to bring a defamation and

false light invasion of privacy claim.  In addition, Plaintiff uses "false light" in his

response brief, not "false claim."  Under Michigan law,

> [t]o demonstrate liability for defamation, the following
> elements must be proved: (a) a false and defamatory
> statement concerning plaintiff; (b) an unprivileged
> publication to a third party; (c) fault amounting at least to
> negligence on the part of the publisher; and (d) either
> actionability of the statement irrespective of special harm
> (defamation per se) or the existence of special harm
> caused by the publication (defamation *per quod* ).

*Pullman Indus., Inc. v. Manufacturers Enameling Corp.*, 15 Fed. Appx. 297, 300

(6th Cir. 2001) (quoting *Curtis v. Evening News Association,* 135 Mich. App. 101,

352 N.W.2d 355, 356 (1984)).  To demonstrate false light invasion of privacy, "a

plaintiff must show that the defendant broadcast to the public in general, or to a

large number of people, information that was unreasonable and highly

objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that

were false and placed the plaintiff in a false position."  *Puetz v. Spectrum Health*

*Hosps.*, 324 Mich. App. 51, 69, 919 N.W.2d 439, 448 (2018), *appeal denied*, 504

Mich. 880, 928 N.W.2d 211 (2019) (quoting *Duran v. Detroit News, Inc.*, 200

Mich. App. 622, 631-632, 504 N.W.2d 715 (1993)).

For state law claims, the applicable Michigan statute of limitations governs.

In *Nichols v. Moore*, 334 F. Supp. 2d 944 (E.D. Mich. 2004), this Court analyzed

whether Michigan's one-year statute of limitations for libel or slander claims

would apply to a false light invasion of privacy claim.  The court concluded, after

reviewing Michigan case law and cases from other jurisdictions, that Michigan

courts would likely apply the one-year limitations period to an invasion of privacy

claim.  *Id*. at 948-49; *see also Bichler v. Union Bank & Trust Co. of Grand Rapids*,

745 F.2d 1006, 1011 (6th Cir. 1984) (Holding that claims for invasion of privacy

and defamation, under Michigan law, are treated similarly in terms of the defenses

available. The court cited authority stating: "[u]nder any circumstances that would

give rise to a conditional privilege for the publication of defamation there is

likewise a conditional privilege for the invasion of privacy.") (quoting *Restatement

(Second) of Torts,* § 652G, comment a); *Williams v. Leduff*, 2013 WL 1286066, at

*6 (Mich. Ct. App. Mar. 28, 2013) ("[T]he limitations period for a defamation

action is one year, MCL 600.5805(9)[.] . . .") (internal quotation marks and

citations omitted).  Without legal authority to the contrary, Plaintiff's defamation

and false light invasion of privacy claims are subject to the one-year statute of

limitations.

The three news stories ran in September and November 2016, and on January 19, 2018.  Plaintiff filed his original complaint on February 4, 2019, more than one year after the last news story ran.  Plaintiff did not allege, nor did he argue in his response brief, that equitable tolling applies to save these claims.  Indeed, there is no apparent reason why the claims should be tolled.  These claims accrue when "the wrong upon which the claim is based was done regardless of the time when damage results."  *Mitan v. Campbell*, 474 Mich. 21, 24, 706 N.W.2d 420, 422 (2005) (quoting M.C.L. § 600.5827).  Accordingly, these claims should be dismissed.[7]

In his response brief, Plaintiff discussed another news story written by Kisonas and published in June 2018.  Had Plaintiff raised this claim in the Amended Complaint, it would not be time-barred.  However, Plaintiff raised the existence of the story for the first time in a response brief, and it therefore should be disregarded.  Generally, this Court is limited to the facts and legal claims as raised in the pleadings; as a result, the additional facts asserted in Plaintiff's response to the motion to dismiss are not part of the lawsuit and the Court should not consider them.  *See Johnson v. Metro. Gov't of Nashville & Davidson*

---

[7] The Court acknowledges that since the statute of limitations for intrusion actions is not specified, it could be argued that it comes under the general residual statute, limiting the commencement of the action to a period of three years. MCL 600.5805(2).  Plaintiff has made no such argument, and the I agree with this Court's prior reasoning, analogizing the claim, as pleaded, to defamation.

*Cnty.*, *Tenn.*, 502 Fed. Appx. 523, 541–42 (6th Cir. 2012) (citing *Moore's Federal Practice* § 12.34 ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")); *Bishop v. Lucent Technologies, Inc*., 520 F.3d 516, 521 (6th Cir. 2008) ("Ordinarily, when the omission of a critical allegation in a complaint is highlighted by a defendant's motion to dismiss, the appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion to dismiss."); *D.H. v. Matti*, 2016 WL 5843805, at *1 (W.D. Ky. Sept. 30, 2016) ("Once again, Plaintiff's counsel has used her responses to the present motions to dismiss to assert additional factual allegations, which the Court may not consider."). This is not an instance in which Plaintiff is simply supplementing facts stated in the complaint with additional details. *See Dimov v. EMC Mortg. Corp*., 2010 WL 2506717, at *1 n. 1, 2 (E.D. Tenn. June 17, 2010).

### d. Negligence and Discrimination

As Kisonas notes, Plaintiff did not provide any factual development on the negligence and discrimination claims against him. Rather, both claims appear as part of a list of claims. "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). He did not achieve this by

listing negligence and discrimination.

In his response, Plaintiff discusses his negligence claim in the context of

publication of false information. It appears that the negligence "claim" in the

Amended Complaint was not meant to be a stand-alone negligence claim, but

rather directed at defamation and false light. These claims are addressed and

rejected above.

In light of Plaintiff's failure to sufficiently plead these claims against

Kisonas, they should be dismissed.

### e. Supplemental Jurisdiction

Similar to the discussion above regarding the Blue Cross Defendants and the

breach of contract claim, there is a supplemental jurisdiction issue with regard to

the claims raised against Kisonas. Again, briefly, "district courts shall have

supplemental jurisdiction over all other claims that are so related to claims in the

action within such original jurisdiction that they form part of the same *case or*

*controversy*." 28 U.S.C. § 1367(a). "Claims form part of the same case or

controversy when they derive from a common nucleus of operative facts." *Packard*

*v. Farmers Ins. Co. of Columbus Inc.,* 423 Fed. Appx. 580, 583 (6th Cir. 2011)

(citation omitted). The "case or controversy" requirement is met when state and

federal law claims arise from the same contract, dispute, or transaction. *Id.*

Even accounting for all the federal claims raised in this case, the claims against Kisonas for the publication of the stories do not derive from a common nucleus of operative facts as the federal claims.  The operative facts alleged regarding the Fourth Amendment and the non-moving Defendants include that the search warrants for Plaintiff's office and bank accounts were invalid, improper use of force during the searches, Plaintiff was mistreated and not allowed counsel during the searches and questioning, and that generally the investigation was improperly conducted.  (*See* ECF No. 66, PageID.904-05, 907-08).  The operative facts alleged against Kisonas are that he published a false news story stating that Plaintiff was illegally or improperly prescribing opiates, and published Plaintiff's personal information including his home address and a picture of his house.  There are no operative facts in common between the state and federal claims.  The investigation into Plaintiff's medical practice is common between the two sets of claims, but the conduct during the investigation are not operative facts for Plaintiff's state law claims against Kisonas.  The federal claims can be resolved without consideration of or reference to the news articles.  *See, e.g.*, *Vogel v. Northeast Ohio Media Group, LLC*, 2017 WL 3157920, at *2 (N.D. Ohio July 25, 2017) (Concluding that article about Plaintiff's administrative leave and termination did not share operative facts with federal claims about why he was placed on administrative leave; thus, supplemental jurisdiction did not lie); *see also*

*Salei v. Boardwalk Regency Corp.,* 913 F. Supp. 993, 998–99 (E.D. Mich. 1996) (holding there was no supplemental jurisdiction, notwithstanding a "but for" relationship between the federal and state-law claims, because "two separate factual inquiries are required in order to litigate the federal versus the state claims"). Likewise, whether the non-moving Defendants violated Plaintiff's civil rights does not have a bearing on whether Kisonas published knowingly false articles; those articles apparently were about the factual bases of the criminal charges, not police tactics and the specifics of the investigation. Accordingly, this Court does not have supplemental jurisdiction over these state law claims. This provides yet another basis on which to dismiss Kisonas from this case.

### F. Conclusion

For the reasons stated above, the Court should **GRANT** the motions to dismiss (ECF Nos. 67, 78, 79) and: (1) **DISMISS** this action as to the MBT Defendants with prejudice; (2) **DISMISS** all claims against the Blue Cross Defendants with prejudice, except for the breach of contract claim against BCBSM for improperly amending the provider agreement, which should be dismissed without prejudice to being refiled in state court based on supplemental jurisdiction being declined; and, (3) **DISMISS** all claims against Defendant Ray Kisonas without prejudice for improper service, or alternatively, if the Court disagrees with

my conclusions that personal jurisdiction has not been established and that

supplemental jurisdiction is lacking as to Kisonas, with prejudice on the merits.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 5, 2020                         s/*Anthony P. Patti*
                                              Anthony P. Patti
                                              United States Magistrate Judge