UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLY POMPY,
     Plaintiff,

v.

TINA TODD, JESSICA
CHAFFIN, JACK VITALE,
MARC MOORE, ROBERT
BLAIR, JON LASOTTA, SHAWN
KOTCH, BRIAN BISHOP,
SHELLY EDGERTON, SEAN
SIEBIGTEROTH, KIM
GAEDEKE, VAUGHN HAFNER,
DINA YOUNG,
     Defendants.
_____/

Case No.: 19-10334

David M. Lawson
United States District Judge

Anthony P. Patti
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT IN PART MONROE COUNTY DEFENDANTS' MOTION TO DISMISS (ECF No. 97) AND TO STAY REMAINING CLAIMS AGAINST DEFENDANTS BLAIR AND LASOTTA**

**I.    RECOMMENDATION:** The Court should grant in part Monroe County Defendants' Motion to dismiss (ECF No. 97), dismiss Defendants Todd, Chaffin, and Vitale on absolute immunity, dismiss some claims against Defendants Blair and LaSotta on qualified immunity, and stay the remaining claims.

**II.   REPORT**

    **A. Background**

Plaintiff was a pain physician living and working in Monroe, Michigan. This case largely concerns an investigation into his narcotic prescription practices by Blue Cross Blue Shield, and local, state, and federal law enforcement.  He was ultimately indicted on controlled substance and health care fraud charges; his criminal case is still pending.  (*See* Case No. 18-20454).  His medical license was suspended in August 2017.  (ECF No. 66, PageID.912).

Plaintiff sues a number of defendants involved in the investigation.  Before the Court is Defendants' Robert Blair, Jessica Chaffin, Jon LaSotta, Tina Todd, and Jack Vitale's (the "Monroe County Defendants") motion to dismiss.  Plaintiff sues the Monroe County Defendants for the alleged violation of his civil rights in their role in the investigation.  (ECF No. 66, PageID.903).  Plaintiff alleges that on September 21, 2016, Magistrate Tina Todd of the First District Court in Michigan, "an incompetent court, allegedly issued a search warrant for the search and seizure of financial information" from Defendant Monroe Bank and Trust.  On September 23, 2016, Magistrate Jessica Chaffin, also with the First District Court, "issued two overbroad search warrants for the search and seizure of" documents from Plaintiff's business and home, both located in Monroe, Michigan.  (*Id.* at PageID.904).

Plaintiff alleges that, while under the supervision of Defendant Officer Robert Blair, local, state, and federal law enforcement officers executed the search

warrants on Plaintiff's home and business office on September 26th. They executed the warrants "in full force, screaming and yelling, with several masked gunman, guns drawn, with such severity that hospital patients and employees, Plaintiff's employees, patients and their children got scared, screamed hysterically, trembling in fear of a robbery." (*Id.*). Defendant Officer Jon LaSotta allegedly downloaded patient medical records from an office computer without a search warrant and then Blair distributed the information to Blue Cross employee Defendant Dr. Carl Christensen and Defendants Brian Bishop and Shawn Kotsch. (*Id.* at PageID.905). Related to this last allegation is the further allegation that Blair admitted to using a fake search warrant in 2017 to obtain medical records from "IPatientCare." (*Id.* at PageID.910).

On September 28, 2016, Defendant Judge Jack Vitale, with the First District Court of Michigan (again, "an incompetent court"), issued three "overbroad" search warrants for Plaintiff's accounts with Merrill Lynch (purportedly located in Jacksonville, Florida), E-Trade Securities LLC (purportedly located in Jersey City, New Jersey), and Monroe County Community Credit Union in Monroe, Michigan. In addition to their being "overbroad," it appears Plaintiff believes Judge Vitale's search warrants are invalid because the First District Court "lack[s] personal and subject matter jurisdiction in the State of Florida and the State of New Jersey." Plaintiff apparently believes that Judge Vitale could not issue a warrant for the

account information held by a business located outside of Michigan—Merrill Lynch and E-Trade. Plaintiff also states that the First District Court is limited to an amount in controversy of $25,000.[1] This allegation implies that his accounts exceeded that limit, and thus Judge Vitale was without power to issue a search warrant on those accounts. (*Id.* at PageID.905).

Plaintiff accuses Defendants Todd, Chaffin, and Vitale—the three judges—of "abuse of power and gross judicial negligence" in the issuance of the various search warrants. (*Id.* at PageID.912). Plaintiff accuses Defendants Blair and LaSotta of executing search warrants "without being appointed deputy sheriff or undersheriff." (*Id.* at PageID.909, 911). Plaintiff also alleges there is no transcript of the hearings on Blair's affidavits prior to the search warrants being issued (*id.* at PageID.909), although the Court takes judicial notice of the fact that there rarely is a transcript associated with obtaining a warrant, as these *ex parte* requests are almost always made by affidavit. Without elaboration, Plaintiff alleges that Blair obtained his social security number from "TLO" and from Kotsch, and illegally used the number. (*Id.* at PageID.912).

**B. Standard**

---

[1] Plaintiff actually writes $2,500 here, but it is clear that this is a typographical error as he writes $25,000 later in the amended complaint in his discussion of the court's jurisdiction. (*See* ECF No. 66, PageID.911). Discussed below is the fact that the First District Court does not have jurisdiction to hear *civil* matters in which the amount in controversy exceeds $25,000.

Defendants frame their motion as a motion to dismiss brought pursuant to Rule 12(b)(6).  However, they filed an answer to Plaintiff's amended complaint on February 11, 2020, but filed the instant motion to dismiss on August 6, 2020. (ECF Nos. 69, 97).  Rule 12(b) provides that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Pursuant to Rule 12(h), the Court construes Defendants' "late" Rule 12(b)(6) motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  *See Sheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988) (construing post-answer Rule 12(b)(6) motion as a Rule 12(c) motion) and various citations contained therein; *see also*, 2 *Moore's Federal Practice—Civil* § 12.38.

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is substantially the same as that for a motion to dismiss under Rule 12(b).  *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss.") (citations omitted); *Moore's, supra*.  When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must

5

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 Fed. Appx. 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591,

594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

### C. Discussion

#### 1. Plaintiff's Request for Permission to Respond

The same day the Monroe County Defendants filed their motion to dismiss (August 6, 2020), I ordered Plaintiff to file a response to the motion by September 8, 2020. (ECF No. 98). On August 29th, Plaintiff filed a "request" for "permission of the court to object to Monroe County Defendants' Motion to Dismiss." (ECF No. 100). Therein, he simply asked for permission to file a brief in opposition to the motion.

Preliminarily, the proper way to seek relief from the Court is by way of motion, as described in Fed. R. Civ. P. 7(b) and Local Rule 7.1. Plaintiff is aware of this, and has previously utilized that procedure. (*See* ECF No. 91.) A mere

letter or "request" does not suffice, and is not docketed by the Clerk as a pending motion. In any case, as explained to Plaintiff elsewhere, it was unnecessary for Plaintiff to file this request under the Federal Rules of Civil Procedure and the Local Rules of this District, as the right to respond is provided for in the Rules, except in cases of *ex parte* motions. (*See* ECF Nos. 103 & 105, PageID.1604.) Further, the request is moot, as I had already ordered Plaintiff to respond to the motion "on or before September 8, 2020." (ECF No. 98, PageID.1488.) To date, he has not done so. Plaintiff has demonstrated an ability to understand and comply with the Rules of Procedure and orders of this Court in the past with regard to responses. Numerous motions have already been filed in this case to which he responded. Additionally, Plaintiff has a medical degree which suggests that he is not a wholly unsophisticated party. Regardless, although *pro se* litigant pleadings are held to a more forgiving standard than those of an attorney, a *pro se* litigant is still required to follow the rules of civil procedure and easily-understood court deadlines. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

In the alternative, even if I were to treat Plaintiff's "request" as a motion for an *extension* of time to respond, his request does not meet the requirements of Fed. R. Civ. P. 6(b)(1)(A) for such a motion. Plaintiff did not support his "request" with any explanation as to why he should be given additional time to respond

under the Rule.  Therefore, to the extent his "request" was really a motion to extend, it is **DENIED**.

### 2. Absolute Immunity

The Monroe County judicial defendants—Magistrates Todd and Chaffin and Judge Vitale—argue that they are entitled to absolute immunity from suit on Plaintiff's allegations.  (ECF No. 97, PageID.1459-62).  "A long line of [the Supreme] Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991).  "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* at 11 (citations omitted).  It is "overcome in only two sets of circumstances[,]" namely, "non-judicial actions" and "actions ... taken in the complete absence of all jurisdiction." *Id.* (citations omitted).  This protection extends to state court magistrates. *Nicklay v. 56–A Dist. Court,* No. 1:08–cv–331, 2008 WL 4376400, at *4 (W.D. Mich. Sept. 22, 2008) ("State court magistrates are clearly judicial officers entitled to the protections of judicial immunity.") (citing *Krajicek v. Justin,* 991 F. Supp. 875, 876 (E.D. Mich. 1998), *aff'd,* 178 F.3d 1294 (6th Cir. 1999)).

The first exception is not present here; signing a search warrant is a judicial action, and Plaintiff does not allege that these defendants acted outside their judicial capacity when they signed the search warrants.

Plaintiff does allege, however, that the First District Court was "an incompetent court" having jurisdiction only in cases where the amount in controversy does not exceed $25,000.  Plaintiff also challenges the search warrants for account information from Merrill Lynch and E-Trade because those businesses are headquartered outside of Michigan.  This is an attack on the jurisdiction of the issuing court.

Plaintiff is correct that the district court does not have jurisdiction over civil cases in which the amount in controversy exceeds $25,000, M.C.L. § 600.8301(1), however, this monetary limit does not extend to criminal cases.  A district judge or magistrate can sign a search warrant, provided there is probable cause for the search, in any criminal case, even if the subject of the search exceeds $25,000.  *See* M.C.L. § 780.651; *see also Foster v. Mulkey*, 2010 WL 3522295, at *2 (E.D. Mich. July 13, 2010) (Finding magistrate immune from suit for making an evidentiary ruling *and signing a search warrant* because those actions were taking within her official capacity and "well within the jurisdiction of her office as a magistrate[.]"); *Hewett v. City of Grand Rapids*, 2012 WL 5409790, at *4 (W.D. Mich. Oct. 15, 2012), *report and recommendation adopted*, 2012 WL 5409788

(W.D. Mich. Nov. 6, 2012) ("[S]tate district judges have clear authority to issue search warrants.") (citing Mich. Comp. Laws §§ 780.651(i); 761.1).

The facts surrounding the search warrants for the Merrill Lynch and E-Trade accounts are unclear. Plaintiff does not say whether the warrants were served on the companies at an office in Michigan or outside of Michigan. Plaintiff does not allege that he created these accounts outside of Michigan; rather, the complaint reads as though he conducted his business in Monroe, Michigan, not elsewhere. Nevertheless, assuming the warrants were served on the companies in Florida and New Jersey, and thus outside of Michigan, the question is whether the judge or magistrates acted in excess of their jurisdiction in issuing the warrants. We need not decide this issue. "The limitation on judicial immunity applies not to improper exercises of jurisdiction, or even to conduct taken in 'excess of jurisdiction,' but only to conduct taken categorically *without* jurisdiction, like the conduct of 'a probate court, invested only with authority over wills and the settlement of estates of deceased persons, . . . [that] proceed[s] to try parties for public offences.'" *Creech v. Pater*, 701 Fed. Appx. 456, 460 (6th Cir. 2017) (emphasis added) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52, 20 L.Ed. 646 (1871)).

With this principle in mind, even if signing search warrants for financial account information held by companies outside of Michigan was in excess of the Defendants' jurisdiction, those acts were not categorically without jurisdiction—

district judges and magistrates have authority to issue search warrants in criminal cases being investigated in Michigan.  Accordingly, Defendants Todd, Chaffin, and Vitale are entitled to absolute immunity and the claims against them should be **DISMISSED with prejudice**.

### 3.  Qualified Immunity

Defendants Blair and LaSotta argue that they should be dismissed from this case based on qualified immunity because they acted in their official capacities as sheriff's deputies pursuant to judicially-issued search warrants.  (ECF No. 97, PageID.1462-64).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted).  The Court conducts a two-step analysis in assessing qualified immunity.  First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).  While the better approach in resolving cases in which qualified immunity is raised is to "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all," before

moving onto step two, this order of analysis is not mandatory. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998); *Pearson*, 555 U.S. at 236 (holding that courts analyzing claims of qualified immunity are not required to first determine whether the facts shown by plaintiff demonstrate a constitutional violation before determining whether the right was clearly established). A constitutional violation is clearly established where there is "on-point, controlling authority or a 'robust consensus of cases of persuasive authority.'" *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)). "[A]lthough the ultimate burden of proof is on plaintiff to show that the defendants are not entitled to qualified immunity, the defendants bear the initial burden of putting forth facts that suggest that they were acting within the scope of their discretionary authority." *Hendricks v. Mohr*, 2017 WL 2991678, at *4 (S.D. Ohio July 14, 2017) (citing *Stoudemire v. Michigan Dep't of Corrections*, 705 F.3d 560, 568 (6th Cir. 2013)).

Defendants' qualified immunity discussion thoroughly explains the governing law. Their argument as to how it applies to all of the circumstances here, however, is rather perfunctory. They assert that because Plaintiff's allegations against them are for actions taken in their official capacities as sheriff's deputies, and that those actions were pursuant to court-ordered search warrants, they are entitled to qualified immunity. (ECF No. 97, PageID.1643-64).

Defendants cite *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012), for the proposition that they are protected because the "fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or as we have sometimes put it, in 'objective good faith.'"  But that is not all *Messerschmidt* says.  Although an officer may "rely on a judicially secured warrant for immunity from an action for illegal search and seizure[,]" *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir. 1989), an exception allowing suit exists when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue[,]" *Messerschmidt*, 565 U.S. at 546-47 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

One set of search warrants at issue in this case are the ones signed and executed in September 2016 for the search and seizure of medical records at Plaintiff's home and medical office and for his financial accounts and records.  In addition to his claim that these warrants were invalid because they issued from "an incompetent court," Plaintiff alleges that the warrants were overbroad.  He asserts that the search warrants for his home and office were overbroad in that they described the search and items to be seized as "any and all business records of Lesly Pompy and/or Interventional Pain Management Associates, related to patient identity, treatment or medical records and billing information at Interventional Pain Management."  (ECF No. 66, PageID.904).  He alleges the search warrants for his

financial accounts were overbroad because they were for "any account owned in whole or in part by Lesly Pompy and/or Interventional Pain Management Associates" at various financial institutions, including his personal bank.  (ECF No. 66, PageID.905).  Plaintiff provides no further information about the search warrants and does not attach any of the warrants to his amended complaint.  It is not clear from the amended complaint whether the language quoted here is a direct quote from the warrants or Plaintiff's paraphrasing of the warrant language.  Plaintiff asserts that Blair submitted affidavits in support of these search warrants.  (*See id.* at PageID.909).

Plaintiff's allegations do not make it obvious that no reasonably competent officer would think those search warrants should have issued.  First, no reasonably competent officer would have thought that the warrants were issued by "an incompetent court," since the district judges and magistrates in Michigan have authority to issue search warrants, as discussed above.  Second, no reasonably competent officer would have thought that the warrants were overbroad, at least according to the allegations in the amended complaint.  Plaintiff was suspected of illegal controlled substance prescription practices and fraudulent billing practices.  Searching all patient records at Plaintiff's pain clinic and any found at his home could logically lead to locating evidence on the prescription practices.  Likewise, it would not be entirely unreasonable to seize all business documents including

financial records for evidence relating to fraudulent prescription and billing and the ill-gotten gains of the alleged crimes, particularly where such property is subject to seizure. 18 U.S.C. §§ 981-982. (*See* Indictment, ECF No. 97-2, PageID.1484-1485.) The warrant language Plaintiff provides in his amended complaint is not overbroad to the extent that a reasonably competent officer could think that the warrants should issue. *See United States v. Blakeney*, 942 F.2d 1001 (6th Cir. 1991) ("The degree of specificity required [in the warrant] depends on the crime involved and the types of items sought."). Accordingly, Blair and LaSotta are entitled to qualified immunity with regard to the claims about the search warrant and seizure of records from Plaintiff's home and office and of his financial accounts.

The other search and seizure at issue is the seizure of medical records from IPatientCare, which appears from the complaint to be a third-party service that holds or stores patient medical records. Defendants do not address this issue in their briefing. Plaintiff alleges that LaSotta received these medical records *without a search warrant* on October 7, 2016. (ECF No. 66, PageID.905). On August 15, 2017, Blair allegedly faxed a search warrant to IPatientCare for those same records, but knew that the search warrant was fake. (*Id.* at PageID.910). The allegation that these defendants seized documents without a (real) search warrant precludes application of qualified immunity, at least at this stage. Search and

seizure without a warrant violates clearly established law.  *See, e.g., United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 491 (6th Cir. 2014).  This claim should not be dismissed on qualified immunity grounds.

In the amended complaint, Plaintiff states that neither LaSotta nor Blair were "appointed deputy sheriff or undersheriff" before executing search warrants.  (ECF No. 66, PageID.909, 911).  Standing alone, this is not a claim or cause of action— Plaintiff did not provide further factual development nor state a legal basis for liability.  Similarly, he claims that Blair "illegal[ly] use[d] Plaintiff's social security number after obtaining it illegally from TLO, an investigative source, and from TFO Shawn Kotsch who had access to DEA records."  (ECF No. 66, PageID.912).  Plaintiff again failed to provide further factual development and to state a civil cause of action.  Hence, it is reasonable that Blair and LaSotta did not mention these "claims" in their motion to dismiss.  I mention them here in the interest of thoroughness and to suggest that these assertions not be treated as claims in the amended complaint.

### 4. *Younger* Abstention

Monroe County Defendants argue in the alternative that this Court should abstain from ruling on Plaintiff's constitutional claims under the principles set forth in *Younger v. Harris*, 401 U.S. 37 (1971).  According to Defendants, Plaintiff's state medical licensure matter is still pending before Michigan

administrative law courts; however, as explained below, at the time this motion was filed, that does not appear to have been accurate.  Defendants additionally assert that Plaintiff is seeking an order from this Court vacating the license suspension order and reinstating his medical license.  (ECF No. 97, PageID.1464-66.)  That assertion is similarly not apparent from Plaintiff's pleadings, which only mention the suspension of his medical license in his litany *of damages*, contained in a prayer for relief which is limited to compensatory, punitive and special/"reimbursement" damages but does not request equitable remedies. (ECF No. 66, PageID.916-919.)

Defendants have not demonstrated that the *Younger* doctrine applies here. In *Younger,* the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless "the danger of irreparable loss is both great and immediate."  401 U.S. at 45.  The Supreme Court extended *Younger* "to noncriminal judicial proceedings when important state interests are involved." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982) (citations omitted).  "*Younger v. Harris* . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Id.* at 431.

Defendants did not adequately demonstrate how or why *Younger* applies to this case.  A ruling in Plaintiff's favor on the constitutional claims would not

offend the policy against interference with state proceedings.  Plaintiff does not ask this Court to interfere with state proceedings, or specifically to overturn a state administrative ruling and reinstate his medical license.  He seeks only damages against these Defendants for their alleged unconstitutional search and seizure of documents.  He does not challenge the state administrative process.  Hence, *Younger* abstention does not apply here.

*Arguendo,* even if *Younger* were applicable, the federal case should not be stayed for the reasons discussed below.  Three factors must be met in applying *Younger* abstention: "'(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Squire v. Coughlan*, 469 F.3d 551, 555–56 (6th Cir. 2006) (citing *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)).   If these factors are met, and the plaintiff seeks only monetary relief (as in this case), the federal case is stayed until completion of the state matter.  *See Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013) (Where the only relief sought by the plaintiff is damages, the Court "must stay the case instead of exercising its discretion to dismiss the case.").

To determine whether the state administrative proceeding is ongoing for purposes of the first *Younger* element, we look to the circumstances that existed on

the day Plaintiff filed this case.  *See Cooper v. Parrish,* 203 F.3d 937, 954 (6th Cir. 2000).  "If the state proceeding was pending at the time of the filing, we consider the matter ongoing for purposes of the first *Younger* question." *Danner v. Bd. of Prof'l Responsibility of Tennessee Supreme Court*, 277 Fed. Appx. 575, 579 (6th Cir. 2008) (citing *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003)).  This is the "so-called 'day-of-filing' rule." *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699 (citing *Fed. Express Corp. v. Tennessee Public Service Com'n*, 925 F.2d 962, 969 (6th Cir. 1991)).  Moreover, "[t]he action 'remains pending until a litigant has exhausted his state appellate remedies.'" *Id.* (quoting *Loch,* 337 F.3d at 578).

It appears that state proceedings were pending when Plaintiff filed this action.  We know this from a June 2020 Final Order from Michigan's Department of Licensing and Regulatory Affairs, Bureau of Professional Licensing Disciplinary Subcommittee, the administrative body that suspended Plaintiff's medical license.  The Court may take judicial notice of this final order.  Fed. R. Evid. 201(b); *Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.,* 394 F.2d 36, 40 (6th Cir. 1968) ("[A] Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.").  The order indicates that the "Department of Attorney General, Licensing and Regulatory Division executed a First Superseding Administrative Complaint against Plaintiff on May 2, 2018" (*see* Exhibit 1 to this Report and

Recommendation, Final Order at 1); thus, a prior Administrative Complaint must also have existed, both well before he initiated the instant lawsuit.  And, according to the amended complaint herein, Plaintiff's medical license was summarily suspended in August 2017, also well before the February 2019 filing of this case. (ECF No. 66, PageID.905; *see also* Exhibit 1 to this Report and Recommendation, Final Order at 1.)  The order explains that there was an administrative hearing on the August 2017 summary suspension.  In April 2019 an administrative law judge issued findings of fact and conclusions of law, to which Plaintiff filed "exceptions."  In June 2020, the Final Order issued, dissolving the August 2017 summary suspension of Plaintiff's license, suspending his license to practice medicine for a minimum of six months and one day, automatically voiding his controlled substance license per M.C.L. § 333.7311(6) and fining him $5,000.00. (*Id*. at 2-3.)  State administrative proceedings were pending when Plaintiff filed this case.

The second and third factors would also appear to be satisfied.  Michigan has an interest in regulating medical licenses and the prescription of controlled substances.  *See Watts v. Burkhart*, 854 F.2d 839, 846-47 (6th Cir. 1988) (finding that "[t]he second factor for applying Younger  abstention is also met in this case, since a vital state interest is clearly involved" where the state had revoked a physician's medical license for improper distribution of controlled substances).

And, Plaintiff has not come forward with any argument or citations to authority that would suggest that he could not have raised constitutional claims in the state proceedings, nor do his pleadings otherwise enlighten the Court. *See Fed. Ex.*, 925 F.2d at 970 (citations omitted); *Nimer*, 707 F.3d at 701 (6th Cir. 2013) (citing *id.* at 970) (Plaintiff bears the burden of showing that state procedural law barred presentation of his constitutional claims.).

If *Younger* does apply to this case, the three-factor test, which directs this Court to stay proceedings *pending the resolution of the state proceedings,* would be satisfied. From what I can discern, however, the state proceedings are complete. The final order suspending Plaintiff's license was issued in June 2020. Although Defendants assert that Plaintiff "can appeal to Michigan circuit and appellate courts any adverse rulings entered against him in the state regulatory matter" (*Id.* at PageID.1465), neither Defendants nor Plaintiff have indicated that Plaintiff filed a timely appeal of that order in any court. Indeed, a case search on the Michigan Court of Appeals website for party name "Pompy Lesly" returns no cases involving Plaintiff. *See* https://perma.cc/QSM7-4DAB.; *see also* M.C.L. § 333.16237(6) (providing for an appeal as of right of the final decision of a disciplinary subcommittee of the department of licensing and regulatory affairs to the Michigan Court of Appeals). Staying the case on this basis now would appear to be futile. For this reason, even if *Younger* applied to this case and the factors are

otherwise met, I recommend that this case not be stayed under the *Younger* doctrine.

### 5. *Heck v. Humphrey*

As another alternative, Defendants argue that Plaintiff's claims should be dismissed under the principles set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in favor of Plaintiff on his claims in this case would necessarily imply that the suspension of his medical license was illegal.  (ECF No. 97, PageID.1469).

The Supreme Court has held that a plaintiff cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal

prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

As an initial matter, it is not entirely clear that the *Heck* bar would apply to a civil or quasi-criminal state regulatory matter. Suspension of a medical license is not necessarily akin to a sentence for criminal conduct or wrongdoing. Defendants have not made clear how or why *Heck* would bar a ruling.

Notwithstanding their failure, *Heck* requires that this Court stay a ruling on the validity of the search and seizure at issue for the additional reason that there is a pending criminal action, the result of which could be called into question by a ruling in this case.[2] The Court in *Heck* noted *in dictum* the rule precluding

---

[2] Although Defendants' only mention Plaintiff's criminal case and make a *Heck* argument, they did not argue that this case should be stayed because of the criminal case. I am addressing this issue *sua sponte*. The Sixth Circuit has not taken a position on whether *Heck* issues must be raised as affirmative defenses which defendants waive by failing to make them before the Court. *Cummings v. City of Akron*, 418 F.3d 676, 681 n.3 (6th Cir. 2005). However, the Sixth Circuit has affirmed, without analysis, district courts' *sua sponte* dismissal of plaintiffs' § 1983 claims under *Heck. See, e.g., Hunt v. Michigan*, 482 Fed. Appx. 20, 21 (6th Cir. 2012); *Manthey v. Kessler*, 79 Fed. Appx. 153,153-54 (6th Cir. 2003); *Stover v. Mackie*, 15 Fed. Appx. 200, 201 (6th Cir. 2001). And Courts in this District have regularly dismissed plaintiffs' complaints *sua sponte* as barred by *Heck* pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b). *See, e.g., Soldan v. Robinson*, 2019 WL 3892564 (E.D. Mich. Aug. 19, 2019) (Drain, J.); *Wilson v. County of Wayne*, No. 15-10693, 2015 WL 2126920 (E.D. Mich. May 6, 2015) (Lawson, J.); *Moore v. Hampton*, No. 2:13-CV-13600, 2014 WL 6455629 (E.D. Mich. Nov. 17, 2014) (Drain, J.); *Smith v. City of Detroit*, No. 12-14278, 2013 WL 1349282 (E.D. Mich. Apr. 2, 2013) (Lawson, J.); *Brown v. Michigan Dep't of Corrs.*, No. 2:10-CV-12649, 2010 WL 5056195 (E.D. Mich. Dec. 6, 2010) (Duggan, J.); *King v. City of Highland Park*, No. 07-15341, 2008 WL 723514 (E.D. Mich. Mar. 17, 2008)

collateral attacks on criminal judgments via § 1983 actions is limited to final judgments; it does not apply to pending criminal cases.  512 U.S. at 487-88 n. 8. Then, in *Wallace v. Kato,* 549 U.S. 384 (2007), the Court rejected the assertion that based on *Heck* "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id.* at 393 (emphasis in original).  If the plaintiff files a "claim related to rulings that will likely be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id.* at 393-94.

Plaintiff's case presents such a scenario—he filed this civil lawsuit raising claims that likely will be decided in the criminal matter.  For example, in the criminal case, Plaintiff filed a yet to be adjudicated motion to suppress evidence obtained from IPatientCare, arguing that those records were obtained without a warrant—just as he argues in this case.  (*See* Case No. 18-cr-20454, ECF No. 25).

---

(Zatkoff, J.); *White v. Paetz*, No. 4:06-CV-12225, 2006 WL 1698962 (E.D. Mich. June 13, 2006) (Gadola, J.).

As such, any ruling should be stayed until there is a conviction or acquittal, and then the Court can determine whether *Heck* requires dismissal.

### 6. *Rooker-Feldman*

Defendants also argue that this Court does not have jurisdiction to hear Plaintiff's claims against them under the *Rooker-Feldman* doctrine.  (ECF No. 97, PageID.1466-67).  "The *Rooker–Feldman* doctrine provides that inferior federal courts lack jurisdiction to review the final judgments of state courts." *Hutcherson v. Lauderdale Cnty., Tenn.*, 326 F. 3d 747, 755 (6th Cir. 2003) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).  It applies in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The relevant inquiry is the source of the injury—"[i]f the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."  *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

The source of injury claimed in this case is the alleged warrantless search and seizure of medical records and financial documents, not a state court (or

administrative) decision to suspend Plaintiff's medical license or a state court judgment.  *Rooker-Feldman* does not bar Plaintiff's claims.

### D. Conclusion

For the reasons stated above, the Court should **GRANT IN PART** the motion to dismiss (ECF Nos. 79) and stay the remaining claims against Defendants Blair and LaSotta.  Specifically: (1) the claims against Defendants Todd, Chaffin, and Vitale should be **dismissed with prejudice** based on absolute immunity; (2) the claims against Defendants Blair and LaSotta for their involvement in the search and seizure of medical records from Plaintiff's home and office and of his financial records should be **dismissed with prejudice** because they are protected by qualified immunity; however, (3) the portion of the motion seeking to dismiss the remaining claims against Blair and LaSotta—regarding the alleged warrantless search and seizure of the IPatientCare records—should be **DENIED,** although litigation of these claims should be stayed under the principles of *Heck*.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 30, 2020

Anthony P. Patti
United States Magistrate Judge