UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLY POMPY, and
INTERVENTIONAL PAIN
MANAGEMENT ASSOCIATES, P.C.,

       Plaintiffs,

v.

BLUE CROSS
BLUE SHIELD OF MICHIGAN,
MARC MOORE, and
BRIAN BISHOP,

       Defendants.

No. 2:19-cv-10334

LAWSON, J.
PATTI, M.J.

**PLAINTIFFS' RESPONSE TO
[157] DEFENDANT MOORE'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ I

INDEX OF AUTHORITIES .................................................. II

COUNTERSTATEMENT OF QUESTIONS PRESENTED ........... VII

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....... VIII

INTRODUCTION ............................................................... 1

RULES OF DECISION ...................................................... 1

ARGUMENT ................................................................... 2

    I.   Plaintiffs' claims against Moore are timely because they relate-back under Rule 15(c) or benefit from equitable tolling ................................................................. 2

        A.   RICO claims ......................................... 2

        B.   Section 1983 claims ................................ 3

        C.   Tortious interference claim ........................ 4

        D.   Equitable tolling .................................... 6

    II.   IPMA states plausible claims for relief .......................... 10

        A.   RICO claims ........................................ 10

        B.   Section 1983 claims ............................... 17

        C.   Tortious interference .............................. 21

    III.  Moore is not entitled to qualified immunity ..................... 22

CONCLUSION ................................................................ 25

# INDEX OF AUTHORITIES

## *Cases*

*Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,*
   483 U.S. 143 (1987) ................................................................2

*Am. Biocare, Inc. v. Howard & Howard Attys, PLLC,*
   No. 2:14-cv-14464; 2016 WL 5661583 (E.D. Mich. Sept. 30, 2016).....13

*Auburn Sales, Inc. v. Cypros Trading & Shipping,* Inc.,
   898 F.3d 710 (6th Cir. 2018) ........................................21, 22

*Bazzi v. City of Dearborn,*
   658 F.3d 598 (6th Cir. 2011) .................................................19

*Blazer Foods, Inc. v. Restaurant Props., Inc.,*
   259 Mich. App. 241 (2003)....................................................4

*Bledsoe v. Carreno,*
   53 F.4th 589 (10th Cir. 2022)...............................................20

*Brennan v. Edward D. Jones & Co.,*
   245 Mich. App. 156 (2001)....................................................8

*Bressner v. Ambroziak,*
   379 F.3d 478 (7th Cir. 2004) ...............................................12

*Crawford v. Tilley,*
   15 F.4th 752 (6th Cir. 2021)............................................2, 23

*Devillers v. Auto Club Ins. Ass'n,*
   473 Mich. 562 (2005)............................................................9

*Dow Chem. Co. v. United States,*
   476 U. S. 227 (1986)............................................................23

*Eidson v. Tenn. Dep't of Children's Servs.,*
   510 F.3d 631 (6th Cir. 2007) ................................................4

*Eitel v. PNC Bank, N.A.,*
   No. 3:20-cv-12; 2023 WL 2230866 (W.D. Ky. Feb. 24, 2023)................6

*Franks v. Delaware,*
    438 U. S. 154 (1978) ...............................................................23

*Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,*
    209 F.3d 552 (6th Cir. 2000) ....................................................6

*Grow Mich., LLC v. LT Lender, LLC,*
    50 F.4th 587 (6th Cir. 2022) ...................................................11

*Hamann v. Charter Twp. of Van Buren,*
    No. 20-10849; 2021 WL 534487 (E.D. Mich. Feb. 11, 2021)..................4

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)...............................................................23

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ................................................................8

*Heinrich v. Waiting Angels Adoption Servs., Inc.,*
    668 F.3d 393 (6th Cir. 2012) ..................................................10

*Herrick v. Liberty League Int'l,*
    No. 1:07-cv-936; 2008 WL 2230702 (S.D. Ohio May 28, 2008) ...........13

*Holland v. Florida,*
    560 U.S. 631 (2010) ................................................................6

*Holmberg v. Armbrecht,*
    327 U.S. 392 (1946) ................................................................6

*Honorable v. Easy Life Real Estate Sys., Inc.,*
    182 F.R.D. 553 (N.D. Ill. 1998) ..............................................14

*In re ClassicStar Mare Lease Litig.,*
    727 F.3d 473 (6th Cir. 2013) ..................................................15

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC,*
    912 F.3d 316 (6th Cir. 2018).....................................................3

*Kenjoh Outdoor, LLC v. Marchbanks,*
    23 F.4th 686 (6th Cir. 2022)................................................2, 23

*MacIntosh v. Clous,*
  69 F.4th 309 (6th Cir. 2023)..............................................22, 23

*Mays v. City of Dayton,*
  134 F. 3d 809 (6th Cir. 1998) ...........................................24

*McDonald v. Farm Bureau Ins. Co.,*
  480 Mich. 191 (2008).................................................8, 9, 10

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ..........................................................23

*Ouwinga v. Benistar 419 Plan Servs., Inc.,*
  694 F.3d 783 (6th Cir. 2012) ............................................15

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) .......................................................15

*Rice v. Jefferson Pilot Fin. Ins. Co.,*
  578 F.3d 450 (6th Cir. 2009).............................................5

*Robertson v. Lucas,*
  753 F.3d 606 (6th Cir. 2014) .............................................19

*Roden v. Sowders,*
  84 F. App'x 611 (6th Cir. 2003) .........................................18

*Sims v. Ohio Cas. Ins. Co.,*
  151 F. App'x. 433 (6th Cir. 2005) .......................................2

*Spadafore v. Gardner,*
  330 F.3d 849 (6th Cir. 2003) ............................................19

*United States v. Blackmon,*
  839 F.2d 900 (2d Cir. 1988) ..........................................12, 13

*United States v. Hampton,*
  760 F. Appx. 399 (6th Cir. 2019) .......................................24

*Ward v Nierlich,*
  617 F. Supp. 2d 1226 (S.D. Fla. 2008) .................................14

*Warrior Sports, Inc. v. NCAA,*
    623 F.3d 281 (6th Cir. 2010) ............................................................22

*William v. Att'y Gen.,*
    972 F.3d 819 (6th Cir. 2020) ........................................................ 1, 2

*Wilson v. Grumman Ohio Corp.,*
    815 F.2d 26 (6th Cir. 1987) ..............................................................5

*Wolfe v. Perry,*
    412 F.3d 707 (6th Cir. 2005) ............................................................3

*Young v. United States,*
    535 U.S. 43 (2002) ............................................................................6

*Zappone v. United States,*
    870 F.3d 551 (6th Cir. 2017) ............................................................6

### *Constitutions*

Mich. Const. 1963, art. 3, §2........................................................9

### *Statutes*

18 U.S.C. § 1961 ............................................................................11

18 U.S.C. §1344 ............................................................................11

18 U.S.C. §1961 ............................................................................15

18 U.S.C. §1962 ......................................................................10, 15

42 U.S.C. §1983............................................................................17

Mich. Comp. Laws §600.5805....................................................4

### *Rules*

E.D. Mich. L.R. 7.1........................................................................1

Fed. R. Civ. P. 15 ..........................................................................3

***Treatises***

51 Am. Jur. 2d Limitation of Actions §155 (2023) ....................................10

## COUNTERSTATEMENT OF
## QUESTIONS PRESENTED

1.   Are Plaintiffs' claims against Defendant Moore timely under the relation-back doctrine in Rule 15(c)?

2.   If not, should Plaintiffs benefit from equitable tolling?

3.   Do Plaintiffs state plausible claims for relief?

4.   Is Defendant Moore entitled to qualified immunity at the pleading stage based on the facts alleged in the Second Amended Complaint?

## CONTROLLING OR
## MOST APPROPRIATE AUTHORITY

18 U.S.C. §1344(2)

18 U.S.C. §1962(c), (d)

Fed. R. Civ. P. 15 (c)

*Kenjoh Outdoor, LLC v. Marchbanks*, 23 F. 4th 686 (6th Cir. 2022)

*Roden v. Sowders*, 84 F. App'x 611 (6th Cir. 2003)

*United States v. Blackmon*, 839 F.2d 900 (2d Cir. 1988)

*William v. Att'y Gen.*, 972 F.3d 819 (6th Cir. 2020)

Plaintiffs oppose Defendant Marc Moore's motion to dismiss the Second Amended Complaint ("SAC") for the reasons argued in this brief. E.D. Mich. L.R. 7.1(c)(1).

## INTRODUCTION

In June 2018, Dr. Pompy was charged with 37 counts of unlawfully distributing prescription drugs and healthcare fraud.  He steadfastly maintained his innocence, and a jury of his peers acquitted him on all counts. *United States v. Pompy*, No. 2:18-cr-20454 PageID.1901–1906.

In February 2019, Dr. Pompy filed this action while the criminal case was pending, looking to hold accountable those who had unfairly destroyed his life and harmed the lives of his patients.  Moore was one of those people.

Moore's lead contention that Plaintiffs' claims are stale overlooks that these exact claims were previously pleaded against him and therefore relate-back under Rule 15(c).  Alternatively, the statute of limitations should be equitably tolled.  Moore's plausibility challenges and assertion of qualified immunity are also without merit.

## RULES OF DECISION

Having challenged the SAC under Rule 12(b)(6), the burden lies with Moore to show that Plaintiffs have failed to plead a plausible claim for relief. *William v. Att'y Gen.*, 972 F.3d 819, 822 (6th Cir. 2020).  A claim is plausible if a court can reasonably infer that the defendant is liable for the alleged misconduct based on the well-pleaded facts, which must be taken as

– 1 –

true and construed in the light most favorable to the plaintiff, with all reasonable inferences drawn in the plaintiff's favor. *Id.* at 823.

In addition to a plausibility challenge, Moore contends that dismissal is warranted based on the affirmative defense of qualified immunity. Although the burden ultimately lies with Plaintiffs to show that Moore is not entitled to qualified immunity, a plaintiff generally is not required to negate an affirmative defense in a complaint. *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694–95 (6th Cir. 2022). It is therefore inappropriate to dismiss a defendant based on qualified immunity unless the merit of this affirmative defense is apparent from the face of the complaint. *Ibid.*; see also *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021).

## ARGUMENT

**I.   Plaintiffs' claims against Moore are timely because they relate-back under Rule 15(c) or benefit from equitable tolling.**

**A.    RICO claims.**  Civil RICO actions are subject to a four-year limitations period. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The clock starts "when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x. 433, 435 (6th Cir. 2005). Here, RICO claims accrued, at the earliest, when the search warrants were executed on the financial institutions listed in the SAC on September 28, 2016. ECF No. 146, PageID.2334–2338, at ¶¶141–147. IPMA first asserted RICO claims in its original pleading filed on February 4,

2019, a date well within four years of those searches.  ECF No. 1, PageID.144, 178, ¶¶1124, B.  The Court dismissed these claims *without prejudice* because IPMA was not represented by counsel.  ECF No. 32, PageID.516–17.  The SAC repleads the RICO claims with benefit of counsel.

For limitations purposes, "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  When applying this standard, the focus is on "whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading."  *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 334 (6th Cir. 2018).  Since Moore was sued for RICO violations in the original complaint arising out of the investigation of Dr. Pompy, he was placed on notice in the original pleading of the RICO claims repleaded in the SAC.  While the SAC pleads them in more detail with the benefit of counsel, Rule 15(c)(1)(B) allows for relation back even for inartfully pleaded claims "attempted to be set out."  Coupled with the generous reading afforded to *pro se* pleadings, the RICO claims in the SAC relate back to the original complaint and overcome Moore's staleness challenge.

**B.    Section 1983 claims.**  The limitations period for §1983 claims is three years.  *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005).  The clock starts when the cause of action accrues, which "is a question of federal law."  *Hamann v. Charter Twp. of Van Buren*, No. 20-10849; 2021 WL 534487, at

*4 (E.D. Mich. Feb. 11, 2021) (Lawson, J.) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)).  A §1983 claim for an improper search and seizure accrues on the date the search and seizure takes place.  *Hamann*, at *5 (collecting cases).  As with the RICO claims, the §1983 claims accrued, at the earliest, when the warrants were executed in September 2016.  Plaintiffs first asserted a §1983 claim against Moore (repeatedly) in the original pleading on February 4, 2019, a date well within three years of the earliest possible accrual date.  ECF No. 1-1, PageID.108–09, at ¶¶740, 758; PageID.111–112, at ¶¶776, 790; PageID.114–115, at ¶¶810, 825; PageID.125, at ¶928; PageID.180, at ¶G(19).  The §1983 claims relate back to the original pleading under Rule 15(c)(1)(B) for the same reason as the RICO claims in Argument I.A, *supra*.

      **C.**    **Tortious interference claim.**  The limitations period for tortious interference claims is also three years.  Mich. Comp. Laws §600.5805(3); *Blazer Foods, Inc. v. Restaurant Props., Inc.*, 259 Mich. App. 241, 253 (2003).  Moore's tortious interference with Plaintiffs' other healthcare insurers and patients continued through the revocation of Dr. Pompy's DEA registration and his medical license on March 2 and August 3, 2017, respectively.  Plaintiffs first sought damages for the loss of contracts and/or business relationships with non-BCBSM health insurers in the original pleading filed on February 4, 2019, date well within three years of the earliest possible accrual date. ECF No. 1-1, PageID.180, at ¶G(13).  Even if Moore were to argue for an earlier accrual date tied to the raid on IPMA's office in September 2016 by pointing

– 4 –

to letters from insurers terminating agreements with Plaintiffs just weeks after the raid on IPMA in September 2016, see, *e.g.*, ECF No. 146-16, PageID.2552 (Oct. 3, 2016); ECF 146-17, PageID.2556 (Oct. 4, 2016), the tortious interference claim would still be just as timely as the § 1983 claim. As with the RICO claim, the Court dismissed IPMA's tortious interference claim without prejudice for lack of counsel. ECF No. 32, PageID.516. Dr. Pompy renewed the claim in the FAC filed on January 28, 2020, ECF No. 66, PageID.915–16, though the Court dismissed it without prejudice for want of jurisdiction on October 27, 2020, ECF No. 105, PageID.1614–1616.

Moore relies on *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987), for the proposition that "a dismissal without prejudice leaves the situation the same as if the suit had never been brought." *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 457 (6th Cir. 2009), clarified that this means "dismissal of a suit without prejudice." Unlike *Wilson* and *Rice*, both of which involved a single plaintiff and single defendant, this is a multiparty action in which the Court's order dismissing IPMA's claims without prejudice was not a final order under Rule 54. ECF No 32, PageID.515–516. IPMA has remained a plaintiff in this action and free to file amended pleadings just as BCBSM has remained a defendant and subject to amended pleadings. See Pls.' Resp. to BCBSM's Mot. to Strike, at Arg. II, ECF No. 159, PageID.2722–2723. Neither *Wilson* nor *Rice* pose any barrier to relating back IPMA's claims against Moore to the original complaint.

– 5 –

**D.    Equitable tolling.**  It is "hornbook law that limitations periods are customarily subject to equitable tolling."  *Young v. United States*, 535 U.S. 43, 49 (2002) (cleaned up).  Should the Court rule that Plaintiffs do not benefit from the relation-back rule, then it will need to decide whether equity should toll the limitations period between the earlier dismissal of affected claims and the filing of the SAC.

**D1.    RICO claims.**  Federal courts may exercise equitable powers to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity."  *Holland v. Florida*, 560 U.S. 631, 650 (2010).

Moore incorrectly contends that equitable tolling is limited to occasions where the defendant took steps to conceal his existence or activities.  ECF No. 157, PageID.2684 (quoting *Eitel v. PNC Bank, N.A.*, No. 3:20-cv-12; 2023 WL 2230866, at *12 (W.D. Ky. Feb. 24, 2023)).  "Equity eschews mechanical rules; it depends on flexibility."  *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).  Tolling is assessed on a case-by-case basis to prevent inequity and is generally available "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond [his] control." *Zappone v. United States*, 870 F.3d 551, 556–57 (6th Cir. 2017); *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000).

IPMA submits that it could not meet the legally mandated deadline because of circumstances beyond its control.  The only reason IPMA could

– 6 –

not prosecute its RICO claims in the period between April 4, 2019, and June 6, 2023, was because it lacked counsel.  The only reason IPMA lacked counsel was because it could not afford to hire a lawyer.  The only reason IPMA could not afford to hire a lawyer is because BCBSM and Moore caused, as part of the alleged conspiracy and racketeering activity alleged in the SAC, all of IPMA's funds to be seized and impounded for asset forfeiture and restitution pending the conviction they expected.  ECF No. 146, PageID.2299–2300, at ¶4; PageID.2334–2338, at ¶¶141–149; PageID.2340, at ¶157.

These allegations notwithstanding, Moore opposes equitable tolling, contending that IPMA could have hired counsel on contingency and noting that Dr. Pompy was able to secure counsel for his criminal trial. ECF No. 157, PageID.2684.  There are several flaws in his argument.

First, Dr. Pompy and IPMA are separate legal persons.  Moore cites no authority for the implied argument that Dr. Pompy had a legal duty to subsidize IPMA's legal fees.

Second, even if there was such a duty, the terms of engagement between Dr. Pompy and criminal trial counsel, as well as about source and amount of the funds available for defense of the criminal case, are not matters pleaded in the SAC.  It would be improper to consider such extraneous information in the context of a Rule 12(b)(6) challenge.

Third, it's rather puckish for Moore to talk about hiring lawyers on contingency when he is before the Court as a private citizen represented by government counsel on the taxpayer's nickel.  It should come as no surprise

– 7 –

that attorneys would be unwilling to take on a RICO case of this magnitude on a contingent basis when one of the plaintiffs was indicted on federal criminal charges and facing a functional life sentence if convicted, since a conviction might have doomed the case under the rule against using civil cases as collateral attacks on criminal judgments. See *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Then again, perhaps a career in government service leaves one unable to appreciate the economic realities of private practice.

Still, points for brazenness are due. Moore stands accused of unlawfully stripping IPMA of its funds through racketeering. ECF No. 146, PageID.2299–2300, at ¶4; PageID.2334–2338, at ¶¶141–149; PageID.2340, at ¶157. It takes real chutzpah to take someone's money and then blame them for being broke. On the facts alleged, which must be taken as true on Rule 12(b)(6) challenge, it would be inequitable to deny IPMA the benefit of equitable tolling.

**D2.   Section 1983 and tortious interference.** IPMA accepts that state tolling doctrines govern its Section 1983 and state law claims. In Michigan, "[e]quitable tolling … may be invoked when traditional equitable reasons compel such a result." *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 204 (2008). In this sense, equitable tolling is as flexible in Michigan as it is under federal law.

Moore cites *Brennan v. Edward D. Jones & Co.*, 245 Mich. App. 156 (2001), for the proposition that equitable tolling is allowed only when there is a latent injury or an inability to discover the causal connection between an injury and the defendant's action. ECF No. 157, PageID.2685. But *Brennan*

was concerned with the discovery rule for tolling the *accrual of a claim*. In other words, the discovery rule delays the start of the limitations clock, it does not pause a clock that has already been started. IPMA is not seeking a later accrual date but is instead asking the Court to pause the clock for as long as BCBSM and Moore's bad actions prevented it from obtaining counsel so that it could lawfully appear and prosecute its interests.

Moore may also be tempted to cite in his reply brief *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562 (2005), for the proposition that equitable tolling has been curtailed in Michigan, but that too would be wrong. *Devillers* abolished *judicial* tolling, which is a doctrine distinct from *equitable* tolling. *McDonald*, 480 Mich. at 204 ("Equitable tolling, unlike judicial tolling, has a legal basis arising out of our common law[.]"). As explained in *Devillers*, judicial tolling is the act of reading a tolling provision into a statute to give a class of litigants more time to file a claim to avoid harsh but explicit policy choices by the Legislature. This intrudes on the Legislature's policymaking role and violates the separation-of-powers doctrine under the state constitution. *Devillers*, 473 Mich. at 588–591 and n.65; see also Mich. Const. 1963, art. 3, §2. But equitable tolling in the absence of a controlling statute does not. *Devillers* acknowledged that state courts may exercise equitable power but reserve it for "unusual circumstances." *Id.*, at 590. The court noted that, most frequently, unusual circumstances exist when there is fraud or mutual mistake, but it did not limit the exercise of equity power to those two situations. *Ibid.* Indeed, a few years later in *McDonald*, the same justices

reaffirmed that equitable powers may be invoked whenever "traditional equitable reasons compel" equitable tolling. *McDonald*, 480 Mich. at 204.

Traditionally, equity will toll the statute of limitations when inequitable circumstances not caused by the plaintiff prevented the plaintiff from timely filing. 51 Am. Jur. 2d Limitation of Actions § 155 (2023). Thus, the same circumstances that warrant equitably tolling IPMA's RICO claims under federal law would also warrant tolling IPMA's § 1983 and tortious interference claims under state law.

## II.  IPMA states plausible claims for relief.

**A.    RICO claims.** A violation of § 1962(c) requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). It is also unlawful for anyone to conspire to violate § 1962(c). 18 U.S.C. § 1962(d). To prevail on a conspiracy claim, the plaintiff "must successfully allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement to violate the substantive RICO provision." *Heinrich*, 668 F.3d at 411. IPMA alleges that Moore conspired with BCBSM to engage in a pattern of racketeering activity through MANTIS and, as an overt act in furtherance of the conspiracy, engaged in a listed form of racketeering activity: a violation of 18 U.S.C. § 1344(2). Moore does not independently challenge the conspiracy claim. He contends only that IPMA lacks standing to prosecute that form of racketeering activity and that MANTIS is not a RICO enterprise.

– 10 –

ECF No. 157, PageID.2686–2692.  Both arguments fail.  And because those arguments fail, both the substantive and conspiracy claims under RICO pass muster.

**A1.   Bank fraud.**   A violation of 18 U.S.C. §1344 is an act of racketeering activity.  18 U.S.C. § 1961(1)(B).  There are two ways to violate §1344.  The first is to execute a scheme to defraud a financial institution, in which case the institution is the sole victim of the fraud.  18 U.S.C. §1344(1).  The second is to execute a scheme to obtain property owned by, *or under the custody or control of*, a financial institution by means of false or fraudulent pretenses, representations, or promises.  18 U.S.C. §1344(2).  Moore cites four cases for the proposition that only a defrauded financial institution may assert bank fraud as a predicate act for a RICO claim, ECF No. 157, PageID.2687–2688, but a careful review of those cases shows that this applies to schemes under §1344(1), not §1344(2).  IPMA has asserted violations of §1344(2).  ECF No. 146, PageID.2333, at ¶139.

Moore cites *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587 (6th Cir. 2022), a case where the plaintiff claimed that the defendant persuaded a bank to extend $10 million based on a lie: that the funds, along with loans from the bank and loans from the plaintiff, would be used to begin manufacturing a product.  *Id.*, at 595.  The defendant instead allegedly used the funds for other purposes.  *Id.*, at 591.  This is classic bank fraud under §1344(1) where the alleged scheme targets the financial institution itself as the victim.  Because the plaintiff was not the direct victim of the fraud, he lacked "standing"—

– 11 –

*i.e.*, he could not allege a direct injury from the fraud perpetrated on the bank.

In *Bressner v. Ambroziak*, 379 F.3d 478 (7th Cir. 2004), the plaintiff sold a business to the defendant for a cash down payment and note for the balance of the sale price. The business failed under the defendant's ownership, and he never paid the plaintiff the amount due on the note. The defendant then started a new business. His wife was the titular owner but he was the *de facto* owner and operator of the business. Although the new business was successful, the defendant did not use the earnings to pay the amount due to the plaintiff. After unsuccessful attempts at collecting, the plaintiff filed a RICO claim when he learned that the defendant's wife had applied for and received loans and lines of credit from several banks by misrepresenting herself as the sole shareholder, officer, and director of the new business and omitting her husband's involvement in the business's operations and management. *Id.* at 480–81. Here, again, the plaintiff's theory of bank fraud was predicated on a violation of § 1344(1) where the bank was the intended victim. As in *Grow Mich.*, the plaintiff suffered no direct injury from the fraud on the banks.

*United States v. Blackmon*, 839 F.2d 900 (2d Cir. 1988), involved a street confidence game known as the pigeon drop. As part of the "game," a conman convinces a victim to deposit a sum of money in a safe deposit box equal to the victim's actual cash on deposit with a bank, except that the money placed in the safe deposit box is switched out by the conman with ordinary paper sliced into shape of currency. The victim is later asked to withdraw money from his bank account (not the safe deposit box) for investment. The

victim then gives the money to the conman, who disappears with it. When the victim goes to the safe deposit box to recover the loss, he finds worthless paper. *Id.*, at 902 n.2. The Second Circuit held that this scheme was not bank fraud because the conman did not obtain money *under the custody or control* of the bank; he obtained it from the victim who had lawfully withdrawn his own funds. *Id.*, at 904. Notably, the district court observed the same distinction between § 1344(1) and § 1344(2) that IPMA advocates here—*i.e.*, that the fraud victim must be a bank under § 1344(1), whereas the victim need not be a bank under § 1344(2) as long as property under the custody or control of a bank is obtained. *Id.*, at 905 n.5. The Second Circuit agreed this was a valid distinction but observed that even in the second scenario the bank would still be *a* victim. *Ibid.* Thus, *Blackmon* actually supports IPMA's position that there can be direct nonbank victims of a § 1344(2) scheme, namely the owner of the property in the bank's custody or control. On the facts alleged in the SAC, IPMA is a direct, nonbank victim of the asserted fraud. ECF No. 146, PageID.2299–2300, at ¶ 4; PageID.2333–2338, at ¶¶ 138–149; PageID.2340, at ¶ 157.

In *Am. Biocare, Inc. v. Howard & Howard Attys, PLLC*, No. 2:14-cv-14464; 2016 WL 5661583 (E.D. Mich. Sept. 30, 2016) (Rosen, J.), another session of this Court applied the "banks only" rule to a scheme that arguably arose under § 1334(2), citing—without any analysis—four district court decisions from elsewhere in the Sixth Circuit. *Id.*, at *8. Three of those cases cited the fourth case, *Herrick v. Liberty League Int'l*, No. 1:07-cv-936; 2008 WL 2230702, at *4 (S.D. Ohio May 28, 2008), which in turn cited *Ward v.*

*Nierlich*, 617 F. Supp. 2d 1226 (S.D. Fla. 2008), and *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553 (N.D. Ill. 1998). Of critical importance, *Ward* involved a §1344(1) scheme to obtain a bank loan to develop real estate based on fraudulently inflated property values. See *Ward*, 617 F. Supp. 2d at 1228–29. *Honorable* likewise involved a §1344(1) scheme: the obtaining of mortgages from FHA and HUD on false attestations that the buyer received no funds from the seller to finance the down payment on the loan. *Honorable*, 182 F.R.D. at 557–58. Neither case involved a §1344(2) scheme to obtain property under the financial institutions' custody or control. The holding in these two cases is sound—the bank is the only direct victim of a §1344(1) scheme—but *American Biocare* unthinkingly applied it to a §1344(2) scheme despite the distinction between those two types of offenses acknowledged in *Blackmon*.

Apart from his standing challenge, Moore does not dispute that the SAC plausibly pleads violations of §1344(2), so this component of his plausibility challenge should fail.

**A2. The RICO enterprise.** Moore argues that MANTIS is not a RICO enterprise because BCBSM does not "conduct or participate" in MANTIS. ECF No. 157, PageID.2689–91. Stated differently, Moore only challenges BCBSM's involvement in the enterprise, not his own.

RICO makes it unlawful for "any person … associated with any enterprise … to conduct or participate, ***directly or indirectly***, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18

– 14 –

U.S.C. §1962(c) (emphasis added).  An enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. §1961(4).  The 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable.  *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013).

Participation in the enterprise's affairs requires proof that the defendant participated in the "operation or management" of the enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  On the plain language of the statute, participation can be direct or indirect.  18 U.S.C. §1962(c).  Thus, liability is not limited to those with primary responsibility for the enterprise's affairs— *e.g.*, the officer-in-charge, like Moore—the defendant need only have "some part" in directing the enterprise's affairs.  *Reves*, 507 U.S. at 179.  Defendants must have "conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs."  *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791–92 (6th Cir. 2012) (cleaned up) (emphasis in original).

Accepting the facts alleged in the SAC as true, IPMA has sufficiently pleaded that BCBSM conducted or participated, "directly or indirectly, in the conduct of [MANTIS's] affairs."  18 U.S.C. § 1962(c).  BCBSM and Moore began a "joint" investigation into Dr. Pompy's prescription of controlled substances, treatment and testing methods, and billing practices through MANTIS.  BCBSM directed the joint investigation with MANTIS by assigning BCBSM Investigator James Howell to work with MANTIS as an undercover

patient.  Howell used an officially issued false identification—a Michigan driver's license with the pseudonym "James Stewart"—and had a BCBSM membership card for the purpose of being accepted as a new patient to fraudulently obtain a prescription for a controlled substance from Dr. Pompy. Howell recorded each of his visits to IPMA as "James Stewart," which were circulated to MANTIS.  See ECF No. 146, PageID.2310–22, at ¶¶39–83 (detailing Howell's many visits).  BCBSM and Moore knowingly caused Det. Robert Blair to obtain search warrants with affidavits accusing Plaintiffs of healthcare fraud based on materially false or misleading statements and material omissions.  ECF No. 146, PageID.2334–37, at ¶¶144–145 (detailing the misstatements or omissions).  BCBSM Investigator Brian Zasadny and Jim Gallagher, the Manager of BCBSM's Clinical Pharmacy Fraud, Waste and Abuse program, also provided cherrypicked and misleading data regarding Dr. Pompy's prescribing habits to support the false narrative that Dr. Pompy was running an illegal pill mill.  ECF No. 146, PageID.2321–2322, at ¶86; PageID.2334–2335, at ¶¶144–145, ECF No. 146-2, PageID.2383–2384, ¶¶S1–S6.  BCBSM directly worked with MANTIS and other law enforcement to seek criminal charges against Dr. Pompy to shut down IPMA and seek restitution from him.  ECF No. 146, PageID.2299–2300, at ¶4.

Moore argues that BCBSM could not have exerted control over MANTIS because BCBSM is a private insurance company.  ECF No. 157, PageID.2691. That is a fact dispute not properly raised in a Rule 12(b)(6) challenge.  The allegations of BCBSM's active role in this joint investigation by (*i*) using its

– 16 –

agents to perform undercover investigation into Plaintiffs, (*ii*) using its agents to supply material misstatements or omissions for the search warrants to be executed on Dr. Pompy's office, home, and bank and securities accounts, and (*iii*) presenting its agents as Government witnesses during the criminal trial of Dr. Pompy, is enough to plausibly plead that BCBSM participated in the operation and management of MANTIS when all well-pleaded facts and reasonable inferences are drawn in IPMA's favor.

**B.     Section 1983 claims.**   Plaintiffs allege plausible claims under 42 U.S.C. § 1983 as well.

**B1.   Count 4—Fourth Amendment claim.**   A person is liable under § 1983 if he deprives or causes another to be deprived of a right secured by the Constitution while acting under color of state law.   42 U.S.C. § 1983.   Moore, acting under color of state law, knew of, consented to, and directed Blair to prepare affidavits with information Moore knew to be materially false and misleading and with material omissions.   ECF No. 146, PageID.2310–22, PageID.2329–38.   As a result, search warrants authorizing the seizure of Plaintiffs' bank and securities accounts were fraudulently obtained and executed, violating Plaintiffs' right to be free from unreasonable searches and seizures.

Moore contends that any information he provided or omitted was not material to a finding of probable cause.   ECF No. 157, PageID.2697–2702. He misunderstands the claim.   Plaintiffs do not contend, as Moore posits at PageID.2699, that he merely provided the information attributed to him in

the search warrant affidavit; they contend that he knew of, consented to, and/or directed the inclusion of the materially false and misleading information and the exclusion of the material omissions alleged in Section A of Count 1 and Section E of Count 2—*all of it*.  ECF No. 146, PageID.2343, ¶172 (incorporating PageID.2310–2322, at ¶¶39–88, and PageID.2329–2338, at ¶¶121–149).  The earlier allegations regarding the conspiracy and Moore's motive are incorporated by reference into Count 4, making it plausible that he knew of, consented to, and/or directed what would and would not go into the bad affidavit as part of his role in the conspiracy.

Even if Moore took a less active personal role and knowingly left it to co-conspirator BCBSM's agents to supply the disinformation and ensure key information was omitted, he would still be responsible in his supervisory role as the officer-in-charge.  To prove that a supervisory defendant is personally responsible for the alleged unconstitutional actions that caused his injury, the plaintiff must show that he condoned, encouraged, or knowingly acquiesced in the misconduct.  *Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003). Count 4 plausibly alleges that Moore, in his role as the officer-in-charge of MANTIS, had personal knowledge and was directly involved in causing Blair to prepare the bad affidavits—*i.e.*, that Blair was effectively a scrivener for what Moore and BCBSM wanted the affidavits to say (and not say).  Plaintiffs submit that is sufficient to plausibly plead a claim under the *Roden* standard.

**B2.   Count 3—§1983 Conspiracy.**  A §1983 conspiracy requires (*a*) a plan among two or more people who shared a general conspiratorial objective

to deprive the plaintiff of a constitutional right, and (*b*) an overt act in furtherance of the conspiracy that injured the plaintiff. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Although conspiracy claims must be pled with some degree of specificity, the Sixth Circuit has acknowledged that circumstantial evidence may be sufficient as "rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire[.]" *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

BCBSM and Moore conspired to deprive Plaintiffs of their right to be free from unreasonable searches and seizures under the Fourth Amendment. The plan to achieve this objective was to conduct the joint investigation and to obtain search warrants through materially false and/or misleading statements and material omissions, all as described in Counts 1 and 2. ECF No. 146, PageID.2298–2303, 2309–2340. Moore and BCBSM, acting under color of state law, engaged in the overt acts alleged in the SAC in furtherance of the conspiracy. *Id.* at PageID.2310–2322, 2329–2338. Their actions directly and foreseeably injured Plaintiffs' business and property. The seizure of its bank and/or securities accounts deprived Plaintiffs of the use of their funds.

Moore contends that Plaintiffs have not pleaded the conspiracy claim with enough specificity, pointing only to the allegation of BCBSM and Moore's general conspiratorial objective. ECF No. 157, PageID.2695 (quoting ECF No. 146, PageID.2341, at ¶160). He overlooks that Count 3 expressly incorporates both the overt acts detailed in the RICO claims and the materially false and/or misleading statements and material omissions to obtain search warrants against Plaintiffs. *Id.* at ¶¶161–62. Those incorporated allegations regarding Moore and BCBSM's conduct are more than specific enough for a plausible civil conspiracy claim at the pleadings stage.

Moore also contends that he and BCBSM did not share a conspiratorial objective. ECF No. 157, PageID.2695. Moore confuses their separate *motives* for conspiring with their shared *objective*. "The participants in the conspiracy must share the general conspiratorial objective, [but] they need not know all the details of the plan designed to achieve the objective *or possess the same motives for desiring the intended conspiratorial result*." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (emphasis added). Although Moore and BCBSM may have had distinct motives—*i.e.*, BCBSM was seeking restitution dollars and Moore was seeking forfeiture dollars for career advancement— they still shared the same general conspiratorial objective: to violate Plaintiffs' Fourth Amendment rights. ECF No. 146, PageID.2341, ¶ 160.

Plaintiffs have therefore plausibly pleaded a substantive and conspiracy claim under §1983.

– 20 –

**C.**    **Tortious interference.**  A tortious interference claim arises under state law when a plaintiff can show "(1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff." *Auburn Sales, Inc. v. Cypros Trading & Shipping*, Inc., 898 F.3d 710, 715 (6th Cir. 2018).

Plaintiffs had contractual and/or business relationships with other health insurers under which Plaintiffs provided healthcare services to the insureds of the health care benefit plans offered by such other health insurers. ECF No. 146, PageID.2348–2349, at ¶203.  Plaintiffs submitted claims to, and were paid by, the other healthcare insurers for covered services provided to Plaintiffs' patients.  ECF No. 146, PageID.2349, at ¶204.  Plaintiffs also had contractual and/or business relationships with insured, underinsured, and uninsured patients to provide healthcare services in exchange for payment (*e.g.*, copays, deductibles, and the fees and costs for services not covered by their respective insurance).  ECF No. 146, PageID.2350, at ¶208. As the officer-in-charge of MANTIS, Moore would have learned and had knowledge of Plaintiffs' contractual or business relationships with the other healthcare insurers through the conspiracy with BCBSM and the fruits of the joint investigation.  *Id.*, at ¶207.

A tortious interference claim requires both intentional and improper interference.  *Auburn Sales*, 898 F.3d at 715–16.  Intent requires that "the

– 21 –

defendant's purpose or desire was to cause an interference with a contract or business relationship." *Id.* at 716. Moore satisfied the requisite intent: by purposefully interfering with Plaintiffs' contractual or business relationships with (*a*) other healthcare insurers to wrongfully claw back validly earned payments under the guise of restitution and asset forfeiture and (*b*) with patients by facilitating the revocation of Dr. Pompy's DEA registration and medical license for his own career advancement.

Next, impropriety requires "conduct that is either (1) wrongful *per se*; or (2) lawful, but done with malice and unjustified in law." *Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 287 (6th Cir. 2010). Stated differently, the "'improper' nature of an interference is shown by proving either (1) conduct that is inherently wrongful, or (2) conduct that is inherently legitimate, but which becomes wrongful in the context of the defendant's actions and malice." *Auburn Sales*, 898 F.3d at 716–17. Moore's interfering conduct—violating RICO and §1983—was illegal and therefore wrongful per se.

Plaintiffs have therefore plausibly pleaded a tortious interference claim under state law.

## III. Moore is not entitled to qualified immunity.

Qualified immunity is a threshold question to be resolved at the earliest point possible. *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). Even so, a dismissal for qualified immunity before discovery is warranted only in cases where the plaintiff fails to allege in the complaint that the defendant

violated a clearly established law, *Crawford*, 15 F.4th at 760, or where the merit of the defense is evident from the face of the pleadings, *Kenjoh Outdoor*, 23 F.4th at 694–95.  In all other circumstances, the earliest point to resolve this issue is usually at summary judgment—not the pleadings stage. *MacIntosh*, 69 F.4th at 315.

 "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "A 'clearly established right' is one that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  The courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12.

Plaintiffs have a clearly established Fourth Amendment right to be free from unreasonable searches and seizures due to an insufficient showing of probable cause in obtaining the warrant for that search. The Supreme Court has long stated: "When the Fourth Amendment['s Warrant Clause] demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (emphasis in original).  Specifically, as to IPMA, "a business establishment . . . enjoys certain protections under the Fourth Amendment." See *Dow Chem. Co. v. United States*, 476 U.S. 227, 235 (1986).

– 23 –

As the officer-in-charge of MANTIS, Moore had personal knowledge and direct involvement with causing Blair to obtain search warrants using affidavits accusing Plaintiffs of healthcare fraud based on false statements and material omissions.  Moore's conduct violated clearly established law.  The materially false and/or misleading statements in the affidavits were made with Moore's knowledge, consent, and/or direction to mislead judicial officers to paint the desired false picture that IPMA was a pill mill and engaged in a massive health insurance fraud scheme.

Moore knew of, consented to, and/or directed the omission of material information from the affidavits, and these omissions were critical to the finding of probable cause for the warrants.  See *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).  An omission is considered material if it casts doubt on the existence of probable cause.  *United States v. Hampton*, 760 F. Appx. 399, 404 (6th Cir. 2019).

Without the false statements and material omissions, the affidavits would have shown the reality of Plaintiffs' practice—a legitimate pain management clinic serving the underserved community of Monroe County.

A reasonable officer in Moore's position would have known that he could not obtain search warrants using affidavits accusing Plaintiffs of healthcare fraud based on false statements and material omissions without violating Plaintiffs' clearly established Fourth Amendment rights.  Moore is therefore not entitled to qualified immunity.

– 24 –

## CONCLUSION

For these reasons, the Court should deny Moore's motion and allow the case to proceed to discovery.  In the alternative, any claim the Court might dismiss should be dismissed without prejudice so that Plaintiffs have an opportunity to correct any perceived deficiencies.

Respectfully submitted,

∞ BUTZEL

Dated:  August 25, 2023

/s/  *Joseph E. Richotte*

JOSEPH E. RICHOTTE (P70902)
STEVEN R. EATHERLY (P81180)
Columbia Center
201 W. Big Beaver Rd. #1200
Troy, MI  48084
(248) 258-1616
richotte@butzel.com
eatherly@butzel.com
*Counsel for Dr. Lesly Pompy & IPMA*

100398194.4

– 25 –